IN THE UNITED STATES COURT OF APPEALS THIRD CIRCUIT

22-2992

BARRY JONES

PLAINTIFF

v.

DR. PAUL NOEL et al.,

DEFENDANT

BRIEF FOR APPELLANT

DATED: 8/7/23

/s/

BARRY JONES
QK-3379
SCI @ MAHAMOY
310 GREY LINE DRIVE
FRACKCVILLE, PA 17931

# TABLE OF CONTENT

Page

| | |
|---|---|
| Table Of Content | ii |
| Jurisdiction | iii |
| Table Of Case Citation(s) | iv. |
| Question(s) Presented For Review | vi |
| Statement Of Related Cases And Proceedings | vii. |
| Statement Of The Standard Or Scope Review For Each Issue | viii |
| Statement Of The Case | ix |
| Standard Of Review | xvii |
| III. Legal Argument Dr. Paul Noel | 1 |
| Legal Argument Dr. Haresh Pandya | 21 |
| Conclusion | 30 |

# JURISDICTION

The Third Circuit Court of Appeals have Jurisdiction under 1291 and review of the District Court's order granting summary judgment de novo. Azur v. Chase Bank. USA, Nat'l Ass'n. 601 F.3d 212, 216 (3d Cir.2010). "To that end, we are required to apply the same test the district court should have utilized initially." Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ., 587 F.3d 176, 181 (3d Cir.2009)

TABLE OF CONTENTS

UNITED STATES SUPREME COURT

Pages

Anderson v. Liberty Lobby, 447 U.S 242 (1986) viii,xvi,xvii,2,3,4,7,8,18,23,24
Celotex Copr. v. Catrett, 447 U.S. 317 vii,xvi,xvii,2,3,4,8,23
Farmer v. Brennan, 511 U.S. 825, 837 (1994) xviii,25
Lujan Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990) xvi
Estelle v. Gramble, 429 U. S. 97 (1976) xvii,
Haines v. Kerner, 404 U. S. 519 (1970) xviii

UNITED STATES COURT OF APPEALS
Azur v. Chase Bank 601 F.3d 212 216 (3d Cir.2010) iii,viii,ixx
Chamber v. Sch. Dist. Phila. Bd. of Educ. 557 F.3d 176, 181 (3d Cir.2009) iii
Meditz v. City of Newark 658 F.3d 364, 367 n.11 (3d Cir.2011) viii,18
Big Apple BMW. Inc. v. BMW North America In. 974 F.3d 1358 (3d Cir.1992) viii,xvii,7
Jiminez v. All A. Rathskeller, Inc. 530 F.3d 247, 253 (3d Cir.2007) viii
Turner v. Wetzel 2022 U.S App. LEXIS 23124 (2022) 9,15,24
Mumia Abu-Jamal v. Kresetes 779 Fed. App'x 893 (2019) xviii,9,12,15,16,24,25
Silva v. Mumia Abu-Jamal 2019 U.S. App. LEXIS 21640 vii
Bush v. Jane Doe (I) (II) (III), 2019 U.S. App. LEXIS 16968 1,6,10,15,16,24
Mumia Abu-Jamal v. Sec'y PA Dept. of Corr. 2017 U.S App. LEXIS vii
Saldana v. Kmart Copr. 260 F.3d 228, 232, 43 VI 361 3d (2001) ixx
Gonzales v. AMB 459 F.3d 219, 2223 (3d Cir.2008) xvii,2
Kaucker v. County of Bucks 455 F.3d 418, 423 (3d Cir.2006) xvi,
Pearson v. Prison Health Serv. 850 F.3d 226 (3d Cir.2017) xvii
Natele v. Camden Cnty. Corr. Facility 318 F.3d 575 (3d. Cir.2003) xvii
West V. Keve 571 F.2d 158, 161 (3d Cir.1978) xvii
Nicini v. Morra 212 F.3d 798 (3d Cir.2000) viii,2,23
Kelly v. Borough of Carlisle 622 F.3d 248, 253 (3d Cir.2010) 2
Giles v. Kearney 571 F.3d 318, 322 (3d Cir 2009) 2,18,23
Simmons v. Arnett, 47 U.S. Dist. LEXIS 24546 (9th Cir.2022) 2
Houston Cas. Co. v. Strata Copr. 915 F.3d 549, 551 (8th Cir.2019) 2
Cage v. Happer, 2022 U.S App. LEXIS 21164 (7th Cir.2022) 2
Alexander v. Harrison, 2022 U.S. App. LEXIS 6789 (6th Cir.2022) 2
Pollard v. Campell, 2023 U.S. App. LEXIS 1127 (5th Cir.2023) 2
Peroza-Banitez v. Smith 994 F.3d 157, 164 (3d Cir.2021) 3
West v. Tyco Electronic Corp. 951 F.3d 137, 144 (3d Cir.2020) 3
Guidotti v. Legal Helps Debt. 716 F.3d 764 (3d Cir.2013) 4
Childers v. Joesph 842 F.3d 689, 694 (3d Cir.1988) 8
Moore v. Luffey 676 F.3d App'x 335, 340 (3d Cir.2019) 13,30
Postawko v. Mo. Dept of Corr. 910 F.3d 1030 (8th Cir.2018) 10
Rouse v. Plantier 182 F.3d 192, 197 (3d Cir.1999) 16
Monmonth Cty. Corr. Inst. v. Lanzoro 834 F.2d 326 46-47 (3d Cir.1987) 16,25,27
Marino v. Indus. Crafting Co. 358 F.3d 241,247 (3d Cir.2004) 18

Ho-Ho-Kus 197 F.3d at 71-72 18
Jiminez V. All AM. Rathkeller, Inc., 503 F.3d 247 253 (3d Cir.2007) 18
Weitzner 909 F.3d 604 613-14 (3d Cir.2018) 20
Krasnov v. Brnan, 456 F.2d 1298, 1302 (3d Cir.1972) 20
Thomas v. Dragovick, 142 Fed. App'x 33-36 (3d Cir.2005) 27
Jones v. Tritt 2017 U.S. Dist. LEXIS 165168 30

Unites States District Courts

Mumia Abu-Jamal v. Kerestes 2021 U.S. Dist. LEXIS 170173vii,6,12,24
Abu-Jamal v. Wetzel 2017 U.S. Dist. LEXIS 368 vii,10,11,16,24
Abu-Jamal v. Wetzel 2016 U.S. Dist. LEXIS 117995 vii,11,17,24
Abu-Jamal v. Wetzel, 2015 U.S. Dist. LEXIS 180691 vii,
Chimenti v. Wetzel 2018 U.S. Dist. LEXIS 115961 vii,xii,xiii,
Davis v. Wetzel 2018 U.S. Dist. LEXIS 117385 vii,12,17,24
Dennis v. Jensen 2013 U.S. Dist. LEXIS 70845 xvii,
Beckett v. Dep't of Corr. 2011 U.S. Dist. LEXIS 117547 ixx
Tillery v. Noel 2018 U.S Dist. LEXIS 109205 viii,xviii,12,17,24
Malone v. Lou Central Inc 2022 U.S. Dist. LEXIS Ninth Cir. 2153 3
Howe v. Gilpin 2022 U.S. Dist. LEXIS Eight Cir. 80152 3
Winborn v. Merit 2022 U.S. Dist. LEXIS Seventh Cir. 24356 3
Neese v. Beserra 2022 U.S Dist. LEXIS Fifth Cir. 205603 3
Yow v. Corr. Off. R. Roberson 2022 U.S. Dist. LEXIS 40012 n.5 3
Park v. Keasie, 2011 U.S. Dist LEXIS 50682 6
Bauer 2011 U.S. Dist. LEXIS 136082 6
Kevin Sutton v. Dr. Paul Noel 2022 U.S. Dist. LEXIS 127159 5,17

UNITES STATES CONSTITUTION

Eights Amendment 9,10,12,13,23

Third Circuit Local Appellate Rule

28.1(b) 1,21

Federal Rule Of Civil Procedure

56 6,21
56(a) 2
56(c) 3,6,7,22,24
56(c)(1) 3,8
56(C)(1)(A)(B) xvi
56(e) ixx,1,2,8,21
56(e)(2) 20
59(e) ixx
60(b)(1)(2)(6) ixx

Middle District Local Rule
56.1 x
7.10 ixx

## QUESTION(S) PRESENTED FOR REVIEW

THE DISTRICT COURT ERRED AS A MATTER OF LAW, BY OVERLOOKING/AND OR COMPLETELY DISREGARDING APPELLANT'S GENUINE ISSUES OF MATERIAL FACTS IN DISPUTE, GRANTING SUMMARY JUDGMENT TO DEFENDANT DR. PAUL NOEL DEVIATING FROM PRIOR HOLDINGS OF THE UNITED STATES SUPREME COURT, THIRD CIRCUIT AND OTHER COURT'S OF APPEALS AND ALL UNITED STATES DISTRICT COURT'S WITH RESPECT TO APPLICATION OF THE FEDERAL RULES OF CIVIL PROCEDURE RULE 56, THE DEFENDANT IS NOT ENTITLED TO SUMMARY JUDGEMENT AS A MATTER OF LAW:

THE DISTRICT COURT ERRED AS A MATTER OF LAW, BY OVERLOOKING/AND OR COMPLETELY DISREGARDING APPELLANT'S STATEMENT OF GENUINE ISSUES OF MATERIAL FACTS IN DISPUTE, GRANTING SUMMARY JUDGMENT TO DEFENDANT DR. HARESH PANDYA, DEVIATING FROM PRIOR HOLDING OF THE UNITED STATES SUPREME COURT, THIRD CIRCUIT AND OTHER COURTS OF APPEALS AND ALL UNITED STATES DISTRICT COURTS WITH RESPECT TO THE APPLICATION OF THE FEDERAL RULES OF CIVIL PROCEDURE RULE 56, THE DEFENDANT IS NOT ENTITLED TO SUMMARY JUDGMENT AS A MATTER OF LAW:

### SPECIFIC PAGES IN APPENDIX

1. DECEMBER 1, 2016 CHRONIC CLINIC PROGRESS NOTE/FLOW SHEET APRI SCORE 0.193 MELD SCORE (CIRRHOSIS) :7 CTP SCORE (CIRRHOSIS) :5

2. DECEMBER 28, 2016 CONSULTATION MEDICAL RECORDS 'PAST MEDICAL HISTORY' [B18.2 - HCV] [K74.60 - CIRRHOSIS.NOS]

3. DECEMBER 20, 2016 CONSULTATION MEDICAL RECORD 'PAST MEDICAL HISTORY' [B18.2 - HCV] [K74.60 - CIRRHOSIS,NOS]

5. DECEMBER 28, 2016 CONSULTATION MEDICAL RECORD 'PAST MEDICAL HISTORY' [B18.2 - HCV] 'NO CIRRHOSIS'

6. DECEMBER 27, 2016 CONSULTATION MEDICAL RECORD 'PAST MEDICAL HISTORY' [B18.2 - HCV] 'NO CIRRHOSIS'

13. JUNE 2, 2018 CONSULTATION MEDICAL RECORD 'PRESENT ILLNESS INJURY AND PHYSICAL FINDINGS' [SECONDARY] HCV [SECONDARY] CIRRHOSIS,NOS

16. APRIL 13, 2022 NOTARIZES SWORN AFFIDAVIT APPELLANT

17-THRU-17-12. SEPTEMBER 17, 2021 PHOTO'S OF APPELLANT'S LIVER-DISEASE SKIN-RELATED ABNORMALITIES

16. April 13, 2022 SWORN AFFIDAVIT BARRY JONES

19. AUGUST 21, 2017 INSTITUTION GRIEVANCE DEFENDANT PANDYA HEPATITIS C COMMITEE DENIED HEPATITIS C TREATMENT

20. JUNE 1, 2017 CONSULTATION RECORDS DEFENDANT PANDYA 'NO CIRRHOSIS OR MANY LIVER-RELATED SKIN DISEASES NOTED

21. JUNE I, 2017 CHRONIC CLINIC PROGRESS NOTE/FLOW SHEET MELD SCORE (CIRRHOSIS) 7 CTP SCORE (CIRRHOSIS) 5

STATEMENT OF RELATED CASES AND PROCEEDINGS

FOR THE THIRD CIRCUIT COURT OF APPEALS

TURNER v. WETZEL, 2022 U.S. App. LEXIS 23124 (2022) (NON PRECEDENTIAL)

MUMIA ABU-JAMAL V. KERESTES, 779 Fed App. 893 (2019) (NON PRECEDENTIAL)

SILVA V. MUMIA ABU-JAMAL, 2019 U.S. App. 21640 (NON PRECEDENTIAL)

BUSH V. JANE DOE (I) (II) (III), 2019 U.S. App. LEXIS 16968 (NON PRECEDENTIAL)

ABU-JAMAL v. SEC'Y PA DEPT OF CORR, 2017 U.S. App. LEXIS 13460 (3d Cir,Apr.13,2017)

ABU-JAMAL v. SEC'Y PA. DEPT. OF CORR., 2017 U.S. App. LEXIS 13658 (3d Cir.Apr.14,2017)

PENNSYLVANIA UNITED STATES DISTRICT COURTS

MUMIA ABU-JAMAL V. KERESTES, 2021 U.S. Dist. LEXIS 170173 (M.D.Pa.Sept.9.2021)

DAVID V. WETZEL, 2020 U.S. Dist. LEXIS 117350 (M.D.Pa.2020)

TILLERY V. DR. PAUL NOEL & DR. HARESH PANDYA, 2018 U.S. Dist. LEXIS 109205 (M.D.Pa.Jun.28,2018)

CHIMENTI V. WETZEL, 2018 U.S. Dist. LEXIS 115961 (E.D.Pa.July.12,2018)

ABU-JAMAL V. WETZEL, 2017 U.S. Dist. LEXIS 368 (M.D.Pa.Jan.3,2017)

ABU-JAMAL V. WETZEL, 2016 U.S. Dist. LEXIS 117995 (M.D.Pa.Aug.31.2016)

ABU-JAMAL V. WETZEL, 2015 U.S. Dist. LEXIS 180691 (M.D.Pa.Sept.18,2015)

THE STATEMENT OF THE STANDARD OR SCOPE OF REVIEW FOR EACH ISSUE ON APPEAL:

THE DISTRICT COURT ABUSED IT' DISCRETION IF IT DECISION NOT TO DRAWN THE INFERENCE REST UPON "A CLEARLY ERRONEOUS FINDING OF FACT, ERRANT CONCLUSION OF LAW OR AN IMPROPER APPLICATION OF LAW TO FACT. MEDITZ V. CITY OF NEWARK, 658 F.3d 364, 367 n.11 (3d Cir.2011), BIG APPLE BMW, INC. V. BMW NORTH AMERICA INC, 974 F.3d 1358 (3d Cir.1992), ANDERSON V. LIBERTY LOBBY INC, 447 U.S. 242,248, 106 S.Ct. 2505, 91 L.Ed. 2d 202 (1986).

SUMMARY JUDGEMENT WAS IMPROPER AND THE DISTRICT COURT ABUSED IT'S DISCRETION, WHERE THE PLEADINGS, DEPOSITIONS, ANSWER TO INTERROGATORIES, AND AFFIDAVIT IT ANY, SHOW THAT THERE EXIST GENUINE ISSUE OF MATERIAL FACT AND THE MOVING PARTY WAS NOT ENTITLED TO JUDGEMENT AS A MATTER OF LAW. NICINI JR. V. MORRA, 212 F.3d 798 (3d Cir.2000), ANDERSON 477 U.S. 242, CELOTEX CORP. V. CATRETT, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

THE DISTRICT COURT'S FINDINGS ARE CLEARLY ERRONEOUS, DISREGARDING AND FAILING TO ADDRESS APPELLANT'S COMPLIANCE WITH FEDERAL RULES OF CIVIL PROCEDURE 56(e), SATISFYING HIS DUTY OF SETTING FORTH SPECIFIC FACTS SHOWING THAT A GENUINE ISSUE OF MATERIAL FACT EXIST AND THAT A REASONABLE FACT FINDER COULD RULE IN HIS FAVOR. AZUR V. CHASE BANK, USA, NAT'L. ASS'N, 601 F.3d 212, 216 (3d Cir.2010) ANDERSON, 477 U.S. 242 (1986), CELOTEX, 477 U.S. 317 (1986). (44 EXHIBITED DR.NOEL, EX-A-THRU-E,F-THRU-F-44,DOC.51) (196 PL.EXHIBIT'S DR. PANDYA A-1-THRU-A-196-&-B.DOC.54) (44 DEF.EXHIBIT'S 1-THRU-48,DOC.54)

THE DISTRICT COURT ABUSED IT'S DISCRETION IS WEIGHING THE EVIDENCE, MAKING CERDIBILITY DETERMINATIONS, AND DETERMINING THE TRUTH OF THE MATTER, BUT FAILED TO DETERMINE WHETHER THERE IS GENUINE ISSUE FOR TRIAL." JIMINEZ V. ALL A,. RATHSKELLER, INC, 530 F.3d 247, 253 (3d Cir.2007)(QUOTING ANDERSON V. LIBERTY LOBBY, INC., 477 U.S. AT 253 (1986).

II. STATEMENT OF THE CASE

Appellant is a 64-yar old state prisoner. Appellant entered the DOC in 1985 and since 1990 has been noted by medical staff to suffer from chronic Hepatitis C virus ("HCV"). Hepatitis C is a virus that affects liver cells. Bush v. Jane Doe (I) (II) (III), 2021 U.S. App. LEXIS 16968 (3d Cir.2021) (non-precedential). See Hepatitis C Facts Sheet, World Health Organization (July 27, 2020), Https://www.who.int/news-room/facts-sheet/detail/hepatitis-c.

Individuals infected with hepatitis C often develop chronic hepatitis, causing progressive liver inflammation, fibrosis (scarring) or cirrhosis (extreme scarring). Id. (2021 U.S. App. LEXIS 2). The disease affect liver function, and patients with chronic hepatitis C may suffer from condition like diabetes, see Sara Hammerstad et al., Diabetes And Hepatitis C: A two-Way Association. Frontier in Endocrinology, 2015, as 1, or contact Liver Cancer, See Hepatitis C Facts Sheet World Health Organization. In between 20% to 50% of all cases, and 10-19% of those who develop cirrhosis. It is 'undisputed record evidence, the defendant Dr. Pandya was ware prior to '2017' that Appellant was diagnosed with 'cirrhosis,' for which there is no cure.' (App.Ex,1-2) (App.Ex.7-thru-14) (Def.Ex.423-451.Doc.28) (Pl.Ex.10-11.Doc.54). Mr. Iannuzzi Certified Nurse Practitioner's noted in Appellant's Medical Consultation Record on 'December 20 & 27 2016.' (App.Ex.3-4). Appellant's record evidence of cirrhosis submitted in the district court, (Pl.Ex.A.163-164-165-166-170-171-174-180.Doc.54). (Def.Ex.84-456-457-469-533-462-448-775-494-159-454-151-149-144-142-161-138-715.Doc.28.As Medical Records).

The United States District Court of the Middle District of Pennsylvania (Scranton) Civil Docket for Case #3:19-cv-00004-JPW-EW. 08/09/2021 Doc. 28 Motion for Summary Judgment by Haresh Pandya

(Attachment: 1 Proposed Order, # 2 Exhibits A - Medical Records) (Lombar, Benjamin( (entered 08/09/2021 Consisted of 13 Volumes, 834 Exhibits Doc,28, with defendants Statement of Facts Doc.29, also see, Plaintiff's Counter Statement of Material Facts (Doc.54), 1. Defen. No.1 The defendant has submitted 147 questions, 834 Exhibits scrambled through 13 volumes, 50% are either irrelevant and or inmaterial pursuant to Middle District Local Rile 56.1 & Fed.R.Civ.P. Rule 56. (Doc.54) (App.Ex.A.Dist.Ct.Dk.Sheet).

There is also 'undisputed intrinsic record evidence' Appellant was never made aware by defendant Dr. Pandya, or any other DOC staff, his hepatitis C virus has progressed to 'cirrhosis,' until Appellant obtained his 2018 Medical Consultation Records, exhibited in complaint (Pl.Ex.A-166-196.Doc.54). Nor was this extrinsic document medical record evidence 'disputed' by defendant Pandya, address, or any significant reference of Appellant's 'cirrhosis' made by the district judge in her "Memorandum Order granting defendant Dr. Pandya Summary Judgment Motion. See (App.Ex.B.Memo.Op.Doc.57).

The document specifically stated (Pl.Ex.A-164-2/16/18.Doc.54) (App.Ex.7-8), Referring Physician Comments - 59 years old male with HCV and Known 'Cirrhosis' dx by 'Fibrosure 'Past Medical History' [B18 HCV] (74.60 Cirrhosis,NOS] (Pl.Ex.A-163-to-174.Doc.54), February 18, 2018 Consultation Record, Assessment, 'Cirrhosis of the Liver' 'Well Compensated.'

It is also 'undisputed' that defendant Dr. Pandya and staff 'duplicated' Appellant's December 28, 2016 Consultation Medical Records, successfully concealing any noting Appellant has 'cirrhosis,' (App.Ex.2) (Def.Ex.451-452.Doc.27) (Pl.Ex.11-12.Doc.54) states 'Cirrhosis,' compare (App.Ex.5) (Def.Ex.488.Doc.27) (Pl.Ex.20.Doc.54) date identical December 28, 2016 'no cirrhosis.'

Mr. Iannuzzi Certified Nurse Practitioner followed suit, (App.Ex.3-4) (Def.Ex.446.Doc.27) (Pl.Ex.20.Doc.54), 'Cirrhosis' dated October 20, 2016 and October 27, 2016. 'No Cirrhosis' (App.Ex.6) (Def.Ex.490) (Pl.Ex.22), so when Appellant conducted a review of his medical records the defendant cleverly concealed any knowledge of the seriousness of the progression of the hepatitis C virus to 'Cirrhosis,' presents a conscious disregard of the known risk that allowing the progression of the disease to accelerate so that it presents a great risk to Appellant's health and even death.

During the years of 2000 through 2010. Appellant was prescribed the antiviral drugs, Interferon and Ribavaron. As with most Interferon and Ribavaron recipients the drug prove ineffective, and Appellant's treatment was discontinued.

On or about 2011, new direct acting antiviral drugs, ("DAADs") became available. Unlike the experimental drugs Interferon & Ribavaron, these drugs were shown to have 90-95% effective rate with few, if any sides affects.

On or about December 2013 the DOC cased administration of the-current medication. In response to the availability of the DAADs the Pennsylvania Department of Correction, ("DOC"), On November 7, 2015, almost two years later, established an interim HCV Protocol (Pl.Ex.A.Doc.51). One year later on November 15, 2016, the DOC issued an updated HCV Protocol (Pl.Ex.B.Doc.51).

Pursuant to the Hepatitis C Protocol, the DOC used an infected inmates 'Aspartate Aminotransferase to Platelet Ratio Index ("APRI") score to estimate hepatic fibrosis, predict the presence of corrhosis and prioritize treatment for HCV.

The interim and updated version of the DOC's HCV Protocol both the brainchild of the defendant, Dr. Paul Noel,

Dr. Paul Noel, the defendant adopted the current Protocol because it limits the number of inmates who will be treated with DAADs in 2014 because of cost. Bush supra (vacated the dismissal order remand for further proceeding Appellant alleged treatment with DAA because of cost). Turner v. Wetzel, 2022 U.S. App. LEXIS 23124 n.4 (3d Cir.2022) (Appellant attached exhibit notorized affidavit new treatment was "too expensive, defendant submitted nothing to refute this). Mumia Abu-Jamal v. Kerestes, 779 Fed. Appx. 893 (3r Cir.2019) (the Department Defendants denied him antivaral drug treatment for purely cost and non-medical reasons. See Chimenti v. Wetzel, 2018 U.S. Dist. LEXIS 115961 (E.D.Pa.July.12,2018) (Dr. Noel Dep., DOC Defs, 'K, at 80-81).

The Eastern District Court of Pennsylvania further held, after defendant Dr. Noel's deposition admitted cost was his only concern, when establishing the Protocols, there is also evidence that the DOC's restriction of treatment with DAAs to inmate with Metavir score of F3 and F4 under the Hepatitis C Protocol was based on the cost of treatment, not medical recommendation or treatment Protocol used by other prison.

Indeed, Dr. Noel rejected advise that he received from Dr. Scharff, then the DOC Chief of Clinical Service, Bureau of Health Care Service, and Eugene Ginchereau, Assistant State Medical Director, the patients with an APRI score of 1.0 or greater should be treated with DAA, informing Dr. Scharff and Mr. Gincherau that "[o]ut of 6,000 DOC inmates who were Hepatitis C, 700 had and APRI score of greater than 1.0.

For purpose of establishing the magnitude of treating [2018 U.S. Dist. LEXIS 27] them all it would be 700 x $100.000 or $70 million ... Somehow, I'm going to have to further prioritize this number." (Id. at 81-82; Pls 'Ex.L).

confirmed during his deposition that the only prioritization factor that he was considering at that time was cost. (Noel Dep. at 82). So in Dr. Noel's opinion, even though an APRI score of 1.0 might qualify an inmate for DAA treatment in other prison system, the DOC would have to find a higher APRI score. (Id.)

Individuals who meet the standard set forth by the AASLD and ADSA October 2015 guideline "recommended treatment [using DAA therapies for all patient with chronic HCV regardless of Metavir scores], but are excluded from receiving [2018 U.S.Dist.LEXIS 33] care, are put at a significant risk of many medical complications of HCV. HCV is known to have extrahepatic manifestations, describe as effects on organ systems outside the liver, and that substantial delay in treatment that is inherent in the current protocol is likely to reduce the efficacy of DAADs and thereby prolong the suffering of those who have been diagnosed with chronic hepatitis C and allow the progression of the disease so that it presents a greater risk of cirrhosis.

In Mumia Abu-Jamal v. Kerestes, supra This court held, at all times of the relevant events, it was clearly established that denying particular treatment to an inmate indisputably warranted that treatment for non-medical reasons violate the Eight Amendment.

Without treatment, individuals may be needless exposed to depression, fatigue, sore muscles, joint pain, kidney injury, diabetes or glucose intolerance, certain types of rashes or autoimmune diseases. Without treatment individuals develop advance liver disease they must undergo cancer screening at regular intervals fore the rest of there life even after they are cured of their HCV. (Dr. Trooskin Rpt., Pls. "Ex.A at 51) Plaintiff's expert Stacy Trooskin, Chimenti v. Wetzel.

Throughout Appellant's experience multiple Hepatitis C extrahepatic manifestations including, but not limited to eczema, atopic dermatitis, intrinsic (allergic) exzema, second to sarcidosis of the skin, In fact, as a result of Appellant's failing liver function his skin begun to painfully deteriorate (App.Ex.16) (Pl.Ex.E-Notarizes Sworn Affidavit.Doc.51);

also see August 17, 2021 Photos of Appellant's Liver Disease Related skin abnormality (App.Ex.17-thru-17-12) (Pl.Ex.F-1-thru-F-12.Doc.51).

Plaintiff condition has progressed to 'Cirrhosis' as previously stated there is no cure (App.Ex.15) (Pl.Ex.F.13,14,15,16-thru-29.Doc.51) (Pl.Ex.F.30-Cirrhosis,Info,Mayo,Clinic.Doc.51). After years of defendant Dr. Pandya's continued misleading and fabricating to Appellant on the availability for treatment of DAADs.

On August 21, 2017 Appellant simultaneously filed Inmate Grievance #629874, (Pl.Ex.C.Doc.51), and submitted a request to staff to the Correctional Health Care Administration, Karen Holly, (Pl.Ex.D.Doc.51) formally 'documenting' his request for treatment 'in accordance with the standard of care in the community.'

Id. On August 24, 2017, Registered Nurse Sharon Selbi, responded stating, "[t]he DOC has a Hepatitis C Protocol that is followed closely and according to that standard of care..."Id.

In the grievance Appellant reiterated his request for direct-acting intiviral drugs, in addition to monetary compensation (Pl.Ex.C.Doc.51). On or August 31, 2017, Registered Nurse Supervisor, Mary Alice Kuras, answered Appellant's grievance claiming that, "[b]ased on the grievance's medical date and information gathered at the visits, a determination is made if he meets the accepted standard of care guidelines to receive Hepatitis C treatment at this time.

Record evidence presented by Appellant, and completely 'ignored' by the district court judge, of Appellant's medical data document by defendant Dr. Pandya and SCI-Frackville's medical [s]taff clearly indicate prior to the filing of the grievance specifically state 'Past Medical History Cirrhosis.' (App.Ex.2,3,5) (Pl.Ex.F.13,14,15) (Def.Ex.451,446,448.Doc.51), according the Hepatitis C Protocol, inmates with '[C]irrhosis' are Priority Level 1, the highest priority for treatment with DAADs. (Pl.Ex.A-at-7.Doc.51). Monetary awards (sic) are not compensation (sic) via the grievance process. Id.

Appellant's appeal decision of the Facility Manager. In a response provided October 4, 2017, the Deputy Superintendent of Facility Management, held that "RNS Kuras researched your issues and concern and and explained to you the DOC's protocol in treating inmates diagnosed with Hepatitis C." The department has a Hepatitis C clinic and lab studies are reviewed every six month. Appellant appeal to final review also prove futile.

Grievance office Dorine Verner, states "you are currently being evaluated for treatment in accordance with the protocol and will continue to be monitored on chronic clinic as determined by your treatment plan. There is a orderly progression that is required before treatment with certain test, ect..." Id.

On January 2, 2018 Appellant was approved for treatment with DAADs. By that time Appellant's liver has become enlarged. Lackwanna Moble X-Ray Inc (Pl.Ex.F.31.Doc.51). Appellant was approved for treatment with Zepatier from February 4, 2019 through April. According to Appellant's labs report of July 23, 2019, HCV was no longer detected;

however Appellant continues to experience liver-disease skin-related side affects and 'extrahepatic manifestation,'

describe as affect on **'organ system'** outside the liver, as previously described herein, also See (Pl.Ex.F.32,33,34.Doc.51), most recently (App.Ex.18) December 19, 2022 Hospital Medical Service New Encounter Note Author: Pavan Garala MD Assessment/Plan 'Cirrhosis Of The Liver without Ascites.' (HCC) also stating Hepatitis C virus cured after antiviral drug therapy.

Plaintiff commenced the instant action on or around January 2, 2019, then after 'five (5) extension' some, because of these extrahepatic manifestation health related issue, Appellant subsequently filed response to defendants Summary Judgment Motions, Counter Statement of Material Facts, Brief in Opposition and Exhibit pursuant to Federal Rules of Civil Procedure 56(e) "Must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc, 477 U.S. 242,247,91 L.Ed.2d, 106 S.Ct. 2505 (1986), Saldana v. Kmart Copr. 260 F.3d 228.232 43 V.I. 361 (3d. Cir.2001), Azur v. Chase Bank, 601 F.3d 212 (3d Cir.2010), with respect to both defendants, (Dr.Noel.Doc.48-thru-51) & (Dr.Pandya.Doc.52-thru-55).

On September 30, 2022 the Honorable Jennifer P. Wilson by Memorandum Order granted the defendants Motion for Summary Judgment (App.Ex.B-1-thru-15) (Doc.57-58). Appellant was unable to timely file reconsideration under Local Rule 7.10 & Federal Rule of Civil Procedure Rule 59(e) (To Correct Error of Law And Fact) or 60(b)(1)(2)(6), because of being hospitalized again, this timely Notice of Appeal followed. (App.Ex.C.)

I  STANDARD OF REVIEW

Summary Judgment "is appropriate only where there is no genuine issue of material facts and the moving party is entitled to judgment as a matter of law". Gonzales v. AMB, 459 F.3d 219, 223 (3d Cir.2008). "An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it affect the outcome of the suit under the govern law." Kaucker v. County of Bucks, 455 F.3d 418, 423 (3d Cir.2006) (citing Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). On summary judgment a court may dispose of those claims that do not present a "genuine issue as to any material facts." Fed.R.Civ.P. 56(a).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material facts. Colotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 256 (1986). Once such a showing has been made, the non moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material facts. Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). Therefore, "the non-moving party may not oppose summary judgment simply on the basis of the pleading, or on conclusory statements that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of material in the record ... or showing that the material cited do not establish the absence or presence of a genuine dispute, or the adverse party cannot produce admissible evidence to support the facts." Fed.R.Civ.P 56(c)(1)(A)(B).

In evaluating whether summary judgment should be granted, "[t]he court need not consider only the cited materials, but may consider other materials in the record. Fed.R.Civ.P. 56(c)(3).

Inference should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movent's, then the non-movant's must be taken as true." Big Apple BMW Inc. v. BMW of NAM., Inc., 974 F.2d 1358, 1363 (3d Cir.1992). In considering a motion for summary judgment, a district court may not make credibility determination or engage in weighing the evidence." Anderson, 477 U.S. at 255. Therefore, when evidentiary facts are in dispute, when credibility of witness may be in issue, or when conflicting evidence must be weighted, a full trial is usually necessary.

The Eight Amendment prohibits the "unnecessary and wanton infliction of pain which includes "deliberate indifference to serious medical needs of prisoners." Dennis v. Jensen, 2013 U.S. Dist. LEXIS 70845 (M.D.Pa.May 20,2013) (quoting Estelle v. Gramble, 429 U.S. 97, 103-04, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). To succeed on an Eight Amendment claim for inadequate medical care, a plaintiff must make (1) a subjective showing that the defendants were deliberate indifferent to his serious medical needs and (2) an objective showing that those needs were serious." Pearson v. Prison Health Serv., 850 F.3d 226, 534 (3d Cir.2017), Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 528 (3d Cir.2003)" also see West v. Keve, 571 F.2d 158, 161 (3d Cir.1978).

("This standard is two-prong. It requires deliberate indifference on the part of prison officials and it requires the prisoner's needs to be serious.") A serious medical need exist it the failure to treat a medical condition "may result in pain and suffering which no one suggest would serve any penological purpose. "Estelle[3]", 429 U.S. at 103. To meet the deliberate indifference standard, it must also be shown that an official knowingly disregarded an excessive medical risk;

the official must be aware of facts from which inference could be drawn that a substantial risk of serious harm exist, and he must also drawn the inference. Farmer v. Brennan, 511 U.S. 825. 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

Deliberate indifference may be manifest by an "intentional refusal to provide care, delayed medical treatment for non-medical reasons, a denial of prescribed medical treatment, or a denial of reasonable request for treatment that result in suffering or risk of injury." Beckett v. Dep't of Corr., 2011 U.S. Dist. LEXIS 117547 (M.D.Pa.Oct.12,2011). It is clearly established that denial of 'indisputable warranted treatment for non-medical reason is a violation of the Eight Amendment'. Abu-Jamal v. Kerestes, 779 Fed. Appx. 893 (3d Cir.2019).

When a defendant establishes evidence of a serious medical condition and is denied appropriate treatment for a non medical reason, than deliberate indifference is adequately supported. Abu-Jamal 779 Fed. Appx. 893, Hepatitis C, qualifies as a serious medical condition. Moore v. Luffey, 767 Fed. Appx 335, 340 (3d Cir.2019), Tillery v. Noel, 2018 U.S. Dist. LEXIS 109205 (M.D.Pa.June 28,2016) report and recommendation adopted sub, nom, Tillery v. Noel, 2018 U.S. Dist. LEXIS 121758 (M.D.Pa.Juuly 20,2018).

Where the plaintiff is a pro se litigant, the court has a obligation to construe the complaint liberally. See Haines v. Kerner, 404 U.S. 519, 520-521, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), Gibbs v. Roman, 116 F.3d 83, 86 n.6 (3d.Cir.1972). Thus, the only question on appeal is whether appellant has presented sufficient evidence from which a reasonable jury could find that the defendants were deliberate indifferent to my serious medical condition.

III. LEGAL ARGUMENT:

THE DISTRICT COURT ERRED AS A MATTER OF LAW, BY OVERLOOKING/AND OR COMPLETELY DISREGARDING APPELLANT'S COUNTER STATEMENT OF GENUINE ISSUES OF MATERIAL FACTS IN DISPUTE, GRANTING SUMMARY JUDGMENT TO DEFENDANT DR. PAUL NOEL DEVIATING FROM HOLDING OF THE UNITED STATED SUPREME COURT, THIRD CIRCUIT AND OTHER COURT'S OF APPEALS AND ALL UNITED STATES DISTRICT COURT'S WITH RESPECT TO APPLICATION OF THE FEDERAL RULE OF CIVIL PROCEDURE RULE 56, THE DEFENDANT IS NOT ENTITLED TO SUMMARY JUDGMENT AS A MATTER OF LAW:

L.A.R. 28.1(b) Brief of the Appellant

Statement Of The Standard Or Scope Of Review:

Whether The District Court Abused its Discretion If It's Decision Not To Drawn Inference For The Non-Moving Party Rest Upon "A Clearly Erroneous Finding of Facts," Errant Conclusion Of Law Or Improper Application Of Law To Facts:

Whether Summary Judgment Was Improper And The District Court Abused It's Discretion, Where The Pleadings, Deposition, Answer To Interogatories And Affidavit It Any, Show There Exist Genuine Issues Of Material Fact, And The Moving Party Was Not Entitled To Judgment As A Matter Of Law:

Whether The District Court Findings Are Clearly Erroneous, Disregarded And Failing To Address Appellant's Compliance With Federal Rule Of Civil Procedure Rule 56(e), Satisfying His Duty Of Setting Forth Specific Facts Showing That Genuine Issue Of Material Fact Exist And that Reasonable Facts Finders Could Rule In His Favor:

Whether The District Court Abused It's Discretion In Weighting The Evidence Making Credibility Determinations, And Determining The Truth Of The Matter, But Failed To Determine Whether There Is Genuine Issue For Trial"

Appellant respectfully assert the district court erred as a matter of law, abusing its discretion by overlooking/and or completely disregarding appellant's counter statement of genuine issued of material fact in dispute. On July 30, 2023 defendant Dr. Noel filed motion for summary judgment (Doc.24), brief in support of summary judgment motion (Doc.25), statement of material facts (Doc.26), Appendix 1-A thur 11-K (Doc.27).

In response pursuant Pennsylvania Middle District Local Rule 56.1, appellant filed response to defendants summary judgment motion, (Doc.48), counter statement of material facts (Doc.49), brief in support of summary judgment (Doc.50), Exhibits A-thru-E and F-thru-f-44).

Memo. Op. ¶ 9, The district court granted summary judgment on behalf of defendant Dr. Paul Noel,

concluded appellant as not advancee sufficient evidence to permit a trier of fact to determine that;

defendant Noel acted with deliberate indifference to a serious medical need (Doc.58).

The District Court make a 'single reference to appellant's 'counter statement of material facts,' with respect to appellant ineffective antiviral treatment, (Memo.Op. ¶ 7), 'no' reference to any other document/and or record evidence appellant filed in opposition to defendants summary judgment motion,' deviating from well establish United States Supreme court's holding's with the application Federal Rule of Civil Procedure 56(a) in Anderson v. Liberty Lobby Inc, supra, also see Celotex Corp v. Catrett, 477 U.S. 371, 106 S.Ct. 2548, 91 L.Ed.2d 256 (1986). (both holding pursuant to Federal Rule of Civil Procedure Rule 56(a) which provides the court shall grant summary judgement if the movent shows that there is no genuine dispute as to any material facts and the movant is entitled to judgment as a matter of law.

Court of Appeals Application Rule 56(a)

Third Circuit Court of Appeals, Nicini v. Morra, 212 F.3d 798 (3d Cir.2000), Gonzalez v. AMR, 549 F.3d 219, 223, 50 V.l. 1150 (3d. Cir.2008), Kelly v. Borough of Carlisle, 622 F.3d 248, 253 (3d Cir.2010) (quoting Giles v. Kearney 571 F.3d 318, 322 (3d Cir.2009), Kaucher v. County of Bucks, 455 F.3d 418, 422-23 (3d Cir.2006). Simmons v. Arnett, 47 U.S. App. LEXIS 24546 (9th Cir.2022), Houston Cas. Co. v. Strata Corp., 915 F.3d 549, 551 (8th Cir.2019), Cage v. Harper, 2022 U.S. App. LEXIS 21164 (7th Cir.2022), Alexander v. Harrison, 2022 U.S App. LEXIS (6th Cir.2022), Pollard v. Campell, 2023 U.S App. LEXIS 1127 (5th Cir.2023).

United States District Courts Application Of Rule 56(a)

Malone v. Lou. Central. Inc., 2022 U.S. Dist.LEXIS Ninth Cir. 2153, Howe v. Gilpin, 2022 U.S. Dist. LEXIS Eight Cir. 80152, Winborn v. Merit, 2022 U.S. Dist. LEXIS Seventh Cir. 24356. Neese v. Beserra, 2022 U.S. Dist. LEXIS Fifth Cir. 205603, Yow v. Correctional Officer R. Roberson, 2022 U.S. Dist. LEXIS 40012 n.5 (M.D.Pa.Mar.7,2022), N.5 Here in accordance with Local Rule 56.1 the defendant filed a statement of material facts, and Yow filed a response. Where the facts are 'undisputed', 'we cite to defendants' statement of facts, "and Yow's response thereto. In accordance with our duty to "construe all facts on inference in favor of the non-moving party [.] Peroza-Banitez v. Smith, 994 F.3d 157, 164 (3d Cir.2021), (quoting Santini v. Puentes, 795 F.3d 410, 419 (3d Cir.2015) where Yow disputed a fact set forth in the defendants, statement of material facts and he cited 'record evidence' creating a genuine facts dispute, we cite to Yow's version of facts.

The district court should have begun its analysis with this standard of review that undergrids summary judgment. One of the principle purposes of summary judgment rule is to isolate and dispose of factual unsupported claims and defenses. Celotex Summary judgment should be granted 'so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, set forth in Rule 56(c) is satisfied. West v. Tyco Electronics Corp. 951 F.3d 137,144 (3d Cir.2020).

The court held for movants and nonmovants alike, the assertion that a fact cannot be or is "genuinely disputed" must be supported by (1) citation to particular parts in the record that go beyond mere allegations, (2) a showing that the material cited do not establish the absence or presence of a genuine dispute; or (3) a display that a adverse party cannot produce admissible evidence to support the facts. Fed.R.Civ.P 56(c)(1).

Anderson,  Celotex,  Guidotti v.  Legal  Helpers  Debt.  Resolutions,

L.L.C., 716 F.3d 764 (3d Cir.2013).

Defendants Statement Of Material Facts Doc. 26

Appellant's Counter Statement Of Material Facts Doc. 49

Citation to Disputed Material Fact In The Record.

Defen. No. 8. The Protocol prioritized inmates for treatment with direct acting antiviral drugs (DAADs). Appendix at A. Interim Hepatitis C Protocol November 2015.

App. No. 8. Denied, Interim Hepatitis C Protocol prioritizes "candidacy" of inmates for treatment, not treatment itself (Pl.Ex.B-Interim Hepatitis C Protocol Nov. 2015).

Plaintiff Exhibit A, Interim Hepatitis C Protocol November 13, 2015, Chapter 1. F. Evaluation for Treatment with Anti-Viral Medication. 1. The prioritzation of treating chronic HCV should be based on; a. decompensated 'cirrhoisi, CTP score 7-9; 5. The purpose of the current Department Hepatitis C Protocol is to identify patient with advance cirrhosis.

Defen. No. 11. The Protocol prioritized inmates for treatment with DAAD, Appendix at B,C, Hepatitis C Protocol.

App. No. 11. Denied, the undated Hepatitis C Protocol prioritized "consideration" of inmates for treatment, not treatment itself (Pl.Ex.B-Updated Hepatitis C Protocol, Nov.7,2016).

Plaintiff Exhibit B Updated DOC Hepatitis C Protocol November 7, 2016, Chapter 1. D Diagnosing Cirrhosis. 1.Assessing for 'cirrhosis' is important for prioritizing inmates for treatment of HCV, also requires a diagnoses of cirrhosis.

Defen. No. 14. In 2015, Noel developed DOC's Interim Hepatitis C Protocol and three subsequent undated Hepatitis C Protocols that provided or provide the base guideline for uniform medical treatment of all DOC inmates with HCV. Appendix at K, DOC Defendant Noel Declaration (App.Ex.18).

App. No. 14. Admitted in part, denied in part, it is admitted defendant Noel developed DOC's Hepatitis C Protocol. It is denied that those Protocols established uniform medical "treatment" for "all" inmates with HCV.

Plaintiff's Ex. A at-7 Inmate without advance 'cirrhosis' will not be treated under the DOC's Interim Hepatitis C Protocol. Plaintiff's Ex. B the updated DOC's Hepatitis C policy employs a system of monitoring in lieu of actual treatment.

Defen. No. 15. The DOC's Interim Hepatitis C Protocol and subsequent Hepatitis C Protocol are all modeled after the policy of the Federal Bureau of Prisons. They are prioritization protocol that treat the sickest inmates first, based on their medical need. Appendix at K, DOC Defendant Noel Declaration.

App. No. 15. Admitted in part, denied in part, It is admitted, albeit immmaterial, the DOC's Interim Protocol is modeled after the Federal Bureau of Prisons, it is denied that DOC's Hepatitis C Protocol prioritize the "sickest" inmate "first" it prioritize treatment "only" for the sickest.

Plaintiff's Brief ¶ 9, Doc. 50, In this case Dr. Noel said nothing, counsel's burden shifing argument must be rejected in that he failed to point to any evidence Dr. Noel crafted the protocol for reason other than those related to cost. Brush v. Doe (1) (11) (111), 2021 U.S. App. LEXIS at 3 (3d Cir.2021), Chimenti v. Wetzel, 2018 U.S. Dist. LEXIS at 10 (E.D.Pa.July.12,2018). In fact Dr. Noel 'himself' never claimed otherwise, in this case, Dr. Noel said nothing by way of 'Affidavit' or 'Declaration.' Notably the Declaration relied upon counsel is a recycled 'Declaration' filed in the case of Kevin Sutton v. Dr. Paul Noel 2022 U.S. Dist. LEXIS 127159 (M.D.Pa.July.18,2022).

Defen. No. 16. The DOC treats all inmates in its custody who have chronic HCV, on an individual basis, and in accordance with the DOC's Hepatitis C Protocol Appendix at K DOC Defendant Noel Declaration, (App.Ex.18).

App. No. 16. Denied in part, admitted in part, It is denied the DOC treat "all" inmates in its custody who have HCV. It is admitted that the decision to provide treatment to selected inmates is in accordance with the DOC's Hepatitis C Protocol, (Pl.Ex.A.B).

Plaintiff Ex A-B as previously demonstrate DOC policy requires an inmate to develop 'cirrosis' before HCV treatment is given. Dr. Noel said nothing by way of 'Affidavit' or "Declaration, the 'Declaration' relied upon by counsel is a recycled 'Declaration' filed in the case of Kevin Sutton v. Dr. Paul Noel.

Defen. No. 17. None of the Protocol preclude any inmate with HCV from receiving treatment, Appendix at K, DOC Defendant Noel declaration, (App.Ex.18).

App. No 17. Denied, the Hepatitis C Protocol, developed by the defendant Dr. Noel is designed specifically to exclude inmates deem not sick enough from receiving Direct Acting Antiviral Drugs ("DAAD").

Plaintiff Ex. A-B inmates in DOC costody must have advance 'cirrhosis' is in accordance with DOC policy. Counsel is relying on a recycled 'Decalration filed in Kevin Sutton v. Dr. Paul Noel.

Defen. No. 18. HCV is a slowly progressing disease that takes 20-40 years to progress cirrhosis. Not all individuals with HCV will progress to cirrhosis Appendix at K, DOC Defendant Noel Declaration (App.Ex.18).

App. No. 18. Admitted in part, denied in part as immaterial. It is admitted HCV is a slow progressing disease. It is immaterial that not "all" inmates will not develop cirrhosis.

Plaintiff Br. at 7 the defendant next claim, assert Plaintiff has been 'cured' based on July 23, 2019 Lab result (Defen.Br. at-5,Doc.50), There is no 'cure' for 'cirrhosis,' The Mayo Clinic (Pl.Ex.F.30,Doc.51) (App.Ex.15), Plaintiff has advance significant 'medically documented' record evidence in the district court, the plaintiff' 'cirrhosis diagnosis' is well documented (Pl.Ex.F-13-thru-29,Doc.51) medically noted since June 2016 (Pl.Ex.F.13,14,15), (App.Ex-1-thru-6) (App.Ex-7-thru-14). Relying on recycled Declaration filed in Sutton.

Defen. No. 19. It is not medically necessary to treat all inmates with HCV with DAADs right now or in the short term, Appendix At K, DOC Defendant Noel Declaration, (App.Ex.18).

App. No. 19. Denied The standard of care is to provide DAADs to all inmates with HCV. (Pl.Ex.C.Pl.Affidavit).

Plaintiff's Br. at Doc. 51, Interesting, is crafting DOC's protocol. Dr. Noel additionally used the AASLD as a point of reference, Contrary to the prioritization method employed by the FBOP, THE AASLD recommended all HCV patients receive DAADS, 'regardless. of the stage of progression. Bush v. Doe (1), 2021 U.S. App. 16968 (3rd Cir.2021)

Defen. No. 24. In 2015, 2016, 2017, 2018 and 2019, Plaintiff received medical care for his HCV through the CCC which included monitoring, periodic examination, testing and review of blood test result, Appendix at D, E, F, G, H, I, Medical Records.

App. No. 24. Denied in part, admitted in part, it is denied that Plaintiff receive "care" as the word is commonly understood, it is admitted Plaintiff was monitored during those years. (Pl.Ex.C.Institutional Grievance) (App.Ex.19)

Plaintiff's No. 24 Br. at 10-11 Doc. 51. The prioritization system was also found to be unconstitutional is Abu-Jamel v. Kerertes, 2021 U.S. Dist. LEXIS 170731 (M.D.Pa.Sep.9,2021). At the center of that case was the DOC's Hepatitis C Protocol. Finding the protocol violated the Eight Amendment the Court: "[I]t is generally shown through the record that the only true 'treatment' that may directly address the illness in any significant manner would be the prescription of a DAAD.

LR. 56.1 Motion For Summary Judgement

Motion for summary Judgment filed pursuant to Fed.R.Civ.P. 56 shall be accompanied by a separate short and concise statement of material facts in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried.

The paper opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts, responding to the numbered paragraph set forth in the statement required in the foregoing as to which it is contended that there exist a genuine issue to be tried.

Statement of material facts in support of, or in opposition to, a motion shall include reference to the record that support the motion.

To Comply With Local Rule 56.1

(1) Clearly and unequivocally admit or deny whether each facts contained in defendant/statement of facts is undisputed and/or material.

(2) set forth the basis for any denial is any fact is not admitted in its entirety.

(3) Provide a citation to the record that support and such denial. Bauer, 2016 U.S. Dist. LEXIS 136082 (M.D.Pa.Sept.30,2016), Park v. Veasie 2011 U.S. Dist. LEXIS 50682 (M.D.Pa.2011).

In the case at bar, the district court misapplied the summary judgement standard, by weighing evidence and drawing inference against the non-movant. Anderson It is emphatically not the province of the district court to weigh evidence or assess credibility when passing upon a motion for summary judgment. Rather, in adjudicatin the motion. The court must view the evidence presented in the light most favorable to the opposing party. Anderson 477 U.S. at 255; and draw all reasonable inference in the light most favorable to the non-moving party. Big Apple BMW. Inc.

Where the non-moving party's evidence contradict the movant's then the non-moving must be taken as true. ld Additionally, the court is not to decide whether the evidence unquestionably favors one side or the other, or to make credibility determination, but instead must decide whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. Anderson 477 U.S at 252. see also Big Apple BMW. 974 F.2d at 1363. In reaching this determination, the Third Circuit has instructed that:

To raise a 'genuine' issue of material fact, the opponent need not match, item for item, each piece of evidence proffered by the movant, In practical terms, if the opponent has exceeded the mere scintilla" threshold and has offered a 'genuine issue of material facts,' than the court can not credit the movant's version of events against the opponent, even if the quantity of the movant's evidence far outweighs that of its opponent.

As to materiality, the substantive law will identify which facts are material. A factual dispute is "genuine" when "evidence is such that a reasonable jury could return a verdict for the non moving party . Anderson It is true that the issues of material facts require by Rule 56(c) to be presented to entitle a party to proceed to trial is not required to be resolved exclusively of the party asserting its existence;

rather, all that is required is that sufficient evidence supporting the claims factual dispute be shown to require a jury or judge to resolve the parties differing versions of the truth at trial. Anderson 391 U.S at 288.

Fed.R.Civ.P.56(c)(1). Because summary judgment can be supported or defeated by citing a developed record, court must give the parties "adequate time for discovery." Celotez Corp.

Fed.R.Civ.P. 56(e) the nonmoving is required to go beyond the pleading by way of affidavit, deposition, answer to interrogatories or the like in order to demonstrated 'specific material facts which give rise to a genuine issue. See Celotex, 477 U.S at 324; Childers v. Joseph, 842 F. 689, 694 (3d Cir.1988). In relevant part, Rule 56(e) states: If a party to properly support an assertion of facts or fail to properly address another party's assertion of facts as required by Rule 56(c), the court may: (2) consider the facts undisputed for pruposes of the motion. (3) grant summary judgment if the motion and supporting materials-including the facts considered undisputed-show that the movant is entitled to it. When Rule 56(e) shifts the burden of proof to the non-moving party, that party must produce evidence to show the existence of every element essential to its case which bears the burden of proving at trial. Celotex, 477 U.S. at 324.

Specific Facts Present Genuine Issues For Trial.

Appellant respectfully assert and contend he has satified is requirement pursuant to Rule 56(c)(1) citing to particular parts in the record that go beyond mere allegations, Rule 56(e) requires non-moving party to set forth specific facts showing there is a genuine issue for trial.

Appellant also respectfully assert and contend substantive law will identity which facts are material for proposes of summary judgment,

for this Honorable Court to agree the district court abused its discretion, if its decision not to draw inference for the non-moving party, or whether the movant was entitle to judge as a matter of law, or disregarded and or failing to address appellant's compliance of Rule 56(e), and weighting the evidence, making credibility determination and determining the truth of the matter was, a clearly erroneous finding of facts, an errant conclusion of law or improper application of law to facts, the factual and legal determination of the district is what is reviewed. In determining it the district the district court factual and legal determination.

Memorandum Opinion Discussion

A. Fact Material to Plaintiff's Claims

¶ 5. On November 13, 2015 the DOC issues its Interim Hepatitis C Protocol. (Doc.26¶6). The DOC issued updated Hepatitis C Protocol on November 7, 2016, and May 9, 2018. (ld.¶9). The protocols provide that all inmates with HCV will be entered into a chronic care clinic and periodically monitoring, examined, and tested. (ld.¶¶7,10) The prioritize inmate for treatment with DAADs. (ld,¶8.).

Substantive law as determine that the Protocol implemented by the Defendant Paul Noel, in all the listed legal authority has been deemed unconstitutional. Mumia Abu-Jamal, v. Kerestes, 778 Fed. Appx 983 at 7 (3d Cir.2019) (non precedential) (At the time of the relevant events, it was clearly established that denying a particular treatment to an inmate who indisputably warrant that treatment for nonmedical reasons would violate the Eight Amendment. Turner v. Wetzel, 2022 U.S. App. LEXIS 231124 at 3 (3d Cir.2022) (non precedential) Turner clearly sought to challenge the constitutionality of the DOC policies and protocols regarding the provision of Hepatitis C treatment to inmate Turner's operative complaint for example, specifically referenced "policies and decisions on protocol for treatment, D.Ct.Dkt.#46 at 2-3,

as well as citing to case law within the Middle District of Pennsylvania calling into question the constitutionality of the DOC's Hepatitis C. protocols for treatment with antivirals medications. See Abu-Jamal v. Wetzel 3:16-cv-2000, 2017 U.S. Dist. LEXIS 368 (M.D.Pa.Jan.3,2017) (determining the DOC Hepatitis C protocol presented a "conscious disregard of a know risk that inmate with Fibrosis ... will suffer from [H]epatitis C related complication, continued liver scarring and damage progressing into cirrhosis").

At ¶ 4 the court further held, the medical defendants assert that judgment in favor of Turner's Eight Amendment claims should be affirmed because the record demonstrate that Turner received complete and adequate care for his hepatitis C and other condition, and was routinely monitored, including blood work every six months. While the medical record submitted in support of summary judgment do chronic the the 'monitoring' of his condition, 'notably absent was any declaration from a medical provider to support the assertion that routine monitoring constitute adequate care for the treatment of Hepatitis C.'

Bush at ¶ 4, Bush's allegation also demonstrate more than a disagreement with the choice of care. First, he alleged the treatment he sought was appropriate, but that 'cost' impacted his ability to receive it. Secondly, simply 'monitoring' his condition did not constitute appropriate treatment for a situation where medication was allegedly warrant. Moreover, delay in receiving DAA treatment may render it less effective. Postawko v. Mo. Dept. of Corr, 910 F.3d 1030, 1034 (8th.2018). In sum, Bush alleged he suffered a serious medical condition and that he was allegedly denied DAA treatment because of cost. Because he has alleged that Defendant were deliberately indifferent to his medical needs, and hereby put forth a plausible claim that they violated his Eight Amendment right to medical care, his complaint was prematurely dismissed.

United States District Court's

Mumia Abu-Jamal v. Kerestes 1 2016 U.S. Dist. LEXIS 117379 (M.D.Aug.31,2016) This Court scheduled an oral argument on the defendant's Kerestes appeal, an evidentiary hearing on Plaintiff's Preliminary Injunction Motion seeking immediate treatment for his Hepatitis C, a three-day proceeding was held on December 18, 22, and 23 2015 at ¶ 6, defendant Noel testimony begun, the court denied the motion, at ¶ 15 However, were the proper defendants named, the Court believes there is sufficient basis in the record to find that the DOC's current protocol may well constitute deliberate indifference in that, by its own terms it (2016 U.S. Dist. LEXUS 40) delays treatment until an inmates's liver is sufficiently cirrhotic, etc, (Finding of Fact, supra, ¶52;Noel Test., Dec.23,2015, at 112:10-23). The DOC Defendants' own expert, Dr. Jay Cowan, acknowledges that the standard of care is to treat every patient for whom treatment with direct-acting antiviral medication is not medically contraindicated, regardless of the disease progression or status as an incarcerated person (See Finding of Facts, supra, at ¶¶ 18-21). The 'interim' protocol does not do that; instead it opts for a 'desultory monitoring' of patient who are afflicted with chronic hepatitis C, with active treatment, as indicated above, being delayed until the disease has progressed to the point that scarring of the liver has turned to cirrhosis and liver malfunction...

Mumia Abu-Jamal 2017 U.S. Dist. LEXIS 368 2 (3d Cir.2017) (Conclusions of law at No. 5 ¶ 12, The named Defendants who sit on the Hepatitis C Treatment Committee deliberately denied administering DM drugs to Plaintiff despite knowing the administering such drugs was the standard of care. In choosing a course of 'monitoring over treatment,' they consciously disregard the known risk of Plaintiff's serious medical needs, namely continued liver scarring, disease progression, and other hepatitis C complications.

At ¶ 16, Much like the interim protocol, however, the new protocol completely bars those with chronic hepatitis C but without vast fibrosis or cirrhosis from receiving DAA medications.

Mumai Abu-Jamal,

Mumai Abu-Jamal 2021 U.S. Dist. LEXIS 170731 (M.D.Pa.Sep.9,2021) (defendant Noel was not a defendant) (However the court held, The Third Circuit has previously concluded in this litigation that "[a]t the time of the relevant events, it was clearly established that denying particular treatment to an inmate who indisputably warrant that treatment (2021 U.S Dist. LEXIS 38) for nonmedical reasons would violate the Eight Amendment." Abu-Jamal, 779 F. App'x 893, 900 (3d Cir.2019). (Plaintiff expert contends that, the prescription of DAAs are the standard of medical care for the treatment of all individuals with HCV, regardless of their fibrosis score," "[m]ere observation and 'monitoring' of HCV patients, with no treatment ... falls below the standard of care;" and the DOC's delay in treating Plaintiff's HCV with a DAAD "has negatively impacted his health."

Davis v. Wetzel, 2020 U.S. Dist. LEXIS 117350 (M.D.Pa.July 6,2020) At ¶ 11 The DOC assertion that the Hepatitis C policy creates no risk of injury under the Eight Amendment is meritless. Defendant presented this same argument to the Court in Abu-Jamal, asserting that the protocol did not absolutely deny treatment to any inmate who had Hepatitis C, but rather prioritized those in need. Abu-Jamal, 2016 U.S. Dist. LEXIS 117379. The protocol's effect of delaying DAA administration until advance and irreparable damage accurred, despite knowing that the standard of care was to treat chronic Hepatitis C patients with DAA medications regardless of the stage of the disease.

Major Tillery v. Dr. Paul Noel and Dr. Pandya Haresh, 2018 U.S. Dist. LEXIS 109205 (M.D.Pa.Jun.28,2018)

The defendants filed motion to dismiss, United States Magistrate Judge Martin C. Carlson at ¶ 8, [T]here is a sufficient basis in the record to find that DOC's current protocol may well constitute deliberate indifference in that, by it own term, it day treatment until an inmate's liver is sufficiently cirrhotic that a gastroenterologist determines, at the end of a lengthy, multi-step evaluation procedure taking place over a long period of time, the inmate has esophageal varices...

At. ¶ 9, Given that the DOC Defendants expert Dr. Cowan acknowledges that "[v]ery often, you can't predict the rate of progression" of the disease. (Findings of Fact, supra, ¶ 9; Cowan Test.,Dec.22,2015 at 208:15-20) this 'monitoring approach leaves inmates vulnerable to a substantial risk of deteriorating health and death.

Finally, Chimenti v. Wetzel, 2018 U.S. Dist. LEXIS 115961 (E.D.Pa.July 18,2018) As previously stated, defendant Noel deposition testimony admitted cost was his only consideration in implementing the DOC's Hepatitis C Protocol, there is also evidence that the DOC's reliance on an inaccurate method of testing for fibrosis could resulting in the DOC's failing to treat many individuals who suffer from advance fibrosis and cirrhosis.

Memo Op. B. ¶ 9-10. Defendants Will be Granted Judgment on Plaintiff's Eight Amendment CLaims.

There is no dispute that Plaintiff's Hepatitis C qualifies as a serious medical condition for purposes of the Eight Amendment analysis. Moore v. Luffey, 767 F.3d App'x 335, 340 (3d Cir.2019) (non precedential) (recognizing Hepatitis C constitute a serious medical need). However, Plaintiff has not advance sufficient evidence to permit a tries of fact to determine that Defendant Noel acted with deliberate indifference to his serious medical neesds.

The record reflects that the DOC Hepatitis C Protocol requires a progression in severity that is required before treatment for Hepatitis C is provided, and, pursuant to the prioritization protocol, no inmate is absolutely precluded from receiving Hepatitis C treatment.

There is no genuine disputed that defendant Noel followed the DOC's Hepatitis C Protocol in treating Plaintiff's Hepatitis C.

Appellant present considerable medically document record evidence raising genuine dispute of material facts that appellant's serious medical need to be treated with direct antiviral drugs and whether defendant Dr. Noel implementation of a policy that bars those without vast fibrosis or cirrhosis from being approved for treatment for his HCV and whether his deliberate indifference caused appellant's to suffer from Hepatitis C related extra manifestation complication, and continued liver scarring and damages progressed into cirrhosis.

The genuine disputed is not that Defendant Noel followed the DOC's Hepatitis C Protocol, Defendant Noel did not treat Plantiff's Hepatitis C virus, as the district court erroneously concluded. The genuine material issue in dispute, that might affect the out come of the trial is, whether Defendant Noel implementation of a policy that bars inmate like appellant with vast fibrosis or cirrhosis from being approved for treatment with direct acting antiviral medication for his HCV and whether his deliberate indifference in stoping all Hepatitis treatments for two years, knowing the the substantial delays in treatment that is inherent in DOC"S interim and undated protocol is likely to reduce the efficacy of the medication and thereby prolong the suffering of appellant's HCV related complication of extra manifestation and cirrhosis.

Evidence Appellant Presented In The District Court

Pl. Br. ¶ 4 Doc.50 Throughout Plaintiff experienced multiple Hepatitis C side effects including, but not limited to eczema, atopic dermatitis, intrisic (allergic) eczema, secondary to sarcidosis of the skin, as a result of Plaintiff' failing liver function skin begun to painfully deteriorate. (Pl.Ex.E-Sworn Affidavit) Photos (Pl.Ex.F-F-12) (App.Ex-17),

Medical Consultation Records Past Medical History [B18.2-HCV] [K47.60 - CIRRHOSIS] (Pl.Ex.F-13-14-15) all dated 2016 (App.Ex.1-thru-4) (Pl.Ex.16-thru-29) (App.Ex.7-thru-14).

Chimenti n.4 at ¶ 12, Dr. Jay Cowan is the is the statewide Medial Disrector for Correct Care Solutions, LLC, testified ta his depotion that the symtoms exhited by individuals with chronic HCV may not be corrlelated to their Metavir scores, (Cowan Dep., DOC Defs.'Ex,at 49-50) Individuals with chronic HCV may suffer from extrahepatic and nonhepatioc conditions such as mixed cryoglobl inemia, skin rash, kidney disesae and fatigue. (ld. at 50-51) Moreover, individuals with Metavir scores of Fl may suffer from erous fatigue, anorexia, loss of appetite, headache, jaundice, ans ascites (fluid in the abdomen). (ld. at 52-53).

Dr. Kendig has also terstified that "fatigue has been associated with Hepatitis C at all stages" and that patients can suffer from extrahepatic manifestations of chronic HCV when their Metavir score are F) and Fl. (Kendig Dep.,DOC Def.'Ex.R, at 39-40).

As previous noted the protocol as established by defendant Noel, the Court believes there is sufficient basis in the record to find that the DOC's current protocol may well constitute deliberate indifference in that, by its own term it delays treatment until an inmate's liver is sufficiently cirrhotic. Mumia Abu-Jamal 778 Fed. Appx. 893. Turner Bush Memo Op. at ¶ 10

Plaintiff assert that the DOC protocol created a system of exclusion rather than a system of prioritization by pointing out that if a prisoner's disease fail to progress to a more severe stage, he simply won't be treated. (Doc.50,p.8). He asserts that this is inconsistent with the ASSLD recommendation that all HCV patient receive DAAD's regardless of the stage of progression. ld. citing Bush v. Doe (I), 858 F. App'x at 521.

The substantive law is clear, however the district court has concluded the DOC protocols and AASLD recommend that all HCV patients receive DAADs regardless of the stage of progression are appellant's assertion, not undisputed material facts in many judicial decisions.

Moreover, the system of prioritization based on an inaccurate APRI scoring system, as previously stated has been held to be unconstitutional, and places inmate at a substantial sick of serious harm or death. Davis at ¶ 13, The "prioritzation" rational has not proved convincing for this court. This court has held that "creating and enforcing a policy that denied necessary medical treatment to a suffering inmate for non-medical reasons" violates a clearly established right citing Abu-Jamal, 2018 U.S. Dist. LEXIS 79284, at *19 (citing Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir.1999)" Monmouth Cyt. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 346-47 (3d Cir.1987).

Bush at ¶ 3, In 2011, the Food and Drug Administration approved new direct-acting antivirals ("DAAs") to treat Hepatitis C, which have a ninety-five percent success rate of producing a sustained virological response. In 2015, the American Association for the Study of Liver Disease ("AASLD") and the Infectious Disease Society of American ("IDSA") begun recommending DAA treatment for all patient with chronic Hepatitis C, except those with limited life expectancy because of nonhepatic conditions. See AASLD/IDSA HCV Guidance Panel, Hepatitis C Guidance: AASLD-IDSA (2021 U.S. App. LEXIS 3) Recommendation for Testing Managing, and Treating Adult Infected with Hepatitis C Virus, 62 Hepatology 932,936 (2015). While effective, DAA,s are also expensive, costing up to $100.000 per treatment.

Mumia Abu-Jamal v. Wetzel 779 Fed, Appx. 893 (3d. Cir.2019). At ¶ 4. (The American Association for the Study of Liver Diseases and Center for Disease Control 'recommend that "every one" with chronic [H]epatitis C be treated with those anti-viral drugs irrespective of disease stage.").

Mumia Abu-Jamal v. Kerester, 2018 U.S. Dist. LEXIS 79284 at ¶ 6, (The American Association for the Study of Liver Diseases ("AASLD") currently recommends that everyone with chronic hepatitis C be 'treated with the new antiviral drugs.' (ld. at ¶ 44), Further, the Center for Disease Control has issued guidelines stating that the recommendation of the AASLD are the standard of care for treating hepatitis C. (ld. at ¶ 45). Chimenti at ¶ 2, (Plaintiff expert, Dr. Stacy Trooskin, has opined that the use of DAAs is now "the standard of medical care for the treatment of all individual... (Id. at 3).

Mumia Abu-Jamal v. Kerestes, 1. 2016 at ¶ 6, No. 19, Dr. Cowan testified The Center for Disease Control ("CDC") states that the standard of care in hepatitis C treatment in the United States is treatment with direct-acting antiviral agents such as Harvoni and Viekira Pak. (Ctr. for Disease Control, Surveillance for Viral Hepatitis C - United States, 2013, Pl.'s Ex. 17 at 5-6). The CDC refers providers caring for hepatitis C infection patients to the AASLD/IDSA guidance for continuously undated information reading hepatiti c treament.

Mumia Abu-Jamal v. Wetzel 2. 2017 at ¶ 4. No 19, Court relying on the testimony given in Abu-Jamal 1, adopting the following of facts.

(Cowan Test., Dec. 23, 2015 at 24:9-14) same. at 18-19 October 2015 guidelines ("AASLS) ("IDSA") and (CDC) standard of care in hepatitis C treatment in the United States is treatment with direct-acting antiviral agents.

Davis at ¶ 13, Citing Abu-Jamal 1, 2016, The DOC's expert in that case, Dr. Jay Cowan, acknowledged that the standard of care was "to treat every patient for whom treatment with direct-acting antiviral medications in not medically contraindictable, regardless of disease progression, rate of progression was very often unpredictable.

Tillery, at ¶ 1-2, 17. Because of the numerous benefits of early treatment, the American Association for the Study of Liver Disease ("AASLD:), recommends that everyone with chronic hepatitis C be treated with those anti-viral drugs irrespective of disease stage on the Metavir scale or prognosis for progression.

Memo. Op. ¶¶ 10-11

The district court further erroneously Concluded, However Plaintiff has provided evidence that from the 2016 Protocol to the 2018 Protocol, the priority level changed as more prisoners were treated. (Doc.56.p.4). The district court is referring the 'defendant's replyed brief, See Doc 56. re 28 Motion for Summary Judgment filed by Paul Noel (Mazeski, Vincent) (Enterd: 05/18/2022).

Defendant Noel reply brief at ¶ 4

Para 3, The May 2018 Policy changed the trigger point in the APRI score from above 2.0 to above 1.5. Docket at 27. Exhibit C. It also basically eliminates the priority 1 category from November 2016 and just renumbered 2,3 and 4 to 1, 2 and 3. That evidence that DOC caught up with the back log of F4 cirrhosis and was treating those not advanced to cirrhosis.. Thus, the Abu-Jamal case is moot and irrelevant.

Finally, Abu-Jamal is not binding on this Court, Rather, this case is similar to the recent in decision in Sutton. See, Sutton v. Noel, 2021 U.S. Dist. LEXIS 201437 (M.D.Pa.Oct.19,2021). Sutton had low APRI scores, was monitored examined and tested through CCC and eventually treated with DAAD achieving sustained virologic response. The Court granted summary judgment for Noel.

The district court finally erroneously concludes. By 2018, the priority level two had gone from requiring an APRI of greater than or equal to 2.0 down to an ARPI of greater than 0.7. (Doc.27-2,p.9;Doc. 27-3,p.9). Likewise, in the 2016 Protocol plan of treatment, if a patient had a APRI score greater than 1.5, the Infection Control Nurse has to be notified. (Doc.27-2,p.7)

By the 2018 Protocol, this was dropped to an APRI score greater than 1.0 to trigger contact with the Infection Control Nurse. (Doc.27-13,p.7). The lowering of the severity level requires to move up in prioritization show that the DOC's Protocol is not stagnant. In reality, the DOC Protocol does not result in total exclusion, as argued by Plaintiff, but actually trends in the direction of inclusion with time as more advance cases of HCV are treated. Therefore, judgment will be entered for Defendant Noel since Plaintiff has not establish that Defendant Noel at any time was deliberate indiffenet to his medical needs.

Appellant has demonstrated the district court committed reversible error and abused its discretion in 'viewing the evidence in the light most favorable to the movant, when the substantive law is well established, the evidence of the nonmovant is to be believed and all justifiable inference are to be drawn in his favor in determining whether there is a genuine issue for trial. Anderson, Meditz, also see Giles v.Kearney, 571 F.3d 318 at ¶ 5, moreover, credibility determination, weighing of the evidence and drawing of legitimate inference from the facts are jury function not those of a judge. Anderson Marino v. Indus. Crafting Co., 358 F.3d 241, 247 (3d Cir.2004) Ho-Ho Kus, 197 F.3d at 71-72 (if record taken as a whole contains conflicting evidence the facts-finder must adquately explain its reason for rejecting or discrediting competent evidence). Jiminez v. All Am. Rathskeller, Inc., 503 F.3d 247, 253 (3d Cir.2007).

DOC Hepatitis C Protocol

Pl.Br. ¶ 10, Doc. 50, Court's have consistently rejected the very very argument counsel advance in the district Davis at ¶ 13, The Hepatitis C policy's prioritization system was known in 2017 to be inadequate yet the policy continued,

and Noel was the on the Committee which put forth the policy (Doc. 143, at 23).

Record evidence establishes a genuine issue of material facts as to the subjective component of a deliberate indifference claim by putting forth the Hepatitis C protocol while knowing "the the standard of care was to treat patients with chronic Hepatitis C, DAA's regardless of the disease progression.

Nothing can be more telling and demonstrate Defendant Noel's deliberate indifference to appellant's serious medical needs than defendants Noel's own testimony. Also see, Chimenti, at ¶ 10, We conclude that there is evidence on the record that the DOC's prioritization of its treatment of inmates with DAAs pursuant to the Hepatitis C protocol is influenced by the 'cost' of that treatment rather than solely by medical need of inmates with chronic HCV and, thus, that the DOC has delayed necessary medical treatment for a non-medical reason.

At ¶ 9 -10 Dr. Noel confirmed during his deposition that the 'only prioritization factor that he considered at that time was cost. (Noel Dep. at 82). So, in Dr. Noel's opinion, even though APRI score of 1.0 might qualify an inmate for DAA treatment in other prison system, the DOC would have to "find a higher APRI score." (Id.) .

APRI Scores Are Highly Inaccurate

2    Chimenti at ¶ 12, As we discussed earlier, both Dr. Noel and Dr. Cowan acknowledge that APRI scores are only indirect markers of fibrosis and APRI scores at the 1.5 to 2 level only have "a sensitivity accuracy of about 48 percent." (Cowan Dep. at 42; see also Noel Decl., DOC Defs, 'Ex.N,¶23). Consequently using APRI scores could mean 'missing cirrhosis in half of inmates with APRI scores at the 1.5 to 2 level.' (Cowan Dep. at 42). In addition, an APRI score of 1 would miss approximately 23% of patent with cirrhosis. (Cowan Dep. at 41-43).

Lower APRI scores however, are known to be highly inaccurate, missing may instances of cirrhosis, individuals with lower APRI scores may actually have advance fibrosis or cirrhosis. That is why it is important for a range of information to be considered when assessing the degree of disease progression and the extent of liver damage caused by Hepatitis C. Center for Disease Control and Prevention. (May 4,2016). Hepatitis C kill More Americans than any other Infectious Disease/CDC online                 Newsroom/CDC                 From, http://www.cdc.gov/media/release/2016/p0504-hepc-mortality.htn.

The record contains genuine issues of material fact about the significant medically documented record evidence that the defendant nor the court addressed/and or disputed by the defendant, appellant has develop cirrhosis, because of the inherent delay in treatment to appellant caused by defendant Noel's implementation of the DOC's Hepatitis C Protocol.

Rule 56(e)(2) provides "[I]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of facts as requires by Rule 56(c), the court may ... consider the fact undisputed for the purposes of the motion. Weitzner, 909 F.3d 604, 613-14 (3d. Cir.2018).

Clearly this Honorable Court is left with a definite and firm conviction that a mistake has been committed by the district courts. Krasnov v. Brnan, 465 F.2d 1298, 1302 (3d. 1972).

A resonable jury could infer that the defendant has a subjective awareness the DOC's Hepatitis C Protocol's pose a substantial risk a harm or death to inmates untreated Hepatitis C Virus.

The record evidence crates a triable issue as the defendant Noel own deposition admitting cost was only consideration in implementing the Hepatitis C Protocols, first, discontinuing all Hepatitis C treatment to all inmates for two years,

without a proper replacement treatment, a jury can infer the delay in treatment may have caused appellant's Hepatitis C to progress to cirrhosis, reducing the medication efficacy, knowing the standard of care was to treat all Hepatitis C inmate regardless of the stage of the disease, and whether this constitute deliberate indifference to appellant's serious medical needs. For all the aboved stated reason appellant respectfully request that Honorable Court will vacate the district court's erroneous judgments and remand for trial with the appointment of counsel.

THE DISTRICT COURT ERRED AS A MATTER OF LAW, BY OVERLOOOKING/AND OR COMPLETELY DISREGARDING APPELLANT'S COUNTER STATEMENT OF GENUINE ISSUES OF MATERIAL FACT IN DISPUTE, GRANTING SUMMARY JUDGMENT TO DEFENDANT DR HARESH PANDYA DEVIATING FROM HOLDING OF THE UNITED STATES SUPREME COURT, THIRD CIRCUIT AND OTHER COURT'S OF APPEALS AND ALL UNITED STATE DISTRICT COURT'S WITH RESPECT TO THE APPLICATION OF THE FEDERAL RULES OF CIVIL PROCEDURE RULE 56, THE DEFENDANT IS NOT ENTITLED TO JUDGMENT AS A MATTER OF LAW"

L.R.A. 28.1(b) Brief of the Appellant

Statement of The Standard or Scope of Review:

Whether The District Court Abused It's Discretion If It's Decision Not Draw Inference For The Non-Moving Party Rest Upon "A Clearly Erroneous Finding Of Facts." Errant Conclusion of Law or Improper Application Of Law To Facts:

Whether Summary Judgment Was Improper And The District Court Abused It's Discretion, Where The Pleading, Deposition, Answer To Interrogatories And Affidavit If Any, Show There Exist Genuine Issues Of Material Facts, And The Moving Party Was Not Entitled To Judgment As A Matter Of Law:

Where The District Court Findings Are Clearly Erroneous, Disregarded And Failing To Address Appellant's Compliance With Federal Rule Of Civil Procedure Rule 56(e), Satisfying His Duty Of Setting Forth Specific Facts Showing That Genuine Issues Of Material Fact Exist And That Reasonable Fact Finders Could Rule In His Favor:

Whether The District Court Abused It's Discretion In Weighing the Evidence Making Credibility Determinations. And Determining The Truth Of The Matter, But Failed To Determine Whether There Is Genuine Issues For Trial.

Appellant respectfully assert the district court erred as a matter of law, abusing its discretion by overlooking/and or completely disregarding appellant's counter statement of genuine issued of material facts in dispute. On September 9, 2021;

defendant Dr. Pandya filed motion for summary judgment by Haresh Pandya (Attachment: # 1 Proposed Order, #2 Exhibit(s) A - DOC Medical Records)(Lombard, Benjamin) (Doc.28), Consisting of 13 Volumes 843 Exhibits, see Appellant's Counter Statement of Material Facts (Doc.28), 1. Defen. No.1 The defendant has submitted 147 question, 835 Exhibits scrambled through 13 volumes, 50% are either irrelevant and or inmaterial pursuant to Middle District Local Rule 56.1 & Fed.R.Civ.P Rule 56. (App.Ex.A.Dist.Ct.Dk.Sheet.). statement of facts (Doc.29), brief in support summary judgment motion (Doc.30).

In response pursuant Pennsylvania Middle District Local Rule 56.1 appellant filed response to defendants summary judgement motion (Doc.52), brief in opposition to summary judgment motion (Doc.53), counter statement of material fact, and attached exhibits (Pl.Ex.A-thru-A-196-B-thu-B-6) (Def.Ex.1-thru-48) (Doc.54).

2. Defendant Panday Will Be Granted Judgment

Memo. Op. At ¶ 11, Plaintiff also alleges that defendant Pandya failed to provide medical care for his Hepatitis C. As discussed above, there is no dispute that Plaintiff's Hepatitis C qualifies as serious medical condition for purposes of the Eight Amendment analysis. However, Plaintiff has not advance sufficient evidence to permit a trier of fact to determine that Defendant Pandya acted with deliberate indifference to his serious medical needs.

As previously argued, the district court has deviate from well established United States Supreme Court, all Courts of Appeal and District Court's firmly established law, with its erroneous misapplication of the Federal Rule of Civil Procedure Rule 56(a), holding, Summary judgment either granted or denied is proper where the pleadings, depositions, answers to interrgatories, admission, and affidavits show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

In conducting this review, we review the record in the light most favorable to the nonmoving and draw all reasonable inference in his favor. Anderson, Celotex, Micini, Giles v. Kearney, Yow.

This test was not utilized initially in it's analysis of appellant's deliberate indifference claim, the judgment entered on behalf of defendant Pandya was based 'exclusively on 'disputed statement of material facts,' the district court erroneously concluded;

Memo. Op. at ¶¶ 11-12 Para 3.

The record is replete with evidence that Plaintiff received regular medical care for his condition, consistent with the DOC's treatment protocol. The uncontroverted record evidence established that Plaintiff was being monitored and treated in accordance with these protocols, and the HCV was ultimately resolves and the liver size reduced. Specifically, the record before the court shows that in November of 2016. Plaintiff APRI score was 0.193. (Doc.28-2,p.423).

(Def.Ex.423) (Pl.Ex.10) (App.Ex.1) is correctly dated December 1, 2016, Chronic Clinic Progress Note/Plow Sheet, APRI 0.193 MELD score (Cirrhosis): 7 CTP Score (Cirrhosis): 5 Defendant Pandya noted Hep-C Good, yet noting 'Cirrosis' which the district court failed to address this 'disputed material fact.'

The district further concluded; By April of 2017, his APRI was 0.224. (id.,p.833), Plaintiff underwent liver ultrasound on January 5, 2017 and July 6, 2017, which showed a progression from mildly enlarged heterogeneous echogenic liver to moderately enlarged heterogeous echogenic liver. (Doc.26.¶27;Doc.27-9,pp.2-3). In November of 2017, his APRI score was 0.31. (id.,p.73). He was treated with a DAAD, Zepatier, from February 4, 2019 through April 28, 2019. (id.¶35). On June 6, 2019, an ultrasound showed a mildly heterogenous liver. (Doc.27-9,p.5). By December of 2019, Plaintiff's APRI score was 0.174. (Doc.28-,pp.539).

(Def.Ex.833) (Pl.Ex.7) (App.Ex.21) is correctly dated June 1, 2017, defendant Pandya Chronic Clinic Progress Note/Flow Sheet, APRI 0.224 MELD Score (Cirrhosis): 7 CTP Score (Cirrhosis) 5   (Assessment) Cirrhosis

First and foremost, as previously demonstrated, the DOC's Hepatitis C treatment protocol is well established law in Pennsylvania that has been held to be unconstitutional and the 'monitoring' instead of treatment with DAA violate the Eight Amendment,

the standard of care is to treat all individuals with DAA's regardless of disease progression. Mumia Abu-Jamal 2016, 2017, 2018, 2021, Davis 2020, Major Tillery 2018, (Magistrate Judge Martin C. Carlson, R&R Adopted) (Granted Appellant Dispositive Motion Doc.47), Chimemti 2018 E.D., Third Circuit Court of Appeals , Abu-Jamal 779 Fed. App'x 893 (2019), Turner 2022, Bush 2021. Futher, as previously noted, APRI Scores Are Highly Inaccurated,' missing many instances of cirrhosis; individuals with 'lower APRI scores' may actually have advance fibrosis or cirrhosis. That is why it is important for a range of information should be considered when assessing the degree and the extent of liver damage caused by Hepatitis C. Center for Disease Control and Prevention. (May 4,2016) (Pl.Br.¶,6, Doc.53). Chimenti at ¶ 12, (Cowan Dep. at 42; see also Noel Decl. DOC Defs, 'Ex.N.¶23).

Appellant presented genuine issues of material facts, (Def.Ex.423) (Pl.Ex.10) (App.Ex.1) December 1, 2016 and (Def.Ex.833) (Pl.Ex.7) (App.Ex.21) June 1, 2017, concealed cirrhosis diagnoses, not disputed by defendant Pandya or addressed by the district court erroneously granting judgment, on an errant conclusion of the law to the facts...

Defendant Pandya submitted 147 question in their statement of material facts (Doc.29), appellant responded with counter statement of 'disputed' material facts with '236' extrinsic and non extrinsic exhibits (Doc.54).

'Notably' missing from the district court's Memo. Op. is any reference to the defendant demonstrating the 'absence or present' of a disputed material facts that's required in the grant or denial of summary judgment. Anderson The court may grant summary judgment when the submission in the record "show" that there is no genuine issue as to any material facts and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c), in determining whether summary judgment is appropriate the evidence of the nonmoving is to be believed,

and all justifiable inferences are to be drawn in his favor.

The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury, or just whether it is so one-sided that one party must prevail as a matter of law." id. at 251-52.

As the Supreme Court has explained, "deliberate indifference entails something more than mere negligence" and is a subjective standard that requires the official to both "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists' and to "also draw the inference." Farmer v. Brennan, 511 U.S. 825, 835-37, 114 S.Ct. 1970, 128 L.Ed 2d 811 (1994).

In prior cases, we have found deliberate indifference in a variety of contexts including where (1) prison authorities deny reasonable request for medical treatment, (2) knowledge of the need for medical care is accompanied by the intentional refusal to provide it, (3) necessary medical treatment is delayed for non-medical reasons; and (4) prison authorities prevent an inmate from receiving recommended treatment for serious medical needs. Monmouth Cty. Corr. Inst. v. Lanzaro 834 F.2d at 347 (3d Cir.1987).

Appellant has presented uncontrovertable 'extrinsic and non extrinsic evidence that would permit a 'jury' to conclude that defendant Pandya actions constitutes "a substantial departure from accepted professional judgment, practice, or standard, "a reasonable jury court find that he was deliberate indifferent to appellant serious medical needs.

Undisputed Material Issue Of Fact Appellant Has Cirrhosis:

It is 'undisputed extrinsic evidence presented in the district court, defendant Pandya failed to disputed, and the district court failed to make any reference too appellant's 'Cirrhosis',

(Pl.Ex.A.163-164-165-166-170-171-172-174-181.Doc.54),

(Def.Ex.84-451-456-469-533-488-462-775-494--470-454-159-464-151-149-144-161-138-157.Doc.28), (App.Ex.1-2-3-4-7-thur-14).

Undisputed Issue Of Material Facts Dr. Pandya Was Well Aware Prior To "2017 Appellant HCV Virus Progressed To Cirrhosis:

"[I]t is also 'undisputed' extrinsic evidence signed by defendant Pandya was well aware 'prior' to '2017' without appellant's knowledge, that appellant has been previously diagnosed with 'cirrhosis.' (Pl.Ex.11) (Def.Ex.451-452) (App.Ex.20-21), for which there is no cure. (Pl.Ex.F.30-Cirrhosis,Info,Mayo Clinic.Doc.51) (App.Ex.15), which reads in relevant parts;"

Cirrhosis info from the Mayo Clinic: Cirrhosis is a late stage scaring (fibrosis) of the liver caused by many forms of liver disease and condition, such as Hepatitis and chronic alcoholism.

The liver damages done by cirrhosis generally can't be undone. But liver cirrhosis is diagnosed early' and the cause is treated, further damage can be limited. Treatment can help, but this 'condition' can't be 'cured.'

Undisputed Issue Of Material Fact, Dr. Pandya And Staff Duplicated Appellant Medical Record To Conceal Cirrhosis Diagnosis:

There is also unbelievable 'undisputed' extrinsic evidence 'signed' by defendant Pandya, that he and his staff 'duplicated' appellant's December 28, 2016 Consultation Medical Records concealing any noting appellant has "Cirrhosis." (App.Ex.2) (Def.Ex.451-452.Doc.27) (Pl.Ex.11-12.Doc.54) 'states' cirrhosis compare (Pl.Ex.20.Doc.54) (Def.Ex.488.Doc.27) (App.Ex.5), 'date identical December 28, 2016', 'No Cirrhosis.'

Undisputed Issue Of Material Facts Certified Nurse Practitioner Duplicated Appellant Medical Record Concealing Cirrhosis Diagnoses:

There in also 'undisputed extrinsic evidence', defendant Pandya Registered Certified Nurse Practitioner also duplicated appellant's medical records successfully concealing appellant's cirrhosis diagnoses. (Pl.Ex.20.Doc.54) (Def.Ex.446.Doc.27) (App.Ex.3-2) 'Cirrhosis' dated;

(Doc.28-2,p.464). Keppra was prescribed by the Neurologist in June of 2018 (id.,¶.128). In July of 2018, Plaintiff refused to take his Keppra (id.,pp.106,108). Plaintiff has to taper off his previous seizure medication while increasing his Keppra, which took time. Therefore, the delay in not starting the Zepatier until February of 2019, at ¶ 14 was not directly the result of the DOC's Protocol's but was caused by Plaintiff's delay in the reduction of his previous seizure medications and transition to Keppra.

This allegation by defendant was 'disputed' 50. Defen. No 56 (Pl.Ex.28.Doc.54) (Defen.Ex.472.Doc.54) (App.Ex.23) Please have site medical director refer to Neurology so 'medication' can be 'administered.' See (Pl.Ex.49-55) (App.Ex. 24); Institutional Grievance Plaintiff refuse to take 'toxis levels' of my seizure medication, Mr. Iannzzi failed to reduce the does as prescribe by Neurologist, instead extended to toxic level. Defendant Pandya was to administered medication, not the Nurse Practitioner, also see (Pl.Ex-55-56) (App.Ex.25) defendant ignored medication reduction request, would not schedule by-weekly tele-meds with Neurologist.

Memo Op. at ¶ 14, Plaintiff further asses that the delay in treatment caused him to suffer from eczema, which he demonstrates with photos dated August of 2021. (Doc.50,51). In the medical records provided by Defendants, when Plaintiff present with skin complaint. he was provided treatment. (Doc.28-2,pp.43-44,157-58,475,504,820-21). The photos from August of 2021, are well past Plaintiff's the time period when Plaintiff received treatment with DAADs. He has provided no evidence that depicted in the August 2021 photos is the result of the lack of DAAs treatment received back in 2016 or 2017. Additionally, these photos are not medical evidence. See Altenback v. Ianizzi, 646 F. App'x 147, 152 (3d Cir.2016) (nonprecedential) requiring inmates to submit"'verif[ied] medical evidence .. to establish the detrimental effect of [the] delay' [in medical treatment] as he must do to support a delayed treatment claim"). Therefore, judgment will be entered in favor of defendant Pandya because Plaintiff has not established that Defendant Pandya at any time was deliberate indifferent to his medical needs.

The district is court is misapplying this courts holding in Altenbach v. Ianuzzi, On appeal, this court summarily affirmed, appeal does not present a substantial question, appellant would still fail because he offered no verified medical evidence to support a delayed treatment claim. Counsel for defendant Noel begins his argument by suggesting the facts of this case are comparable to those of Forrest v. Wetzel, 2020 U.S. Dist. LEXIS 87641 (M.D.Pa.Oct.23,2018);

there the court found, plaintiff's claim failed insofar as he was merely complaining of "delayed" treatment, not the complete "denial" of treatment, appellant does not now nor has ever made such a claim.

Appellant presented 'verified medical evidence' of appellant skin complaint, as described by the district court, Counter Statement of Material Facts 102 Defen. 141 'disputed' See (Pl.Ex 111-124) (App.26) PA - Chronic Care Clinic Form Electronically Signed by Stanish Stanley dated August 11, 2021, 8 of 13 Described Liver, 'Disease-Related Skin Abnormality.' (Pl.Ex.139-thru-151-Photos-8/17/21) (App.Ex.17).

Also See (Pl.Ex.A-152-thru-160) 'Catuneous Manifestation of Hepatitis C,' Pathophysiology, Hepatitis C infection is associated with many 'extrahepatic manifestation' in joints, muscles, neural and gastrointestinal tissues, and 'skin.' In this article, the many dermatologic manifestation of hepatitis C virus (HCV) are classified according to disease with proven or suspected etiology or causation, dated April 20, 2020 Author: Robert A Schwartz, MD, MPH; Chief Editor: Dirk M Elston. Consultation Record presented in the district Court Health Information;

Significant Past Medical & Surgical History In Consultation Records:

Health Information [D86.3 - Sarcoidosis Of Skin] (L20.84 - Eczema Atopic Dermatitis Intrinic (Allergic) Eczema]. The medical department describe appellants liver disease skin related/extrahepatic manifestation, as Eczema, not appellant, who is still being treated as of this appellate brief. First extension Plaintiff very ill, with rash, breakout, excruciating pain.(Doc.31-32), extension three, Plaintiff suffering from liver-disease skin systoms attached photos (App.Ex.17) (Doc.37-38); Plaintiff hospitalized almost dies from Diabetee emergency room glocose was 1186 returned partial blindness (Doc.41-42). It is undisputed defendant Noel stoped all hepatitis C treatment in 2013 until 2015.

It also indisputed defendant Pandya withheld 'cirrhosis diagnoses' denying treatment until compelled by treat of civil litigation. The court concluded appellant was given skin medication when he needed it, completely ignoring. (Pl.Br.at ¶4,Doc.53). The Defendant did not refer Plaintiff for antiviral drug treatment [reducing efficacy]; until grievance, threating litigation against defendant and the Hepatitis C Committee (App.Ex.19). Jones v. Tritt, 2017 U.S. Dist. LEXIS 156168 (M.D.Pa.Oct.5,2017) (Dr. Pandya denied summary judgment, failed to provide previously prescribed sarcoidosis skin medication), (Mr. Iannuzzi dismissed as defendant).

Memo. Op. at ¶ 14-15 The court concluded; Given the well document course of treatment set forth in the record, Plaintiff has failed to show that issues of material fact exist as to whether Defendant were deliberate indifference to his serious medical needs. As a factual matter, it is undisputed that Plaintiff was carefully monitored by prison medical staff in accordance with the DOC's Hepatitis C Protocols. The Third Circuit has upheld the constitutionality of medical choices relating to the care and treatment of Hepatitis C and has rejected inmates Eight Amendment challenges to this type of medical care, See, e.g., Moore, 767 F. App'x 335 (affirming summary judgment on inmate's Eight Amendment claims relating to treatment of Hepatitis C and finding doctor appropriately monitored and treated inmate in accordance with policy). Because Plaintiff failed to establish an Eight Amendment violation, judgement will be entered in favor of Defendants on their motions for summary judgment, Docs, 24,28, will be granted.

Conclusion

Again, the district court is misapplying this court holding in Moore a pre-trial deatainee HCV treatment claims was dismissed at the pleading stage, the court does not hold monitoring is appropriate treatment for Hepatitis C virus, just the contrary, Mumia Abu-Jamal, 779 F. App'x 893. Credibility determination, the weighing of evidence, and the drawing of legitimate inference from the facts are jury functions, not those of a judge, the evidence of the non-movant is to believed and all justifiable inference are to draw in his favor. The record is sufficient for a reasonable jury to find that defendant Noel and Pandya acted with deliberate indifference to appellant's serious medical needs and respectfully request that the judgement be vacated and remanded for trial.

Dated: 8/7/23

Barry Jones

APPENDIX APPELLANT'S EXHIBITS

DEFENDANT'S EXHIBIT'S DOCKET 28

APPELLANT'S EXHIBIT'S DOCKET 54

NO.1 423 12/1/16   CHRONIC CLINIC PLOW/SHEET HEP-C GOOD CONTROL MELD SCORE (CIRRHOSIS): 7 CTP SCORE (CIRRHOSIS): 5. DR. PANDYA

NO.2 451 12/28/16 CONSULTATION RECORD HCV, CIRRHOSIS, SKIN UNSPEC , SARCOIDOSIS OF SKIN, ECZEMA, ATOPIC DERMATITIS, INTRINSIC (ALLERGIC) ECZEMA. DR. PANDYA

NO.3 446 10/20/16 CONSULTATION RECORD HCV, CIRRHOSIS, SKIN INSPEC, SARCOIDOSIS OF SKIN, ECZEMA, ATOPIC DERMATITIS, INTRINSIC (ALLERGIC) ECZEMA, MR. IANNUZZI

NO.4 448 10/27/2016 CONSULTATION RECORD HCV, CIRRHOSIS, SARCOIDOSIS OF SKIN, ECZEMA, ATOPIC DERMATITIS, INTRINSIC (ALLERGIC) ECZEMA, MR. IANNUZZI

NO.5 488 12/26/16 CONSULTATION RECORD, HCV, "NO CIRRHOSIS," NO DISEASES, DR. PANDYA

NO.6 490 10/27/2016 CONSULTATION RECORD HCV, SKIN UNSPEC, "NO CIRRHOSIS," MR. IANNUZZI

NO.7 A-163 2/16/18 CONSULTATION RECORD HCV, "CIRRHOSIS," SKIN UNSPEC, SARCOIDOSIS OF SKIN, ECZEMA, ATOPIC DERMATITIS, INTRINSCI (ALLERGIC) ECZEMA, DR. PANDYA

NO.8 A-164 2/16/2018 REFERRING PHYSICIAN COMMENTS: HCV AND KNOWN CIRRHOSIS , DERMAL SARCOIDAL/LICHEN NODULARIS TYPE LESIONS DR. PANDYA.

NO.9 A-165 4/13/2018 CONSULTATION RECORD HCV, CIRRHOSIS, SKIN UNSPEC, ECZEMA ATOPIC DERMATITIS, INTRINIC (ALLERGIC) ECZEMA, DR. PANDYA

NO.10 404 04/25/2018 TEMPLE HEALTH PHILA, FIBROSURE F4 (12/6/17) KELLY LATTANZI, CRNP.

NO.11 A-170 5/14/18 CONSULTATION RECORD HCV, CIRRHOSIS, SKIN UNSPEC, SARCOIDOSIS OF SKIN, ECZEMA, ATOPIC DERMATITIS, INTRINSIC (ALLERGIC) ECZEMA REFERRING PHYSICIAN COMMENTS 10 YEARS WITHOUT A SEIZURE REPORTED, MR. IANNUZZI

NO.12 A-171 05/30/18 CHANGE IN MEDICATION TO START ANTIVIRAL DRUG TREATMENT DR KEVIN KELLY

NO.13 A-172 6/2/2018 CONSULTATION RECORD PRESENT ILLNESS HCV, CIRRHOSIS OF SKIN, ECZEMA, ATOPIC DERMATITIS, INTRINSIC (ALLERGIC) ECZEMA, NEUROLOGIST FOLLOWUP VIST VIA TELEMEDICINE, DR. PANDYA

NO.14 A-174 02/09/2018 DC-471 PROGRESS NOTE MEDICAL PROVIDER SARCOIDOSIS, ITCH BECAUSE OF CIRRHOSIS, WELL COMPENSATED APPROVED FOR TREATMENT DR. PANDYA

NO.15 A-161 CIRRHOSIS INFO MAYO CLINIC CONDITION CAN'T BE CURED

NO.16 APRIL 13, 2022 SWORN AFFIDAVIT OF APPELLANT BARRY JONES

NO.17-THUR-17-12 8/17/2021 SCI-FRACKVILLE PHOTOS AS REQUEST BY PA

NO.18 12/19/2022 HOSPITAL MEDICAL SERVICE CIRRHOSIS OF THE LIVER, HCV CURED AFTER ANTIVIRAL TREATMENT DR. PAVAN GARALA

NO.19 8/21/2017 INSTITUTIONAL GRIEVANCE DR. PANDYA, HEP-C TREATMENT SEEKING ANTIVIRAL TREATMENT, HEALTH PROBLEMS, INCLUDING CIRRHOSIS, CONCENTRATION AND MEMORY PROBLEM, CHRONIC FATIGUE, WORSEN SKIN RASH.

NO.20 6/1/2017 CONSULTATION RECORD HCV, SKIN UNSPEC, NO SARCOIDOSIS OF SKIN, 'NO CIRRHOSIS' NO ECZEMA, ATOPIC DERMATITIS, INTRINSIC (ALLERGIC) ECZEMA DR. PANDYA

NO.21 833 6/1/2017 CHRONIC CLINIC PROGRESS NOTE/FLOW SHEET MELD SCORE (CIRRHOSIS):7 CTP SCORE (CIRRHOSIS):5 (A) CIRRHOSIS

NO.22 6/30/2016 INMATE REVIEW HIS MEDICAL RECORDS PER HIS REQUEST MS. JENNIFER MATEYAK

NO.23 4/25/2018 PLEASE HAVE SITE MEDICAL DIRECTOR REFER TO NEUROLOGY SO MEDICATION CAN BE SWITCHED

NO.24 A-49-THRU-54 6/21/2018 INSTITUTIONAL GRIEVANCE TOXIC MEDICATION, FAILED TO DECREASE BY MR IANNUZZI CRNP

NO.25 A-56-57 6/28/2018 INSTITUTIONAL GRIEVANCE ON DR PANDYA JUSTIFYING CRNP ORDERED TOXIC LEVELS MEDICATION 300 MG'S DOUBLING KEPLER FROM 750 TO 1500, 90 MG'S PHENOBARBITAL PER DAY

NO.26 A-111-113-18 08/11/2021 LIVER DISEASE RELATED SKIN ABNORMALITY, UBIGUOUS HYPERPIGMENTED LESION DR. STANISH.

DATED AUGUST 7, 2023

/S/
BARRY JONES QK-3379

# Exhibit -“A”

ADMINO,APPEAL,ARC,CLOSED,PRSLC,STANDARD,WVSENT

# United States District Court
# Middle District of Pennsylvania (Scranton)
# CIVIL DOCKET FOR CASE #: 3:19-cv-00004-JPW-EW

Jones v. Noel et al
Assigned to: Honorable Jennifer P. Wilson
Referred to: Pro Se Law Clerk EW
Case in other court: Third Circuit, 22-02992
Cause: 42:1983 Prisoner Civil Rights

Date Filed: 01/02/2019
Date Terminated: 09/30/2022
Jury Demand: Defendant
Nature of Suit: 550 Prisoner: Civil Rights
Jurisdiction: Federal Question

**Plaintiff**

**Barry Jones** represented by **Barry Jones**
QK-3379
SPECIAL MAIL - OPEN ONLY IN THE PRESENCE OF THE INMATE
SCI Frackville
1111 Altamont Boulevard
Frackville, PA 17931
PRO SE

V.

**Defendant**

**Dr. Paul Noel** represented by **Vincent R Mazeski**
Chief Counsel's Office
Pennsylvania Department of Corrections
1920 Technology Parkway
Mechanicsburg, PA 17050
717-728-7763
Fax: 717-728-0307
Email: vmazeski@pa.gov
*ATTORNEY TO BE NOTICED*

**Defendant**

**Dr. Haresh Pandya** represented by **Benjamin M. Lombard**
Weber Gallagher Simpson Stapleton Fires & Newby LLP
4 PPG Place
5th Floor
Pittsburgh, PA 15222
412-281-4588
Email: blombard@wglaw.com
*ATTORNEY TO BE NOTICED*

**Samuel H. Foreman**
Weber, Gallagher, Simpson, Stapleton, Fires & Newby, LLP
Four PPG Place
5th Floor

Pittsburgh, PA 15222
(412) 281-4541
Fax: (412) 281-4547
Email: sforeman@wglaw.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 01/02/2019 | 1 | COMPLAINT against Paul Noel, Haresh Pandya lodged pending the disposition of the Motion to Proceed In Forma Pauperis, filed by Barry Jones. (Attachments: # 1 Civil Cover Sheet)(bg) (Entered: 01/04/2019) |
| 01/02/2019 | 2 | MOTION for Leave to Proceed in forma pauperis by Barry Jones.(bg) (Entered: 01/04/2019) |
| 01/02/2019 | 3 | PRISONER AUTHORIZATION by Barry Jones allowing prison to submit copy of prisoner's trust fund account to the court, and approving the entire filing fee to be deducted from prisoner inmate account.. (bg) (Entered: 01/04/2019) |
| 01/07/2019 | 4 | **THIRTY (30) DAY ADMINISTRATIVE ORDER** directing the prisoner to pay the filing fee or file the revised Application to Proceed IFP within 30 days or case will be dismissed. Signed by LP on 01/07/2019. (Attachments: # 1 IFP (Civil Rights))(lp) (Entered: 01/07/2019) |
| 01/25/2019 | 5 | Inmate Account Statement re Barry Jones. (bg) Modified on 1/25/2019 (lp). **with completed motion for IFP.** (Entered: 01/25/2019) |
| 03/24/2020 | | VERBAL ORDER by Chief Judge Christopher C. Conner - Case Reassigned to Honorable Jennifer P. Wilson. (ao) (Entered: 03/24/2020) |
| 05/15/2020 | 6 | ORDER DIRECTING THE CLERK'S OFFICE TO SEND AO 398 AND 399 WAIVERS FORMS to defendants ; granting 2 Motion for Leave to Proceed in forma pauperis. The complaint (Doc. 1) is deemed filed. Signed by Honorable Jennifer P. Wilson on 05/15/2020. (mfa) (Entered: 05/15/2020) |
| 05/15/2020 | 7 | Waiver of Service forms (AO 398 and 399) Mailed to All Defendants Waiver of Service due by 6/15/2020. (Attachments: # 1 Mailing Labels)(mfa) (Entered: 05/15/2020) |
| 06/09/2020 | 8 | NOTICE of Appearance by Samuel H. Foreman on behalf of Haresh Pandya (Foreman, Samuel) (Entered: 06/09/2020) |
| 06/09/2020 | 9 | NOTICE of Appearance by Benjamin M. Lombard on behalf of Haresh Pandya (Lombard, Benjamin) (Entered: 06/09/2020) |
| 06/09/2020 | 10 | WAIVER OF SERVICE Returned by Haresh Pandya. Haresh Pandya waiver sent on 5/15/2020, answer due 7/14/2020. (Lombard, Benjamin) (Entered: 06/09/2020) |
| 06/09/2020 | | Receipt of payment from BARRY JONES in the amount of $48.55 for PLRA CIVIL FILING FEE. Transaction posted on 6/8/2020. Receipt number 333071621 processed by gangeli. (jjs) (Entered: 06/09/2020) |
| 06/12/2020 | | Receipt of payment from BARRY JONES in the amount of $108.55 for PLRA CIVIL FILING FEE. Transaction posted on 6/11/2020. Receipt number 111025542 processed by aarlidge. (tp) (Entered: 06/12/2020) |
| 06/15/2020 | 11 | WAIVER OF SERVICE Returned by Paul Noel. Paul Noel waiver sent on 5/15/2020, answer due 7/14/2020. (Mazeski, Vincent) (Entered: 06/15/2020) |
| 06/15/2020 | 12 | NOTICE of Appearance by Vincent R Mazeski on behalf of Paul Noel (Mazeski, |

| | | |
|---|---|---|
| | | Vincent) (Entered: 06/15/2020) |
| 06/15/2020 | 13 | DEMAND for Trial by Jury by Paul Noel. (Mazeski, Vincent) (Entered: 06/15/2020) |
| 07/08/2020 | 14 | MOTION to Compel filed by Barry Jones. (Attachments: # 1 Proposed Order)(rw) (Entered: 07/08/2020) |
| 07/08/2020 | 15 | BRIEF IN SUPPORT, re: MOTION 14 to Compel filed by Barry Jones.(rw) (Entered: 07/08/2020) |
| 07/10/2020 | | Receipt of payment from BARRY JONES in the amount of $4.87 for PLRA CIVIL FILING FEE. Transaction posted on 7/9/2020. Receipt number 111025686 processed by aarlidge. (tp) (Entered: 07/10/2020) |
| 07/10/2020 | 16 | BRIEF IN OPPOSITION re 14 MOTION to Compel filed by Paul Noel.(Mazeski, Vincent) (Entered: 07/10/2020) |
| 07/13/2020 | 17 | ANSWER to Complaint *with Affirmative Defenses* by Haresh Pandya.(Lombard, Benjamin) (Entered: 07/13/2020) |
| 07/13/2020 | 18 | ANSWER to Complaint by Paul Noel.(Mazeski, Vincent) (Entered: 07/13/2020) |
| 08/14/2020 | | Receipt of payment from BARRY JONES in the amount of $94.64 for PLRA CIVIL FILING FEE. Transaction posted on 8/13/2020. Receipt number 111025861 processed by aarlidge. (jjs) (Entered: 08/14/2020) |
| 09/11/2020 | | Receipt of payment from BARRY JONES in the amount of $141.94 for PLRA CIVIL FILING FEE. Transaction posted on 9/10/2020. Receipt number 111025986 processed by aarlidge. (jjs) (Entered: 09/11/2020) |
| 12/22/2020 | 19 | ORDER denying 14 Motion to Compel. Signed by Honorable Jennifer P. Wilson on 12/22/2020 (ve) (Entered: 12/22/2020) |
| 12/22/2020 | 20 | CASE MANAGEMENT ORDER - IT IS ORDERED that: Fact discovery shall be completed by June 30, 2021. Dispositive motions and supporting briefs shall be filed by July 30, 2021. See order for further details. Signed by Honorable Jennifer P. Wilson on 12/22/2020. (ve) (Entered: 12/22/2020) |
| 07/27/2021 | 21 | NOTICE of Change of Inmate Number filed by Barry Jones. (aaa) (Entered: 07/27/2021) |
| 07/29/2021 | 22 | First MOTION for Extension of Time to file his Motion for Summary Judgment by Haresh Pandya. (Attachments: # 1 Proposed Order)(Lombard, Benjamin) (Entered: 07/29/2021) |
| 07/30/2021 | 23 | ORDER - IT IS ORDERED that the 22 Motion to Extend Time to Submit a Motion for Summary Judgment is GRANTED. Defendant is granted until 8/9/2021 to submit his motion. Signed by Honorable Jennifer P. Wilson on 7/30/2021. (sc) (Entered: 07/30/2021) |
| 07/30/2021 | 24 | MOTION for Summary Judgment by Paul Noel. (Attachments: # 1 Proposed Order) (Mazeski, Vincent) (Entered: 07/30/2021) |
| 07/30/2021 | 25 | BRIEF IN SUPPORT re 24 MOTION for Summary Judgment filed by Paul Noel. (Mazeski, Vincent) (Entered: 07/30/2021) |
| 07/30/2021 | 26 | STATEMENT OF FACTS re 24 MOTION for Summary Judgment filed by Paul Noel. (Mazeski, Vincent) (Entered: 07/30/2021) |
| 07/30/2021 | 27 | APPENDIX by Paul Noel. to 24 MOTION for Summary Judgment . (Attachments: # 1 Exhibit(s) A, # 2 Exhibit(s) B, # 3 Exhibit(s) C, # 4 Exhibit(s) D, # 5 Exhibit(s) E, # 6 |

| | | |
|---|---|---|
| | | Exhibit(s) F, # 7 Exhibit(s) G, # 8 Exhibit(s) H, # 9 Exhibit(s) I, # 10 Exhibit(s) J, # 11 Exhibit(s) K)(Mazeski, Vincent) (Entered: 07/30/2021) |
| 08/09/2021 | 28 | MOTION for Summary Judgment by Haresh Pandya. (Attachments: # 1 Proposed Order, # 2 Exhibit(s) A - DOC Medical Records)(Lombard, Benjamin) (Entered: 08/09/2021) |
| 08/09/2021 | 29 | STATEMENT OF FACTS re 28 MOTION for Summary Judgment filed by Haresh Pandya.(Lombard, Benjamin) (Entered: 08/09/2021) |
| 08/09/2021 | 30 | BRIEF IN SUPPORT re 28 MOTION for Summary Judgment filed by Haresh Pandya. (Lombard, Benjamin) (Entered: 08/09/2021) |
| 08/16/2021 | 31 | MOTION for Extension of Time to File Brief in Opposition to 28 MOTION for Summary Judgment filed by Barry Jones.(dw) (Entered: 08/16/2021) |
| 08/16/2021 | 32 | BRIEF IN SUPPORT re 31 MOTION for Extension of Time to File Brief in Opposition to 28 MOTION for Summary Judgment filed filed by Barry Jones.(dw) (Entered: 08/16/2021) |
| 08/17/2021 | 33 | ORDER granting 31 Motion for Extension of Time to File Response/Reply re 28 MOTION for Summary Judgment , 24 MOTION for Summary Judgment . Brief in Opposition due by 10/22/2021. Signed by Honorable Jennifer P. Wilson on 8/17/2021 (ve) (Entered: 08/17/2021) |
| 08/24/2021 | 34 | MOTION for Extension of Time to File Brief in Opposition to 28 MOTION for Summary Judgment filed by Barry Jones.(dw) (Entered: 08/24/2021) |
| 08/24/2021 | 35 | BRIEF IN SUPPORT re 34 MOTION for Extension of Time to File Brief to 28 MOTION for Summary Judgment filed filed by Barry Jones.(dw) (Entered: 08/24/2021) |
| 09/07/2021 | 36 | ORDER denying as moot 34 Motion for Extension of Time to File Response/Reply. Signed by Honorable Jennifer P. Wilson on 9/7/2021 (ve) (Entered: 09/07/2021) |
| 09/29/2021 | 37 | MOTION for Extension of Time to File Opposition filed by Barry Jones.(aaa) (Entered: 09/29/2021) |
| 09/29/2021 | 38 | BRIEF IN SUPPORT re 37 MOTION for Extension of Time to File Opposition filed by Barry Jones. (Attachments: # 1 Exhibit(s))(aaa) (Entered: 09/29/2021) |
| 09/30/2021 | 39 | ORDER granting 37 Motion for Extension of Time to File. Plaintiff shall file his briefs in opposition to Defendant Noel and Defendant Pandyas motions for summary judgment on or before Friday, January 21, 2022. Signed by Honorable Jennifer P. Wilson on 9/30/2021 (ve) (Entered: 09/30/2021) |
| 10/12/2021 | 40 | REQUEST for Docket Sheet by Barry Jones. *Docket sheet mailed* (dw) (Entered: 10/12/2021) |
| 01/05/2022 | 41 | MOTION for Extension of Time to File Brief to 28 MOTION for Summary Judgment , 24 MOTION for Summary Judgment filed by Barry Jones.(pjr) (Entered: 01/05/2022) |
| 01/05/2022 | 42 | BRIEF IN SUPPORT re 41 MOTION for Extension of Time to File Brief to 28 MOTION for Summary Judgment , 24 MOTION for Summary Judgment filed filed by Barry Jones. (Attachments: # 1 Exhibits A-L)(pjr) (Entered: 01/05/2022) |
| 01/07/2022 | 43 | ORDER granting 41 Motion for Extension of Time to File Response/Reply. Signed by Honorable Jennifer P. Wilson on 1/7/2022 (ve) (Entered: 01/07/2022) |
| 03/21/2022 | 44 | MOTION for Extension of Time to to File Brief in Opposition to Motions for Summary Judgment by Barry Jones.(eo) (Entered: 03/21/2022) |

| | | |
|---|---|---|
| 03/21/2022 | 45 | MOTION FOR A REQUEST FOR A FINAL EXTENSION OF TIME TO FILE OPPOSITION TO DEFENDANT'S DR.' S PAUL NOEL AND HARESH PANDY by Barry Jones.(aaa) (Entered: 03/21/2022) |
| 03/21/2022 | 46 | BRIEF IN SUPPORT of 44 MOTION for Extension of Time to to File Opposition filed by Barry Jones.(eo) (Entered: 03/21/2022) |
| 03/21/2022 | 47 | ORDER - There are potentially dispositive motions pending in this case, and the plaintiff has requested a fifth extension of time in which to respond to these motions. (Docs. 44 , 45 ). These motions for extension of time are GRANTED, in part, and IT IS ORDERED that the plaintiff directed to respond to the defense motions on or before May 2, 2022. Pursuant to Local Rule 7.7 the movants may then file reply briefs on or before May 16, 2022. Signed by Magistrate Judge Martin C. Carlson on March 21, 2022. (kjn) (Entered: 03/21/2022) |
| 05/04/2022 | 48 | RESPONSE re 24 MOTION for Summary Judgment filed by Barry Jones.(aaa) Modified on 5/6/2022 (dw). (Entered: 05/04/2022) |
| 05/04/2022 | 49 | Counter STATEMENT OF Material FACTS filed by Barry Jones.(aaa) (Entered: 05/04/2022) |
| 05/04/2022 | 50 | BRIEF IN OPPOSITION re 24 MOTION for Summary Judgment filed by Barry Jones. (aaa) (Entered: 05/04/2022) |
| 05/04/2022 | 51 | EXHIBITS filed by Barry Jones. (aaa) (Entered: 05/04/2022) |
| 05/06/2022 | 52 | RESPONSE by Barry Jones to 28 MOTION for Summary Judgment . (dw) (Entered: 05/06/2022) |
| 05/06/2022 | 53 | BRIEF IN OPPOSITION re 28 MOTION for Summary Judgment filed by Barry Jones. (dw) (Entered: 05/06/2022) |
| 05/06/2022 | 54 | COUNTER STATEMENT OF MATERIAL FACTS OF DEFENDANT PANDYA filed by Barry Jones.(dw) (Additional attachment(s) added on 5/6/2022: # 1 Exhibits - Part 1, # 2 Exhibits - Part 2, # 3 Exhibits - Part 3, # 4 Exhibits - Part 4) (dw). (Entered: 05/06/2022) |
| 05/16/2022 | 55 | REPLY BRIEF re 28 MOTION for Summary Judgment filed by Haresh Pandya. (Lombard, Benjamin) (Entered: 05/16/2022) |
| 05/18/2022 | 56 | REPLY BRIEF re 24 MOTION for Summary Judgment filed by Paul Noel.(Mazeski, Vincent) (Entered: 05/18/2022) |
| 09/30/2022 | 57 | MEMORANDUM (Order to follow as separate docket entry) re 28 MOTION for Summary Judgment filed by Haresh Pandya, 24 MOTION for Summary Judgment filed by Paul Noel. Signed by Honorable Jennifer P. Wilson on 9/30/2022. (ve) (Entered: 09/30/2022) |
| 09/30/2022 | 58 | ORDER (Memorandum filed previously as separate entry) granting 24 & 28 Motion for Summary Judgment. Signed by Honorable Jennifer P. Wilson on 9/30/2022 (ve) (Entered: 09/30/2022) |
| 09/30/2022 | 59 | CLERK'S JUDGMENT in favor of Haresh Pandya, Paul Noel against Barry Jones. Signed by Deputy Clerk on 9/30/2022. (ve) (Entered: 09/30/2022) |
| 10/24/2022 | 60 | NOTICE OF APPEAL in PRISONER Case by Barry Jones. Filing Fee and Docket Fee NOT PAID. The Clerk's Office hereby certifies the record and the docket sheet available through ECF to be the certified list in lieu of the record and/or the certified copy of the docket entries. (aaa) (Entered: 10/24/2022) |

| | | |
|---|---|---|
| 10/28/2022 | 62 | AMENDED NOTICE OF APPEAL (FRAP 4(a)4 Amendment) by Barry Jones. The Clerk's Office hereby certifies the record and the docket sheet available through ECF to be the certified list in lieu of the record and/or the certified copy of the docket entries. (aaa) (Entered: 10/28/2022) |
| 10/28/2022 | 63 | MOTION for Leave to Appeal in forma pauperis by Barry Jones.(aaa) (Entered: 10/28/2022) |
| 10/28/2022 | 64 | NOTICE filed by Barry Jones. (aaa) (Entered: 10/28/2022) |
| 11/02/2022 | 65 | ORDER - IT IS ORDERED that Petitioner file a properly completed application to proceed in forma pauperis (including a certified statement of Petitioners institutional account) within fourteen (14) days of this order. A form application to proceed in forma pauperis is enclosed. Failure to comply with the terms of this order will result in denial of Petitioners pending motion for leave to appeal in forma pauperis. Signed by Honorable Jennifer P. Wilson on 11/2/2022. (Attachments: # 1 IFP Notice of Appeal Form)(ve) (Entered: 11/02/2022) |
| 11/17/2022 | 66 | REQUEST for Extension of Time to File Prison Statement by Barry Jones. (dw) (Entered: 11/17/2022) |
| 11/22/2022 | 67 | AFFIDAVIT ACCOMPANYING MOTION FOR PERMISSION TO APPEAL IN FORMA PAUPERIS filed by Barry Jones. (dw) (Entered: 11/22/2022) |
| 11/22/2022 | 68 | CERTIFIED Prisoner Trust Fund Account Statement by Barry Jones. (dw) (Entered: 11/22/2022) |
| 11/23/2022 | 69 | ORDER granting 63 Motion for Leave to Appeal in forma pauperis. Signed by Honorable Jennifer P. Wilson on 11/23/2022 (ve) (Entered: 11/23/2022) |
| 11/23/2022 | | Supplemental Record on Appeal transmitted to US Court of Appeals re 69 Order on Motion for Leave to Appeal in forma pauperis. Documents and Docket Sheet available through ECF. The Clerk's Office hereby certifies the record and the docket sheet available through ECF to be the certified list in lieu of the record and/or the certified copy of the docket entries. (ve) (Entered: 11/23/2022) |

# Exhibit -“B”

B

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| BARRY JONES, | : | Civil No. 3:19-cv-00004 |
| Plaintiff, | : | |
| v. | : | |
| DR. PAUL NOEL, *et al.*, | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

**MEMORANDUM**

Before the court are Defendants' motions for summary judgment. Plaintiff brings Eighth Amendment claims under 42 U.S.C. § 1983 based on the treatment he received for Hepatitis C. He challenges both the Department of Corrections' ("DOC") policies regarding treating inmates for Hepatitis C and the treatment he received directly from his medical care provider at the State Correctional Institution at Frackville ("SCI-Frackville"). For the reasons explained below, the court will grant judgment for Defendants and close the case.

**PROCEDURAL BACKGROUND**

Plaintiff, a self-represented inmate currently housed at SCI-Frackville, initiated this action in January of 2019. (Doc. 1.) In his complaint, he raises an Eighth Amendment claim against Defendants Paul Noel, M.D., who is the Chief of Clinical Services at the Pennsylvania Department of Corrections, and Haresh

Pandya, M.D., the medical director at SCI-Frackville, alleging denial of treatment

for his Hepatitis C. (Doc. 1.)

Defendants separately filed motions for summary judgment. (Docs. 24, 28.)

Plaintiff responded to each motion, Docs. 50, 53, and Defendants replied, Docs.

55, 56. The motions are now ripe to be addressed by this court.

## JURISDICTION AND VENUE

The court has federal question jurisdiction over the complaint as it asserts

claims under 42 U.S.C. § 1983. *See* 28 U.S.C. § 1331. Venue is appropriate

because all actions detailed in the amended complaint occurred within the Middle

District of Pennsylvania. 28 U.S.C. § 1391(b)(2).

## STANDARD

A court may grant a motion for summary judgment when "there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is material if resolution of

the dispute "might affect the outcome of the suit under the governing law."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is

not precluded by "[f]actual disputes that are irrelevant or unnecessary." *Id.* "A

dispute is genuine if a reasonable trier-of-fact could find in favor of the

nonmovant' and 'material if it could affect the outcome of the case." *Thomas v.*

*Tice*, 943 F.3d 145, 149 (3d Cir. 2019) (quoting *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 300 (3d Cir. 2012)).

In reviewing a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288 (3d Cir. 2018) (citing *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 538 (3d Cir. 2006)). The court may not "weigh the evidence" or "determine the truth of the matter." *Anderson*, 477 U.S. at 249. Instead, the court's role in reviewing the facts of the case is "to determine whether there is a genuine issue for trial." *Id.*

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The non-moving party must then oppose the motion, and in doing so "'may not rest upon the mere allegations or denials of [its] pleadings' but, instead, 'must set forth specific facts showing that there is a genuine issue for trial. Bare assertions, conclusory allegations, or

suspicions will not suffice.'" *Jutrowski*, 904 F.3d at 288–89 (quoting *D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 268–69 (3d Cir. 2014)).

Summary judgment is appropriate where the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## DISCUSSION

### A. Facts Material to Plaintiff's Claims[1]

#### 1. Hepatitis C Protocol

By way of background, Hepatitis C is a viral infection that causes inflammation of the liver. *See Bush v. Doe (I)*, 858 F. App'x 520, 521 (3d Cir. June 8, 2021) (nonprecedential) (citing *Hepatitis C Fact Sheet*, WHO (July 27, 2020),

[1] In accordance with the court's Local Rules, Defendants have filed their respective statements of material facts. (Docs. 26, 29.) Plaintiff included a counter statement of alleged facts. (Doc. 54.) From those statements, and the evidence submitted by the parties, the court has culled the material facts in this matter and has set forth those facts in this section.

https://www.who.int/news-room/factsheets/detail/hepatitis-c)). In 2011, the Food

and Drug Administration approved new direct-acting antiviral drugs ("DAADs")

for treatment of Hepatitis C. *Bush*, 858 F. App'x at 521. Treatment success for

Hepatitis C is defined as sustained virological response, which means the Hepatitis

C virus ("HCV") is not detected in the blood for twelve or more weeks after

treatment. *Id.* at 521, n.2. DAADs have a 90 to 95 percent success rate of

producing a sustained virological response. *Id.* at 521 (citations omitted). As a

result, in 2015, both the American Association for the Study of Liver Disease

("AASLD") and the Infectious Diseases Society of America began to recommend

that all patients with chronic Hepatitis C receive DAAD treatment, "except those

with limited life expectancy because of nonhepatic conditions." *Id.* (citations

omitted). DAADs are an effective but costly treatment method. *See id.* (noting

that DAADs "cost[ ] up to $100,000 per treatment").

On November 13, 2015, the Department of Corrections issued its Interim

Hepatitis C Protocol. (Doc. 26 ¶ 6.) The DOC issued updated Hepatitis C

Protocols on November 7, 2016, and May 9, 2018. (*Id.* ¶ 9.) The Protocols

provide that all inmates with HCV will be entered into a chronic care clinic and

periodically monitored, examined, and tested. (*Id.* ¶¶ 7, 10.) The Protocols

prioritize inmates for treatment with DAADs. (*Id.* ¶ 8.)

Defendant Noel was the Chief of Clinical Services for the DOC from
January 2014 to March 6, 2020. (*Id.* ¶ 12.) Defendant Noel developed the DOC's
Interim Hepatitis C Protocol and its three subsequent updated Hepatitis C Protocols
that establish the base guideline for uniform medical treatment of all DOC inmates
with HCV. (*Id.* ¶ 14.) The DOC's Interim Hepatitis C Protocol and the
subsequent Hepatitis C Protocols are all modeled after the policy established by the
Federal Bureau of Prisons. (*Id.* ¶ 15.) They are prioritization protocols that
address the medical needs of inmates based upon the stage of disease progression.
(*Id.*)

Defendant Noel asserts that prioritization protocols are necessary because
HCV is a slowly progressing disease that may take 20-40 years to develop into
cirrhosis of the liver. (*Id.* ¶ 18.) Moreover, as noted above, not all individuals with
HCV will develop liver cirrhosis. (*Id.*) According to the DOC, it is not medically
necessary to treat *all* inmates who have HCV with DAADs. (*Id.* ¶ 19.)
Prioritization of such treatment for inmates with HCV depends on various factors
including, but not limited to, a finding of liver damage shown through METAVIR
scores. (*Id.* ¶¶ 20–22.)

Chronic liver disease from HCV is measured by the degree of fibrosis. (*Id.* ¶
20.) The METAVIR scoring system categorizes the stages of liver fibrosis into
five levels: F0 (no fibrosis); F1 (mild fibrosis); F2 (moderate fibrosis); F3

(advanced fibrosis); and F4 (cirrhosis). (*Id.* ¶ 21.) Per the Hepatitis C Protocols, the DOC monitors all inmates with chronic HCV through the chronic care clinic. (Doc. 26 ¶ 22.) Monitoring includes periodic examination, testing, and review of blood test results. (*Id.*) From mid-2015 through April 2019, Defendant Noel reviewed referrals and determined whether inmates, with certain exceptions, were to be treated with DAADs. (*Id.* ¶ 23.)

**2. Plaintiff's Medical Treatment**

Plaintiff contracted liver disease in the 1990s. (Doc. 29 ¶ 105.) Plaintiff was treated from 2000 to 2010 with the anti-viral drugs Interferon and Ribavinin, which were ineffective. (Doc. 51, p. 30.)[2] Plaintiff asserts that upon learning of the development of DAADs, he requested them as treatment, but was told the request was denied due to the cost. (*Id.*)

In June of 2014, Dr. Harwood assessed Plaintiff for a seizure and began treating him with anti-seizure medications. (Doc. 29 ¶ 4.)

Defendant Noel states that starting in 2015, Plaintiff received medical care for his HCV through the chronic care clinic, which included monitoring, periodic examination, testing, and review of blood test results. (Doc. 26 ¶ 24.) However, Defendant Pandya states that he initially started treatment with the Hepatitis clinic in April of 2013. (Doc. 29 ¶ 2.) In November of 2016, Plaintiff had an APRI

[2] For ease of reference, the court utilizes the page numbers from the CM/ECF header.

score of 0.173 which translated to a METAVIR score of F0 to F1. (Doc. 26 ¶ 25.) In October 2017, he had an increased APRI score of 0.408, but this still translated to a METAVIR score of F0 to F1. (*Id.* ¶ 26.) Plaintiff underwent liver ultrasounds on January 5, 2017 and July 6, 2017, which showed a progression from mildly enlarged heterogeneous echogenic liver to moderately enlarged heterogeneous echogenic liver. (Doc. 26 ¶ 27; Doc. 27-9 pp. 2–3.) On November 7, 2017, Plaintiff was referred for review of treatment with DAADS. (Doc. 26 ¶ 28.) On November 29, 2017, Defendant Noel referred Plaintiff for a fibrose test. (*Id.* ¶ 29.) The test was performed in December of 2017 and indicated he had a fibrosis level of F4, cirrhosis. (*Id.* ¶ 30.)

In April of 2018, Plaintiff had a consult and was approved for treatment with DAADs as soon as he changed his seizure medications. (*Id.* ¶¶ 32–33.) Plaintiff was treated with Zepatier from February 4, 2019 through April 28, 2019. (*Id.* ¶ 35.) On June 6, 2019, following treatment, an ultrasound showed a mildly heterogenous liver, Doc. 27-9, p. 5, which Defendant Noel's counsel characterizes as an improvement, Doc. 26 ¶ 37. By December of 2019, Plaintiff's APRI score was 0.174. (Doc. 28-2, pp. 539.)

Defendant Noel alleges that "[p]atients that progress to cirrhosis and achieve sustained virological response (SVR) from treatment with DAADs level their survival curve to that of the general population." (Doc. 26 ¶ 38.)

**B. Defendants Will be Granted Judgment on Plaintiff's Eighth Amendment Claims.**

Prison officials violate the Eighth Amendment when they act with deliberate indifference to a prisoner's serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). To sustain a constitutional claim under the Eighth Amendment for inadequate medical treatment, a plaintiff must make (1) an objective showing that his medical needs were serious, and (2) a subjective showing that the defendants were deliberately indifferent to those medical needs. *See Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017). A serious medical need is "one that has been diagnosed by a physician as requiring treatment or is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Inst'l Inmates v. Lanzaro*, 834 F.2d 326, 346–47 (3d Cir. 1987) (citation omitted). A prison official is deliberately indifferent when he "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

**1. Defendant Noel Will be Granted Judgment.**

There is no dispute that Plaintiff's Hepatitis C qualifies as a serious medical condition for purposes of the Eighth Amendment analysis. *Moore v. Luffey*, 767 F. App'x 335, 340 (3d Cir. 2019) (nonprecedential) (recognizing Hepatitis C constitutes a serious medical need). However, Plaintiff has not advanced sufficient

evidence to permit a trier of fact to determine that Defendant Noel acted with deliberate indifference to his serious medical needs.

The record reflects that the DOC Hepatitis C Protocols requires a progression in severity that is required before treatment for Hepatitis C is provided, and, pursuant to the prioritization protocol, no inmate is absolutely precluded from receiving Hepatitis C treatment. There is no genuine dispute that Defendant Noel followed the DOC's Hepatitis C Protocols in treating Plaintiff's Hepatitis C.

Plaintiff asserts that the DOC protocols create a system of exclusion rather than a system of prioritization by pointing out that if a prisoner's disease fails to progress to a more severe stage, he simply won't be treated. (Doc. 50, p. 8.) He asserts that this is inconsistent with the AASLD recommendation that all HCV patients receive DAADs regardless of the stage of progression. *Id. citing Bush v. Doe (I)*, 858 F. App'x at 521.

However, Plaintiff has provided evidence that from the 2016 Protocol to the 2018 Protocol, the priority levels changed as more prisoners were treated. (Doc. 56, p. 4.) By 2018, the priority level two had gone from requiring an APRI of greater than or equal to 2.0 down to an APRI of greater than 0.7. (Doc. 27-2, p. 9; Doc. 27-3, p. 9.) Likewise, in the 2016 Protocol plan of treatment, if a patient had a APRI score greater than 1.5, the Infection Control Nurse had to be notified. (Doc. 27-2, p. 7.) By the 2018 Protocol, this was dropped to an APRI score greater

than 1.0 to trigger contact with the Infection Control Nurse. (Doc. 27-3, p. 7.) The lowering of the severity level required to move up in prioritization shows that the DOC's Protocol is not stagnant. In reality, the DOC Protocol does not result in total exclusion, as argued by Plaintiff, but actually trends in the direction of inclusion with time as more advanced cases of HCV are treated. Therefore, judgment will be entered for Defendant Noel since Plaintiff has not established that Defendant Noel at any time was deliberately indifferent to his medical needs.

**2. Defendant Pandya Will be Granted Judgment.**

Plaintiff also alleges that Defendant Pandya failed to provide medical care for his Hepatitis C. As discussed above, there is no dispute that Plaintiff's Hepatitis C qualifies as a serious medical condition for purposes of the Eighth Amendment analysis. However, Plaintiff has not advanced sufficient evidence to permit a trier of fact to determine that Defendant Pandya acted with deliberate indifference to his serious medical needs.

The record is replete with evidence that Plaintiff received regular medical care for this condition, consistent with the DOC's treatment protocols. The uncontroverted record evidence establishes that Plaintiff was being monitored and treated in accordance with these protocols, and the HCV was ultimately resolved and the liver size reduced. Specifically, the record before the court shows that in November of 2016, Plaintiff's APRI score was 0.193. (Doc. 28-2, p. 423.) By

April of 2017, his APRI was 0.224. (*Id.*, p. 833.) Plaintiff underwent liver ultrasounds on January 5, 2017 and July 6, 2017, which showed a progression from mildly enlarged heterogeneous echogenic liver to moderately enlarged heterogeneous echogenic liver. (Doc. 26 ¶ 27; Doc. 27-9 pp. 2–3.) In November of 2017, his APRI score had increased to 0.408. (*Id.*, pp. 482, 831.) In December of 2018, his APRI score was 0.31. (*Id.*, p. 73.) He was treated with a DAAD, Zepatier, from February 4, 2019 through April 28, 2019. (*Id.* ¶ 35.) On June 6, 2019, an ultrasound showed a mildly heterogenous liver. (Doc. 27-9, p. 5.) By December of 2019, Plaintiff's APRI score was 0.174. (Doc. 28-2, pp. 539.)

The court notes that it was not the APRI score that triggered Plaintiff's progression up the priority list for DAADs, but the enlarged liver in his two ultrasounds in 2017. (Doc. 26 ¶ 27; Doc. 27-9 pp. 2–3.) On November 7, 2017, Plaintiff was referred for review of treatment with DAADS. (Doc. 26 ¶ 28.) On November 29, 2017, Defendant Noel referred Plaintiff for a fibrose test. (*Id.* ¶ 29.) The test was performed in December of 2017 and indicated he had a fibrosis level of F4, cirrhosis. (*Id.* ¶ 30.) In April of 2018, Plaintiff had a consult and was approved for treatment with DAADs as soon as he changed his seizure medications. (*Id.* ¶¶ 32–33.) He was treated with Zepatier from February 4, 2019 through April 28, 2019. (*Id.* ¶ 35.) On June 6, 2019, an ultrasound showed the liver had reduced in size. (Doc. 27-9, p. 5.)

Plaintiff's primary complaint is that his treatment should have begun earlier, based on a declaration from the AASLD that treatment with DAADS is recommended for all patients with chronic Hepatitis C irrespective of disease stage. (Doc. 50, p. 8.) This argument implies that Plaintiff's claim is, in substance, a disagreement with a particular course of treatment. Critically, though, mere disagreement with the selected course of treatment is not grounds for a medical deliberate indifference claim. *See Thomas v. Dragovich*, 142 F. App'x 33, 36 (3d Cir. 2005) (nonprecedential) (citing *Monmouth Cnty. Corr. Institutional*, 834 F.2d at 346).

Furthermore, Defendant Pandya has provided evidence that Plaintiff added to the time it took to receive DAADs by refusing to change his seizure medication when he was initially approved for treatment. The DAADs were incompatible with his seizure medications. The record shows that to remedy this issue, in May of 2018, Plaintiff had "most recently been offered Keppra by the Medical director of at this facility and has refused pending opine of a Neurologist." (Doc. 28-2, p. 464.) Keppra was prescribed by the Neurologist in June of 2018. (*Id.*, p. 128.) In July of 2018, Plaintiff refused to take his Keppra. (*Id.*, pp. 106, 108.) Plaintiff had to taper off his previous seizure medications while increasing his Keppra, which took time. Therefore, the delay in not starting the Zepatier until February of 2019

was not directly the result of the DOC's Protocol's but was caused by Plaintiff's delay in the reduction of his previous seizure medications and transition to Keppra.

Plaintiff further asserts that the delay in treatment caused him to suffer from eczema, which he demonstrated with photos dated August of 2021. (Docs. 50, 51.) In the medical records provided by Defendants, when Plaintiff presented with skin complaints, he was provided treatment. (Doc. 28-2, pp. 43–44, 157–58, 475, 504, 820–21.) The photos from August of 2021, are well past Plaintiff's the time period when Plaintiff receive treatment with DAADs. He has provided no evidence that this eczema depicted in the August 2021 photos is the result of the lack of DAAD treatment received back in 2016 or 2017. Additionally, these photos are not medical evidence. *See Altenbach v. Ianuzzi*, 646 F. App'x 147, 152 (3d Cir. 2016) (nonprecedential) (requiring inmate to submit " 'verif[ied] medical evidence . . . to establish the detrimental effect of [the] delay' [in medical treatment] as he must do to support a delayed treatment claim"). Therefore, judgment will be entered in favor of Defendant Pandya because Plaintiff has not established that Defendant Pandya at any time was deliberately indifferent to his medical needs.

## CONCLUSION

Given the well-documented course of treatment set forth in the record, Plaintiff has failed to show that issues of material fact exist as to whether Defendants were deliberately indifferent to his serious medical needs. As a factual

matter, it is undisputed that Plaintiff was carefully monitored by prison medical staff in accordance with the DOC's Hepatitis C Protocols. The Third Circuit has upheld the constitutionality of medical choices relating to the care and treatment of Hepatitis C and has rejected inmate Eighth Amendment challenges to this type of medical care. See, e.g., *Moore*, 767 F. App'x 335 (affirming summary judgment on inmate's Eighth Amendment claim relating to treatment of Hepatitis C and finding doctor appropriately monitored and treated inmate in accordance with policy). Because Plaintiff failed to establish an Eighth Amendment violation, judgement will be entered in favor of Defendants and their motions for summary judgment, Docs. 24, 28, will be granted. The Clerk of the Court will be directed to close this case.

An appropriate order will follow.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated: September 30, 2022

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| BARRY JONES, | : | Civil No. 3:19-cv-00004 |
| Plaintiff, | : | |
| v. | : | |
| DR. PAUL NOEL, *et al.*, | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

**ORDER**

For the reasons stated in the accompanying memorandum, **IT IS ORDERED AS FOLLOWS:**

1. Defendants' motions for summary judgment, Docs. 24, 28, are **GRANTED**. Judgment is entered in favor of the Defendants and against Plaintiff.

2. The clerk of the court is directed to **CLOSE** this case.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated: September 30, 2022

# Exhibit -"C"

IN THE UNITED STATES DISTRICT COURT FOR

THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BARRY JONES | : Civil No. 3:19-CV-00004 |
| Plaintiff | : |
| V. | : |
| DR. PAUL NOEL, ET AL., | : |
| Defendant | : |

**NOTICE OF APPEAL**

Barry Jones, who is the Petitioner/Appellant in the above action hereby files this Notice of Appeal to the United States Court of Appeals for the Third Circuit Pennsylvania, for the final Order of the United States District Court for the Middle District of Pennsylvania, entered September 30, 2022.

DATED October 25, 2022

Respectfully Submitted

/s/ ______________

Barry Jones-QK-3379
SCI @ Frackville
1111 Altamont Blvd.
Frackville, PA 17931

IN THE UNITED STATES DISTRICT COURT FOR

THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BARRY JONES | : Civil No. 3:19-cv-00004 |
| Plaintiff | : |
| V. | : |
| DR. PAUL NOEL et al., | : |
| Defendant | : |

**MOTION TO PROCEED IN FORMA PAUPERIS**

COME NOW, Barry Jones as PLaintiff/Appellant on in pro se fashion moves this Honorable Court to Grant him In Forma Pauperis status. He also states under the penalties of perjury provided under 28 U.S.C.§1746.:

1). I am a pauper as defined by law.

2), I own no real estate or personal property of value.

3). Due to my on going incarceration, I am unable to pay filing fees or cost associated with the commencement of this action in its entirety..

4). I hereby respectfully request that this Honorable Court Grant, In Forma Pauperis Status, so plaintiff/appellant can diligently and without delay prosecute the instant action...

WHEREFORE, Barry Jones plaintiff/appellant be 'Granted' the Order that plaintiff/appellant can proceed in this matter 'In Porma Pauperis plaintiff/appellant so prays.

DATED: 10/25/2022

Respectfully Submitted

\s\ [signature]

Barry Jones-Pro se

IN THE UNITED STATES DISTRICT COURT FOR

MIDDLE DISTRICT OF PENNSYLVANIA

BARRY JONES : Civil No. 3:19-cv-00004

Plaintiff :

V. :

DR. PAUL NOEL et al., :

Defendant :

NOTICE TO THE CLERK

FORWARD COMPLETE RECORD TO THE COURT OF APPEALS

PURSUANT TO FED,R.A.PROC. RULE 10,11

Appellant hereby gives Notice to the Clerk of the United States District Court for the Middle District of Pennsylvania; to for the Complete Records of Appellant's and Appellee's, to the United States Court of Appeals for the Third Circuit, such records shall include the following documents:

1). Plaintiff's Motion in Opposition to to Defendant's Motion for Summary Judgment, Plaintiff's Counter Statement of Material Facts of Defendant Noels with Exhibits..

2). Plaintiff's Brief in Opposition to Dr. Paul NOEL"S Summary Judgment Motion.

3). Plaintiff's Motion in Opposition to defendant's Motion for Summary Judgment, Plaintiff's Counter statement of Material Facts of defendant's Haresh Pandya

4). Plaintiff's Brief in Opposition to Dr. Haresh Pandya's Summary Judgment Motion and Exhibit's.

WHEREFORE, Plaintiff/Appellant, respectfully request the Clerk of Court's to forward the above mention document to the Court of Appeals for the Third Circuit, pursuant to Fed,R.App.Proc. 10,11.

DATED: 10/25/2022

Respectfully Submitted

/s/

CERTIFICATE OF SERVICE

I, Barry Jones certify on this date October 25, 2022 pursuant to the prison mail box rule, I am serving a true and correct copy of the foregoing Notion of Appeal , In Forma Pauperis, Notice to the Clerk Forward Complete Record to the Court of Appeals pursuant to Fed,R.App.Proc. 10.11.

SERVICE BY CERTIFICATE OF MAILING ADDRESSED TO:

Vincent R. Mazeski Esq.
PA DOC
Office of Chief Counsel
1920 Technology Parkway
Mechanicsburg, PA 17050

Benjamin M. Lombard Esq.
Weber Gallagher
Four PPG Place
5th Floor
Pittsburgh, PA 15222

Barry Jones QK-3379
SCI @ Frackville
1111 Altamonmt Blvd.
Frackville, PA 17931

Dated: October 25, 2022

# EXHIBIT

# "1"

9

CHRONIC CLINIC PROGRESS NOTE/FLOW SHEET

HTN | DYSLIPIDEMIA | DM | ASTHMA | CARDIAC | HEP C | SEIZURE | THYROID | CoMorbidities | HIV | HEP A/B

VS: T 97.5 P 62 R 18 BP 144/80 POX 97% PEFR ___ WT 277 HT 73½ BMI 35 0675

**HTN**
Compliant with:
Medications Y / N
Diet Y / N
Exercise Y / N
Smoking Y / N
EKG Date 8-10-16
HX DM Y / N
Renal Disease Y / N
Educated On:
Smoking Cessation Y / N
Salt Restriction Y / N
Goal: BP < 140/90
DM/Chronic Renal BP < 130/80
At Goal Y / N

**DYSLIPIDEMIA**
Compliant with:
Medications Y / N
Diet Y / N
Exercise Y / N
Late Eating Y / N
Lipid Profile Date 11-16-16
Chol 168 Trig 173
LDL 87 HDL 47
Meds Prescribed Y / N
Risk Factors: DM CAD HTN AGE Smoking Fam HX
Goal: LDL < 100, HDL > 40, Chol < 200, Trig < 150
*Others depend on risk factors
At Goal Y / N

**DM**
HgbA1C Date 11-16-16
HgbA1C 5.6
Foot Exam Done Y / N
Foot Clinic q 3 months
Dilated Eye Exam 4-7-16
Hypoglycemia History Y / N
Compliant with: Diet profile
Medications Y / N
Diet /Exercise Y / N
EKG 8-10-16
Microalbumin Y / N
ACE/ARB Y / N
Chol 168 LDL 87
Goal: BP < 130/80, HGA1c <7, LDL < 70, Chol < 200
At Goal Y / N

**ASTHMA/COPD**
Activity Level: A B C D
Freq Recent Symptoms: A B C D
Frequency Night Symptoms: A B C D
Frequency of B-Agonist Use: A B C
Stage of Asthma: A B C D
Smoking: Y / N
Goal: Peak Flow at or above 80% of average male peak flow for age and height of ____
At Goal Y / N

**CARDIAC**
CAD CHF AFIB
Compliant with:
Medications Y / N
Diet/Exercise Y / N
Smoking Y / N
Last CP ____
EKG Date ____
NTG Y / N
SOB Y / N
Peripheral Pulses + / -
PND Y / N
Edema Y / N
Goal: BP < 140/90, LDL < 100, Prevent complications of cardiovascular disease.
At Goal Y / N

**SEIZURE**
Seizure Diagnosis Y / N
Bottom Bunk/Tier Y / N
Seizure Type:
Meds:
Why Med Level Out of Range: always as pt has good control at this level
Action Plan: No change
Action Plan Implemented: Y / N
Med Side Effects Reviewed with Inmate: Y / N
Medication Interventions: NA PU ED DO LM AM
Seizures w/ last year: Y / N
Per Inmate / Documented
How Many: 0 1 2 >2
Sent to ER NA Y / N
Goal: Maintain appropriate medication levels, minimize side effects, decrease seizure freq.
At Goal Y / N

**THYROID**
Meds
Lab Date:
TSH ____
T3 ____ FT4 ____
Goal: Maintain appropriate medication levels and restoration to the euthyroid state.
At Goal Y / N

**VACCINE**
Influenza: Refused
Pneumo: 10/2003
Hep A: Y / N 2004
Hep B: Y / N 2004
Tetanus: Y / N 1/2016
Education/VIS Y / N

**HEP C** (Genotype [illegible])
Previous TX: Y / N
DX: F0-F2 F3 F4 Unknown
AB+ No Detectable VL
DX per: Liver Bx Elastography
Cirrhosis/Liver Failure SX: None Detailed in PE Section
Hx of Ascites Y / N
Hx of Encephalopathy Y / N
Hx of Varices: Y / N
Est Date of Contracting:
Recent Infirmary/Hosp/ER: Y / N
Jaundice S/S Sclera: Y / N
Liver US Date: 12-15-16
Abdominal Exam: Ascites Y / N
Hepatomegaly Y / N
Splenomegaly Y / N
Skin Changes suggestive of Jaundice: Y / N
Asterixis Present: Y / N
APRI Score: 0.173
MELD Score (Cirrhosis): 7
CTP Score (Cirrhosis): 5
Reviewed EGD/US/SSWE: Y / N
Labs: 11/16/16
Goal: Prevent the complications of Hep C through education, assessment and TX.
At Goal Y / N

**MED LEVELS**
Date 11-16-16 Med Dilantin
Level 22.0
In Therapeutic Range Y / N
Date 11-16-16 Med Phenobarb
Level 11.7
In Therapeutic Range Y / N
Date ____ Med ____
Level ____
In Therapeutic Range Y / N

**TESTING**
PSA ____ Date ____
DRE ____ Date ____
Hemoccult + / - Date ____
Accucheck ____ Date ____
Education

**EDUCATION**
Medications Y / N
Med Compliance Y / N
Med Administration Y / N
Self-Med Program Y / N
Diet/Exercise Y / N
Weight Reduction Y / N
Salt Restriction Y / N
Sugar Restriction Y / N
Smoking Cessation Y / N
HCV TX and Protocol Y / N
HIV TX and Protocol Y / N
Goals of Chronic Clinic and Medical Care Y / N

**Physical Exam:**
HEENT: NML.
NECK: Thyroid. NML.
PUL: Clear.
CVS: RSR HS good now
ABD: Small big Nontender
No HS.
NEURO: No deficit
EXT: Pedal edema. Lt 5th toe has early tinea.
OTHER:

**Notes:** (S) Has HgbA1c of 5.4 - 5.6. Past 4 years. No stool OB× A.
(O) (See Physical Exam Section) No US of liver done yet will be done on 12-15-16.
Hep C good control. Seizure good control
(A) HBP fair control
DM good control Lipids
Deferment want medication for DM.
Liver likely F0-F2
(P) Eye Exam by OD dilated Retina.
Do

Return to CC in 6 months

Signature [signature] DR. HARESH PANDYA Date/Time 12-1-16 1032

Progress Notes
Commonwealth of Pennsylvania
Department of Corrections
DC-472

Inmate Name Jones Barry
Inmate Number HF5900
Date Of Birth [redacted]
Facility SCI Frackville

10

Exhibit A - p. 423

# EXHIBIT

# "2"

# CONSULTATION RECORD

**A. Referring Facility Details —** 12/28/2016 4:00 PM (SCI FRACKVILLE) Auth # ON-SITE-CONSULT

| | | | |
|---|---|---|---|
| Consult Type: | Initial | Referred To: | Onsite US service. |
| Location: | On Site | Urgency | Routine |
| Clinic Type: | Ultrasound (US) | Referring Phys: | PANDYA, HARESH B |
| Visit Type: | Radiology | Entered By: | PANDYA, HARESH |

| | | | |
|---|---|---|---|
| Destination: | ONSITE OR ONSITE/TELEMED CONSULT | | |
| Contact Person: | | | |
| Appt. Date: | 1/5/2017 | Appt. Time: | 08:30:00 |
| Appt. Findings: | | | |
| Findings Entered By: | | Findings Entered On: | N/A |

## Health Information

**Allergies:** SUDAFED

**Significant Past Medical & Surgical History:** [B18.2 - HCV], [D23.9 - SKIN, UNSPEC.], [D86.3 - SARCOIDOSIS OF SKIN], [E63.9 - NUTRITIONAL DEFICIENCIES, UNSPEC.], [E78.2 - HYPERLIPIDEMIA, MIXED], [I10 - HYPERTENSION, BENIGN], [K59.00 - CONSTIPATION, UNSPEC.], [K74.60 - CIRRHOSIS, NOS], [L20.84 - ECZEMA, ATOPIC DERMATITIS INTRINSIC (ALLERGIC) ECZEMA], [M12.9 - ARTHROPATHY, UNSPEC.], [R56.00 - SEIZURES, SIMPLE, FEBRILE, UNSPEC.], [Z13.6 - SCREENING, CARDIAC DISEASE]

**Present Illness Injury and Physical Findings:** [PRIMARY] HCV
[SECONDARY] HYPERLIPIDEMIA, MIXED
[SECONDARY] SKIN, OTHER SYMPTOMS
[SECONDARY] SEIZURES, SIMPLE, FEBRILE, UNSPEC.
[SECONDARY] ARTHROPATHY, UNSPEC.
[SECONDARY] HYPERTENSION, BENIGN

**Treatment to Date:** NONE FOR HCV.

**Current Medications &Significant Medication History:** PHENOBARBITAL 32.4MG TAB (LUMINAL) (S:10/28/2016), PHENOBARBITAL 64.8MG TAB (LUMINAL) (S:10/28/2016), ALLOPURINOL 100MG TABLET (ZYLOPRIM) (S:11/9/2016), AMLODIPINE 10MG TABLET (NORVASC) (S:11/9/2016), ASPIRIN 81MG CHEW TAB (BAYER CHILDRENS ASPIRIN) (S:11/9/2016), CHLORTHALIDONE 25MG TAB (HYGROTON) (S:11/9/2016), LOSARTAN 50MG TABLET (COZAAR) (S:11/9/2016), METOPROLOL 50MG TABLET (LOPRESSOR) (S:11/9/2016), PHENYTOIN SOD 100MG CAP (DILANTIN) (S:11/9/2016), POTASSIUM CL 20MEQ TAB (K-DUR) (S:11/9/2016), PRAVASTATIN 20MG TABLET (PRAVACHOL) (S:11/9/2016), SELENIUM-2.5%- SULF LOT (SELSUN RX) (S:11/9/2016), SENNA PLUS TABLET (SENOKOT S) (S:11/9/2016)

**Relevant Health Information To Accompant Patient:** N/A

**Special Instructions/Travel Needs:** N/A

**Post Consult Docs:** *FILE LIST: JONES HF5900 US RESULTS 1-2017.PDF*

Commonwealth of Pennsylvania
Department of Corrections
Consultation Record
DC-441

Revised 10/2015

Inmate Name: JONES, BARRY
Inmate Number: HF5900
DOB: [redacted] HT: WT:
Facility: SCI FRACKVILLE

# EXHIBIT

# "3"

9

9

# CONSULTATION RECORD

**A. Referring Facility Details —** 10/20/2016 12:54 PM (SCI FRACKVILLE) **Auth #** 4792005

| | | | |
|---|---|---|---|
| Consult Type: | Initial | Referred To: | request Ultrasound of abdomen |
| Location: | Off Site | Urgency | Routine |
| Clinic Type: | Ultrasound (US) | Referring Phys: | IANNUZZI, NELSON A |
| Visit Type: | Radiology | Entered By: | IANNUZZI, NELSON |

DC'd By: PANDYA, HARESH DC'd On: 12/1/2016 DC'd Reason: Duplicate

## Health Information

**Allergies:** SUDAFED

**Significant Past Medical & Surgical History:** [B18.2 - HCV], [D23.9 - SKIN, UNSPEC.], [D86.3 - SARCOIDOSIS OF SKIN], [E63.9 - NUTRITIONAL DEFICIENCIES, UNSPEC.], [E78.2 - HYPERLIPIDEMIA, MIXED], [I10 - HYPERTENSION, BENIGN], [K59.00 - CONSTIPATION, UNSPEC.], [K74.60 - CIRRHOSIS, NOS], [L20.84 - ECZEMA, ATOPIC DERMATITIS INTRINSIC (ALLERGIC) ECZEMA], [M12.9 - ARTHROPATHY, UNSPEC.], [R56.00 - SEIZURES, SIMPLE, FEBRILE, UNSPEC.], [Z13.6 - SCREENING, CARDIAC DISEASE]

**Present Illness Injury and Physical Findings:** [PRIMARY] HCV

**Treatment to Date:** MEDICAL

**Current Medications &Significant Medication History:** SELENIUM~2.5%~ SULF LOT (SELSUN RX) (S:10/20/2016), PHENOBARBITAL 32.4MG TAB (LUMINAL) (S:10/28/2016), PHENOBARBITAL 64.8MG TAB (LUMINAL) (S:10/28/2016), PHENOBARBITAL 32.4MG TAB (LUMINAL) (S:7/30/2016), PHENOBARBITAL 64.8MG TAB (LUMINAL) (S:7/30/2016), ALLOPURINOL 100MG TABLET (ZYLOPRIM) (S:8/19/2016), AMLODIPINE 10MG TABLET (NORVASC) (S:8/19/2016), ASPIRIN 81MG CHEW TAB (BAYER CHILDRENS ASPIRIN) (S:8/19/2016), CHLORTHALIDONE 25MG TAB (HYGROTON) (S:8/19/2016), LOSARTAN 50MG TABLET (COZAAR) (S:8/19/2016), METOPROLOL 50MG TABLET (LOPRESSOR) (S:8/19/2016), PHENYTOIN SOD 100MG CAP (DILANTIN) (S:8/19/2016), POTASSIUM CL 20MEQ TAB (K-DUR) (S:8/19/2016), PRAVASTATIN 20MG TABLET (PRAVACHOL) (S:8/19/2016), SENNA PLUS TABLET (SENOKOT S) (S:8/19/2016)

**Relevant Health Information To Accompant Patient:** N/A

**Special Instructions/Travel Needs:** N/A

**Post Consult Docs:** N/A

## Referring Physician Comments:

request ultrasound of the abdomen is case hallmarked by cutaneous lesion reported as sarcoidal granulomatous lesion by biopsy=nov/2007

| Requested By | Date |
|---|---|
| *IANNUZZI, NELSON A* | *10/20/2016 12:54:03 PM* |
| **Electronically Signed By** | **Date** |
| *WIENER,STEPHEN* | *10/27/2016 9:27:59 PM* |

Commonwealth of Pennsylvania
Department of Corrections
Consultation Record
DC-441

Revised 10/2015

Inmate Name: JONES, BARRY
Inmate Number: HF5900
DOB: [redacted] HT: WT:
Facility: SCI FRACKVILLE

Exhibit A - p. 446

# EXHIBIT

# "4"

19 Ex. 4 - p. 20

# CONSULTATION RECORD

**A. Referring Facility Details —** 10/27/2016 1:56 PM (SCI FRACKVILLE) Auth # ON-SITE-CONSULT

| | | | |
|---|---|---|---|
| Consult Type: | Initial | Referred To: | request abdominal ultrasound in patient with prior suspicion of prior sarcoidal dermatologic lesion. |
| Location: | On Site | Urgency | Routine |
| Clinic Type: | Ultrasound (US) | Referring Phys: | IANNUZZI, NELSON A |
| Visit Type: | On Site Clinic | Entered By: | IANNUZZI, NELSON |

| | | | |
|---|---|---|---|
| Destination: | ONSITE OR ONSITE/TELEMED CONSULT | | |
| Contact Person: | | | |
| Appt. Date: | 12/15/2016 | Appt. Time: | 08:00:00 |
| Appt. Findings: | | | |
| Findings Entered By: | | Findings Entered On: | N/A |

## Health Information

**Allergies:** SUDAFED

**Significant Past Medical & Surgical History:** [B18.2 - HCV], [D23.9 - SKIN, UNSPEC.], [D86.3 - SARCOIDOSIS OF SKIN], [E63.9 - NUTRITIONAL DEFICIENCIES, UNSPEC.], [E78.2 - HYPERLIPIDEMIA, MIXED], [I10 - HYPERTENSION, BENIGN], [K59.00 - CONSTIPATION, UNSPEC.], [K74.60 - CIRRHOSIS, NOS], [L20.84 - ECZEMA, ATOPIC DERMATITIS INTRINSIC (ALLERGIC) ECZEMA], [M12.9 - ARTHROPATHY, UNSPEC.], [R56.00 - SEIZURES, SIMPLE, FEBRILE, UNSPEC.], [Z13.6 - SCREENING, CARDIAC DISEASE]

**Present Illness Injury and Physical Findings:** [PRIMARY] SKIN, OTHER SYMPTOMS
[SECONDARY] HCV

**Treatment to Date:** MEDICAL

**Current Medications &Significant Medication History:** SELENIUM-2.5%- SULF LOT (SELSUN RX) (S:10/20/2016), AQUA/TAC 0.1% 1:1 CRM (COMPOUND 894) (S:10/21/2016), PHENOBARBITAL 32.4MG TAB (LUMINAL) (S:10/28/2016), PHENOBARBITAL 64.8MG TAB (LUMINAL) (S:10/28/2016), PHENOBARBITAL 32.4MG TAB (LUMINAL) (S:7/30/2016), PHENOBARBITAL 64.8MG TAB (LUMINAL) (S:7/30/2016), ALLOPURINOL 100MG TABLET (ZYLOPRIM) (S:8/19/2016), AMLODIPINE 10MG TABLET (NORVASC) (S:8/19/2016), ASPIRIN 81MG CHEW TAB (BAYER CHILDRENS ASPIRIN) (S:8/19/2016), CHLORTHALIDONE 25MG TAB (HYGROTON) (S:8/19/2016), LOSARTAN 50MG TABLET (COZAAR) (S:8/19/2016), METOPROLOL 50MG TABLET (LOPRESSOR) (S:8/19/2016), PHENYTOIN SOD 100MG CAP (DILANTIN) (S:8/19/2016), POTASSIUM CL 20MEQ TAB (K-DUR) (S:8/19/2016), PRAVASTATIN 20MG TABLET (PRAVACHOL) (S:8/19/2016), SENNA PLUS TABLET (SENOKOT S) (S:8/19/2018)

**Relevant Health Information To Accompany Patient:** N/A

**Special Instructions/Travel Needs:** N/A

**Post Consult Docs:** *FILE LIST: JONES HF5900 -US REFUSED 12-15-2016.PDF*

Commonwealth of Pennsylvania
Department of Corrections
Consultation Record
DC-441

Revised 10/2015

Inmate Name: JONES, BARRY
Inmate Number: HF5900
DOB: [redacted] HT: WT:
Facility: SCI FRACKVILLE

**Exhibit A - p. 448**

10-13

3004696 pg 4 of 66 for BARRY JONES

# EXHIBIT

# "5"

10 NO- Cirrhosis (EX 5) 1146 20

ABDUS ATTN: LIVER ✓

# CONSULTATION RECORD

A. Referring Facility Details --- 12/28/2016 4:00 PM (SCI FRACKVILLE) Auth # ON-SITE-CONSULT

24

| | | | |
|---|---|---|---|
| Consult Type: | Initial | Referred To: | Onsite US service. |
| Location: | On Site | Urgency | Routine |
| Clinic Type: | Ultrasound (US) | Referring Phys: | PANDYA, HARESH B |
| Visit Type: | Radiology | Entered By: | PANDYA, HARESH |

| | | | |
|---|---|---|---|
| Destination: | ONSITE OR ONSITE/TELEMED CONSULT | | |
| Contact Person: | | | |
| Appt. Date: | 1/5/2017 | Appt. Time: | 08:30:00 |
| Appt. Findings: | | | |
| Findings Entered By: | | Findings Entered On: | N/A |

**Health Information**

| | |
|---|---|
| Allergies: | SUDAFED |
| Significant Past Medical & Surgical History: | [B18.2 - HCV], [D23.9 - SKIN, UNSPEC.], [E63.9 - NUTRITIONAL DEFICIENCIES, UNSPEC.], [E78.2 - HYPERLIPIDEMIA, MIXED], [I10 - HYPERTENSION, BENIGN], [K59.00 - CONSTIPATION, UNSPEC.], [M12.9 - ARTHROPATHY, UNSPEC.], [R56.00 - SEIZURES, SIMPLE, FEBRILE, UNSPEC.], [Z13.6 - SCREENING, CARDIAC DISEASE] |
| Present Illness Injury and Physical Findings: | [PRIMARY] HCV<br>[SECONDARY] HYPERLIPIDEMIA, MIXED<br>[SECONDARY] SKIN, OTHER SYMPTOMS<br>[SECONDARY] SEIZURES, SIMPLE, FEBRILE, UNSPEC.<br>[SECONDARY] ARTHROPATHY, UNSPEC.<br>[SECONDARY] HYPERTENSION, BENIGN |
| Treatment to Date: | NONE FOR HCV. |
| Current Medications &Significant Medication History: | PHENOBARBITAL 32.4MG TAB (LUMINAL) (S:10/28/2016), PHENOBARBITAL 64.8MG TAB (LUMINAL) (S:10/28/2016), ALLOPURINOL 100MG TABLET (ZYLOPRIM) (S:11/9/2016), AMLODIPINE 10MG TABLET (NORVASC) (S:11/9/2016), ASPIRIN 81MG CHEW TAB (BAYER CHILDRENS ASPIRIN) (S:11/9/2016), CHLORTHALIDONE 25MG TAB (HYGROTON) (S:11/9/2016), LOSARTAN 50MG TABLET (COZAAR) (S:11/9/2016), METOPROLOL 50MG TABLET (LOPRESSOR) (S:11/9/2016), PHENYTOIN SOD 100MG CAP (DILANTIN) (S:11/9/2016), POTASSIUM CL 20MEQ TAB (K-DUR) (S:11/9/2016), PRAVASTATIN 20MG TABLET (PRAVACHOL) (S:11/9/2016), SELENIUM~2.5%~ SULF LOT (SELSUN RX) (S:11/9/2016), SENNA PLUS TABLET (SENOKOT S) (S:11/9/2016) |
| Relevant Health Information To Accompany Patient: | N/A |
| Special Instructions/Travel Needs: | N/A |
| Post Consult Docs: | N/A |

**Referring Physician Comments:**

62 year old AA male with hepatitis C. Upper abdomen US for evaluation of liver status and effect if any of Portal Hypertension. .

Commonwealth of Pennsylvania
Department of Corrections
Consultation Record
DC-441

Revised 10/2015

Inmate Name: JONES, BARRY

Inmate Number: HF5900

DOB: [redacted] HT: WT:

Facility: SCI FRACKVILLE

# EXHIBIT

# "6"

no-cirrhosis

22

App-6

# CONSULTATION RECORD

A. Referring Facility Details --- 10/27/2016 1:56 PM (SCI FRACKVILLE) Auth # ON-SITE-CONSULT

| | | | |
|---|---|---|---|
| Consult Type: | Initial | Referred To: | request abdominal ultrasound in patient with prior suspicion of prior sarcoidal dermatologic lesion. |
| Location: | On Site | Urgency | Routine |
| Clinic Type: | Ultrasound (US) | Referring Phys: | IANNUZZI, NELSON A |
| Visit Type: | On Site Clinic | Entered By: | IANNUZZI, NELSON |

| | | | |
|---|---|---|---|
| Destination: | ONSITE OR ONSITE/TELEMED CONSULT | | |
| Contact Person: | | | |
| Appt. Date: | 11/17/2016 | Appt. Time: | 08:00:00 |
| Appt. Findings: | Reschedule 12/2016 | | |
| Findings Entered By: | | Findings Entered On: | N/A |

## Health Information

| | |
|---|---|
| Allergies: | SUDAFED |
| Significant Past Medical & Surgical History: | [B18.2 - HCV], [D23.9 - SKIN, UNSPEC.], [E63.9 - NUTRITIONAL DEFICIENCIES, UNSPEC.], [E78.2 - HYPERLIPIDEMIA, MIXED], [I10 - HYPERTENSION, BENIGN], [K59.00 - CONSTIPATION, UNSPEC.], [M12.9 - ARTHROPATHY, UNSPEC.], [R56.00 - SEIZURES, SIMPLE, FEBRILE, UNSPEC.], [Z13.6 - SCREENING, CARDIAC DISEASE] |
| Present Illness Injury and Physical Findings: | [PRIMARY] SKIN, OTHER SYMPTOMS<br>[SECONDARY] HCV |
| Treatment to Date: | MEDICAL |
| Current Medications & Significant Medication History: | SELENIUM~2.5%~ SULF LOT (SELSUN RX) (S:10/20/2016), AQUA/TAC 0.1% 1:1 CRM (COMPOUND 894) (S:10/21/2016), PHENOBARBITAL 32.4MG TAB (LUMINAL) (S:10/28/2016), PHENOBARBITAL 64.8MG TAB (LUMINAL) (S:10/28/2016), PHENOBARBITAL 32.4MG TAB (LUMINAL) (S:7/30/2016), PHENOBARBITAL 64.8MG TAB (LUMINAL) (S:7/30/2016), ALLOPURINOL 100MG TABLET (ZYLOPRIM) (S:8/19/2016), AMLODIPINE 10MG TABLET (NORVASC) (S:8/19/2016), ASPIRIN 81MG CHEW TAB (BAYER CHILDRENS ASPIRIN) (S:8/19/2016), CHLORTHALIDONE 25MG TAB (HYGROTON) (S:8/19/2016), LOSARTAN 50MG TABLET (COZAAR) (S:8/19/2016), METOPROLOL 50MG TABLET (LOPRESSOR) (S:8/19/2016), PHENYTOIN SOD 100MG CAP (DILANTIN) (S:8/19/2016), POTASSIUM CL 20MEQ TAB (K-DUR) (S:8/19/2016), PRAVASTATIN 20MG TABLET (PRAVACHOL) (S:8/19/2016), SENNA PLUS TABLET (SENOKOT S) (S:8/19/2016) |
| Relevant Health Information To Accompany Patient: | N/A |
| Special Instructions/Travel Needs: | N/A |

## Referring Physician Comments:

request abdominal ultrasound detail liver and spleen, kidneys in patient with prior suspicion of prior sarcoidal dermatologic lesion.

Commonwealth of Pennsylvania
Department of Corrections
Consultation Record
DC-441

Revised 10/2015

Inmate Name: JONES, BARRY

Inmate Number: HF5900

DOB: [redacted] HT: WT:

Facility: SCI FRACKVILLE

# EXHIBIT

# "7"

A-163

**A. Referring Facility Details** — 2/16/2018 3:08 PM (SCI FRACKVILLE) Auth # 7246049

| | | | |
|---|---|---|---|
| Consult Type: | Initial | Referred To: | Dr Schliescher DErmatologist from Somerset. |
| Location: | Off Site | Urgency | Routine |
| Clinic Type: | Dermatology | Referring Phys: | PANDYA, HARESH B |
| Visit Type: | Telemedicine | Entered By: | PANDYA, HARESH |

| | | | |
|---|---|---|---|
| Destination: | DR SCHLEICHER- ONSITE TELEMEDICINE | | |
| Contact Person: | DR SCHLEICHER | | |
| Appt. Date: | 2/26/2018 | Appt. Time: | 13:30:00 |
| Appt. Findings: | | | |
| Findings Entered By: | | Findings Entered On: | N/A |

**Health Information**

| | |
|---|---|
| **Allergies:** | SUDAFED |
| Significant Past Medical & Surgical History: | [B18.2 - HCV], [D23.9 - SKIN, UNSPEC.], [D86.3 - SARCOIDOSIS OF SKIN], [E63.9 - NUTRITIONAL DEFICIENCIES, UNSPEC.], [E78.2 - HYPERLIPIDEMIA, MIXED], [I10 - HYPERTENSION, BENIGN], [K59.00 - CONSTIPATION, UNSPEC.], [K74.60 - CIRRHOSIS, NOS], [L20.84 - ECZEMA, ATOPIC DERMATITIS INTRINSIC (ALLERGIC) ECZEMA], [M12.9 - ARTHROPATHY, UNSPEC.], [R56.00 - SEIZURES, SIMPLE, FEBRILE, UNSPEC.], [R56.9 - SEIZURES, CONVULSIONS, OTHER], [Z13.6 - SCREENING, CARDIAC DISEASE] |
| Present Illness Injury and Physical Findings: | [PRIMARY] ECZEMA, ATOPIC DERMATITIS INTRINSIC (ALLERGIC) ECZEMA<br>[SECONDARY] HCV<br>[SECONDARY] HYPERTENSION, BENIGN<br>[SECONDARY] SEIZURES, SIMPLE, FEBRILE, UNSPEC. |
| Treatment to Date: | SEE DETAILS BELOW. SINCE 2013 LOTIONS RX AND FROM 2016 FROM THE STORE. MR JONES WILL SOON START RX FOR HIS HEP C CIRRHOSIS WITH ANTIVIRAL. |
| Current Medications &Significant Medication History: | PHENOBARBITAL 32.4MG TAB (LUMINAL) (S:1/21/2018), PHENOBARBITAL 64.8MG TAB (LUMINAL) (S:1/21/2018), VITAMIN D3 5,000UNIT CAPS (S:12/1/2017), ALLOPURINOL 100MG TABLET (ZYLOPRIM) (S:11/6/2017), AMLODIPINE 10MG TABLET (NORVASC) (S:11/6/2017), ASPIRIN 81MG CHEW TAB (BAYER CHILDRENS ASPIRIN) (S:11/6/2017), CHLORTHALIDONE 25MG TAB (HYGROTON) (S:11/6/2017), LOSARTAN 50MG TABLET (COZAAR) (S:11/6/2017), METOPROLOL 50MG TABLET (LOPRESSOR) (S:11/6/2017), PHENYTOIN ER 100MG CAP (DILANTIN) (S:11/6/2017), POTASSIUM CL 20MEQ TAB (K-DUR) (S:11/6/2017), PRAVASTATIN 20MG TABLET (PRAVACHOL) (S:11/6/2017), SENNA PLUS TABLET (SENOKOT S) (S:11/6/2017) |
| Relevant Health Information To Accompant Patient: | N/A<br>*FILE LIST: JONESBARRYHF5900SKINBXPATH11092016.PDF; JONESBARRY HF5900 SKINBX 2007.PDF* |
| Special Instructions/Travel Needs: | N/A |
| Post Consult Docs: | *FILE LIST: JONES HF5900 -DERM TELEMED REPORT.PDF* |

Commonwealth of Pennsylvania
Department of Corrections
Consultation Record
DC-441

Inmate Name: JONES, BARRY
Inmate Number: HF5900
DOB: 4/10/1959 HT: WT: 264 lbs
Facility: SCI FRACKVILLE

Revised 10/2015

# EXHIBIT

# "8"

10

2

**Referring Physician Comments:**

58 yr old AA male with HCV and known Cirrhosis. dx by Fibrosure. also has Dermal Sarcoidal/Lichen Nodularis type lesions.
This US is screening for Hepatoma.

| Requested By | Date |
|---|---|
| *PANDYA, HARESH B* | *2/16/2018 10:45:06 AM* |
| **Electronically Signed By** | **Date** |
| *PANDYA,HARESH* | *2/16/2018 10:45:06 AM* |

Commonwealth of Pennsylvania
Department of Corrections
Consultation Record
DC-441

Revised 10/2015

Inmate Name: JONES, BARRY
Inmate Number: HF5900
DOB: [redacted] HT: WT:
Facility: SCI FRACKVILLE

# EXHIBIT

# “9”

A165

# CONSULTATION RECORD

A. Referring Facility Details --- 4/13/2018 3:41 PM (SCI FRACKVILLE) Auth # 340B

| | | | |
|---|---|---|---|
| Consult Type: | Initial | Referred To: | Temple ID for Hepatitis C treatment |
| Location: | On Site | Urgency | Routine |
| Clinic Type: | Infectious Disease (Temple 340B Clinic) | Referring Phys: | PANDYA, HARESH B |
| Visit Type: | Telemedicine | Entered By: | PANDYA, HARESH |

| | | | |
|---|---|---|---|
| Destination: | ONSITE OR ONSITE/TELEMED CONSULT | | |
| Contact Person: | | | |
| Appt. Date: | 4/25/2018 | Appt. Time: | 08:45:00 |
| Appt. Findings: | | | |
| Findings Entered By: | | Findings Entered On: | N/A |

**Health Information**

| | |
|---|---|
| Allergies: | SUDAFED |
| Significant Past Medical & Surgical History: | [B18.2 - HCV], [D23.9 - SKIN, UNSPEC.], [E63.9 - NUTRITIONAL DEFICIENCIES, UNSPEC.], [E78.2 - HYPERLIPIDEMIA, MIXED], [I10 - HYPERTENSION, BENIGN], [K59.00 - CONSTIPATION, UNSPEC.], [K74.60 - CIRRHOSIS, NOS], [L20.84 - ECZEMA, ATOPIC DERMATITIS INTRINSIC (ALLERGIC) ECZEMA], [M12.9 - ARTHROPATHY, UNSPEC.], [R56.00 - SEIZURES, SIMPLE, FEBRILE, UNSPEC.], [Z13.6 - SCREENING, CARDIAC DISEASE] |
| Present Illness Injury and Physical Findings: | [PRIMARY] HCV<br>[SECONDARY] CIRRHOSIS, NOS<br>[SECONDARY] SEIZURES, SIMPLE, FEBRILE, UNSPEC.<br>[SECONDARY] HYPERLIPIDEMIA, MIXED |
| Treatment to Date: | NONE FOR HEPATITIS C |
| Current Medications &Significant Medication History: | ALLOPURINOL 100MG TABLET (ZYLOPRIM) (S:3/3/2018), AMLODIPINE 10MG TABLET (NORVASC) (S:3/3/2018), ASPIRIN 81MG CHEW TAB (BAYER CHILDRENS ASPIRIN) (S:3/3/2018), CHLORTHALIDONE 25MG TAB (HYGROTON) (S:3/3/2018), LOSARTAN 50MG TABLET (COZAAR) (S:3/3/2018), METOPROLOL 50MG TABLET (LOPRESSOR) (S:3/3/2018), POTASSIUM CL 20MEQ TAB (K-DUR) (S:3/3/2018), PRAVASTATIN 20MG TABLET (PRAVACHOL) (S:3/3/2018), SENNA PLUS TABLET (SENOKOT S) (S:3/3/2018), PHENYTOIN ER 100MG CAP (DILANTIN) (S:3/3/2018), EUCERIN CREAM (S:2/28/2018), PHENOBARBITAL 32.4MG TAB (LUMINAL) (S:1/21/2018), PHENOBARBITAL 64.8MG TAB (LUMINAL) (S:1/21/2018), VITAMIN D3 5,000UNIT CAPS (S:12/1/2017) |
| Relevant Health Information To Accompany Patient: | N/A |
| Special Instructions/Travel Needs: | N/A |
| Post Consult Docs: | N/A |

**Referring Physician Comments:**

59 yr old AA male with Hepatits C Genotype Ia, & Cirrhosis, Splenomegaly, Without ascites & significant portal hyper tension is referred for treatment with antivirals.

Commonwealth of Pennsylvania
Department of Corrections
Consultation Record
DC-441

Revised 10/2015

Inmate Name: JONES, BARRY
Inmate Number: HF5900
DOB: 4/10/1959 HT: WT:
Facility: SCI FRACKVILLE

# EXHIBIT

# "10"

10 F4

# Jones, Barry

MRN: 2940202
Description: [redacted] year old male

**Progress Notes** Encounter Date: 4/25/2018 12:51 PM

Kelly Lattanzi, CRNP
Internal Medicine

Expand All Collapse All

**Subjective:**

**Patient ID:** Barry Jones is a [redacted] y.o. male.

**Subjective**

HPI

PA department of corrections referral for HCV evaluation and treatment

**Past Medical History:**

| Diagnosis | Date |
|---|---|
| • Arthropathies | |
| • Eczema | |
| • Hyperlipidemia | |
| • Hypertension | |
| • Sarcoid | |
| • Seizure disorder | |
| • TBI (traumatic brain injury) | |
| • Viral hepatitis | |

History of seizure disorder which began after TBI in 1974. Per patient he has always been on phenobarb and dilantin and has not had other seizure medication exposure.

HCV
**Dx 20 years ago- reports hx of IVDU**
**Treatment experienced- failed interferon 2000's**
GT1a (2/9/18)
Fibrosure F4 (12/6/17)
Labs from 2/9/18- HCV VL 1,086,860

Labs 4/4/18
plt 394
Hg/Hct 14.3/41.8
Albumin 3.6
Cr 0.68
Glu 122
AST/ALT 37/38

3

# EXHIBIT

# "11"

A-97

# CONSULTATION RECORD

**A. Referring Facility Details ---** 5/14/2018 8:49 AM (SCI FRACKVILLE) Auth # 7736731

| | | | |
|---|---|---|---|
| Consult Type: | Initial | Referred To: | as per collegial 5-11-2018 the decision to proceed to Neurology was agreed |
| Location: | Off Site | Urgency | Routine |
| Clinic Type: | Neurology | Referring Phys: | IANNUZZI, NELSON A |
| Visit Type: | Telemedicine | Entered By: | IANNUZZI, NELSON |

| Health Information | |
|---|---|
| **Allergies:** | SUDAFED |
| **Significant Past Medical & Surgical History:** | [B18.2 - HCV], [D23.9 - SKIN, UNSPEC.], [D86.3 - SARCOIDOSIS OF SKIN], [E63.9 - NUTRITIONAL DEFICIENCIES, UNSPEC.], [E78.2 - HYPERLIPIDEMIA, MIXED], [I10 - HYPERTENSION, BENIGN], [K59.00 - CONSTIPATION, UNSPEC.], [K74.60 - CIRRHOSIS, NOS], [L20.84 - ECZEMA, ATOPIC DERMATITIS INTRINSIC (ALLERGIC) ECZEMA], [M12.9 - ARTHROPATHY, UNSPEC.], [R56.00 - SEIZURES, SIMPLE, FEBRILE, UNSPEC.], [Z13.6 - SCREENING, CARDIAC DISEASE] |
| **Present Illness Injury and Physical Findings:** | [PRIMARY] SEIZURES, SIMPLE, FEBRILE, UNSPEC. |
| **Treatment to Date:** | MEDICAL |
| **Current Medications &Significant Medication History:** | EUCERIN INT REPAIR CREAM (EMOLLIENT/SKIN CLEANSER) (S:4/18/2018), PHENOBARBITAL 32.4MG TAB (LUMINAL) (S:4/21/2018), PHENOBARBITAL 64.8MG TAB (LUMINAL) (S:4/21/2018), ALLOPURINOL 100MG TABLET (ZYLOPRIM) (S:3/3/2018), AMLODIPINE 10MG TABLET (NORVASC) (S:3/3/2018), ASPIRIN 81MG CHEW TAB (BAYER CHILDRENS ASPIRIN) (S:3/3/2018), CHLORTHALIDONE 25MG TAB (HYGROTON) (S:3/3/2018), LOSARTAN 50MG TABLET (COZAAR) (S:3/3/2018), METOPROLOL 50MG TABLET (LOPRESSOR) (S:3/3/2018), POTASSIUM CL 20MEQ TAB (K-DUR) (S:3/3/2018), PRAVASTATIN 20MG TABLET (PRAVACHOL) (S:3/3/2018), SENNA PLUS TABLET (SENOKOT S) (S:3/3/2018), PHENYTOIN ER 100MG CAP (DILANTIN) (S:3/3/2018), VITAMIN D3 5,000UNIT CAPS (S:12/1/2017) |
| **Relevant Health Information To Accompant Patient:** | N/A |
| **Special Instructions/Travel Needs:** | |
| **Post Consult Docs:** | N/A |

**Referring Physician Comments:**

The patient has been using Phenobarbital and Dilantin sub-Therapeutically at his demand for >10 years without any seizure reported. Neurology is sought for opine in this case on what anti-seizure medication regimen may be best suited in a patient for whom HCV anti-viral treatment is being considered. The man has most recently been offered Keppra by the Medical director at this facility and has refused pending opine of a Neurologist.

| Requested By | Date |
|---|---|
| *IANNUZZI, NELSON A* | *5/14/2018 8:49:22 AM* |
| **Electronically Signed By** | **Date** |
| *WIENER,STEPHEN* | *5/17/2018 1:13:23 PM* |

Commonwealth of Pennsylvania
Department of Corrections
Consultation Record
DC-441

Revised 10/2015

Inmate Name: JONES, BARRY
Inmate Number: HF5900
DOB: 4/10/1959 HT: WT:
Facility: SCI FRACKVILLE

# EXHIBIT

# “12”



Teleneurology

**PATIENT NAME:** Barry Jones
**INMATE NUMBER:** HF5900
**DOB:** 04/10/1959
**FACILITY:** SCI Frackville
**DATE & TIME:** 05/30/18 13:30

**SUBJECTIVE:** 59-year-old right-handed African American man with a history of hypertension, hyperlipidemia, sarcoidosis of the skin, cirrhosis, and posttraumatic epilepsy who is being evaluated by tele neurology consultation for recommendations regarding a change in antiepileptic drug (AED) therapy. The patient states that he had traumatic brain injury in 1974, when he was struck with a pistol and lost consciousness. He began to have tremors in his left hand approximately 9 months later. Seizures evolved to include a progression of headache, confusion, and convulsive activity +/- oral trauma; he denies having experienced incontinence with these events. Shortly following the onset of his seizures, he was started simultaneously on Dilantin and phenobarbital, which he has continued to the present time. His last seizure occurred approximately 10 years ago when phenobarbital was being tapered. He denies any side effects with use of the two AEDs. In order to begin treatment of chronic hepatitis C with Epclusa (direct acting antivirals), phenobarbital and Dilantin are contraindicated and cannot be co-administered because of drug-drug interactions. It has been recommended to the patient by Dr. Pandya to begin a crossover from phenobarbital and Dilantin use to Keppra use; however, the patient indicated that he needed to hear this recommendation from a neurologist. He is very concerned about the possibility of breakthrough seizures with any change in his AED regimen. Medications include phenobarbital, phenytoin, allopurinol, amlodipine, aspirin, chlorthalidone, losartan, metoprolol, potassium chloride, pravastatin, Senokot, and vitamin D3. Allergies: Sudafed.

**OBJECTIVE: Mental status:** Alert and oriented. Speaks easily. There is no dysarthric or aphasic element of speech. Fund of knowledge is appropriate for age and background.
**Cranial nerves:** Normal pursuit and saccadic movements. Facies is symmetric.
**Cerebellar:** Good finger-to-nose testing without dystaxia or dysmetria bilaterally.
**Station and gait:** Negative Romberg. Casual gait is normal.

**ASSESSMENT:** Posttraumatic epilepsy with optimal seizure control with current use of phenobarbital and Dilantin. In order for the patient to receive treatment for hepatitis-C, phenobarbital and Dilantin will need to be discontinued because of drug-drug interactions.

**PLAN:** 1. Begin use of Keppra 500 mg b.i.d. with continued use of his current dosing of phenobarbital and Dilantin.
2. If there is no intolerance of the medication use after 2 weeks, it is anticipated that the Keppra will be increased to 750 mg b.i.d.
3. A return visit will be scheduled at that time to speak with the patient and to discuss continued titration of the Keppra as well as a plan to begin tapering of the phenobarbital and Dilantin to discontinuation. The patient has already been advised that the tapering of phenobarbital will be much slower than that of Dilantin.
4. Return visit in 2 weeks.

Kevin Kelly
Signature of Consultant

05/30/2018 / 1450
Date/Time

*Fax completed consults to 814-443-8161*

# EXHIBIT

# “13”

# CONSULTATION RECORD

**A. Referring Facility Details ---** 6/2/2018 6:03 PM (SCI FRACKVILLE) Auth #

| | | | |
|---|---|---|---|
| Consult Type: | Follow-up | Referred To: | DR. Kelly, AHN |
| Location: | Off Site | Urgency | Routine |
| Clinic Type: | Neurology | Referring Phys: | PANDYA, HARESH B |
| Visit Type: | Telemedicine | Entered By: | PANDYA, HARESH |

| Health Information | |
|---|---|
| **Allergies:** | SUDAFED |
| **Significant Past Medical & Surgical History:** | [B18.2 - HCV], [D23.9 - SKIN, UNSPEC.], [D86.3 - SARCOIDOSIS OF SKIN], [E63.9 - NUTRITIONAL DEFICIENCIES, UNSPEC.], [E78.2 - HYPERLIPIDEMIA, MIXED], [I10 - HYPERTENSION, BENIGN], [K59.00 - CONSTIPATION, UNSPEC.], [K74.60 - CIRRHOSIS, NOS], [L20.84 - ECZEMA, ATOPIC DERMATITIS INTRINSIC (ALLERGIC) ECZEMA], [M12.9 - ARTHROPATHY, UNSPEC.], [R56.00 - SEIZURES, SIMPLE, FEBRILE, UNSPEC.], [R56.9 - SEIZURES, CONVULSIONS, OTHER], [Z13.6 - SCREENING, CARDIAC DISEASE] |
| **Present Illness Injury and Physical Findings:** | [PRIMARY] SEIZURES, CONVULSIONS, OTHER<br>[SECONDARY] HCV<br>[SECONDARY] HYPERLIPIDEMIA, MIXED<br>[SECONDARY] CIRRHOSIS, NOS<br>[SECONDARY] ECZEMA, ATOPIC DERMATITIS INTRINSIC (ALLERGIC) ECZEMA<br>[SECONDARY] SARCOIDOSIS OF SKIN<br>[SECONDARY] HYPERTENSION, BENIGN |
| **Treatment to Date:** | PATIENT SEEN DR KELLY ON 5-30-2018 VIA TELEMED AND IS STARTED ON KEPPRA 500 MG BID. THIS IS A FOLLOWUP VISIT ADVISED ON 5-30-2018 VISIT |
| **Current Medications &Significant Medication History:** | LEVETIRACETAM 500MG TAB (KEPPRA) (S:5/30/2018), EUCERIN INT REPAIR CREAM (EMOLLIENT/SKIN CLEANSER) (S:4/18/2018), PHENOBARBITAL 32.4MG TAB (LUMINAL) (S:4/21/2018), PHENOBARBITAL 64.8MG TAB (LUMINAL) (S:4/21/2018), ALLOPURINOL 100MG TABLET (ZYLOPRIM) (S:3/3/2018), AMLODIPINE 10MG TABLET (NORVASC) (S:3/3/2018), ASPIRIN 81MG CHEW TAB (BAYER CHILDRENS ASPIRIN) (S:3/3/2018), CHLORTHALIDONE 25MG TAB (HYGROTON) (S:3/3/2018), LOSARTAN 50MG TABLET (COZAAR) (S:3/3/2018), METOPROLOL 50MG TABLET (LOPRESSOR) (S:3/3/2018), POTASSIUM CL 20MEQ TAB (K-DUR) (S:3/3/2018), PRAVASTATIN 20MG TABLET (PRAVACHOL) (S:3/3/2018), SENNA PLUS TABLET (SENOKOT S) (S:3/3/2018), PHENYTOIN ER 100MG CAP (DILANTIN) (S:3/3/2018), VITAMIN D3 5,000UNIT CAPS (S:12/1/2017) |
| **Relevant Health Information To Accompant Patient:** | N/A |
| **Special Instructions/Travel Needs:** | N/A |
| **Post Consult Docs:** | N/A |

**Referring Physician Comments:**

59 yr old AA male with seizure disorder from TBI in 1974, well controlled for last 20+ years with Dilantin and Phenobarbital even though the levels are just below accepted Therapeutic. Past attempts to withdraw one or other after achieving therapeutic level on one has been unsuccessful hence patient was very reluctant to change without Neurologist directions. Now he is to receive HCV Rx with Epclusa hence he must switch over to other safer antiseizure drugs/ Keppra is started after his Telemed visit with Dr Kelly. Neurologist from AHN. This request is for a 2 week followup visit via Telemedicine.

Commonwealth of Pennsylvania
Department of Corrections
Consultation Record
DC-441

Revised 10/2015

Inmate Name: JONES, BARRY
Inmate Number: HF5900
DOB: 4/10/1959 HT: WT:
Facility: SCI FRACKVILLE

# EXHIBIT

# "14"



JONES, BARRY #HF5900 Case: 22-2992 Document: 23 Page: 107 Date Filed: 08/10/2023 Location: A-B-1013-01

## DC-472 - Progress Note Medical Provider

**Date/Time:**

02/09/2018 13:30

**Facility:**

SCI FRACKVILLE

**Subjective:**

board certified dermatologist dr TAn stated I have Sarcoidosis and now yu sayI don't have it. Brand name Eucerin was prescribed by the dr on Televison and the other dr wrote it down. The doctor did not send no written paper. I do have the copies I will go thru it too. Tehe Brand name Eucerin took care of it for 6 year still that Dr harwood discontinue it. the lotion does not work. My back and whole body itches. There is rach all over my upperleg my arms. There is nothing wrong with the water temperature.

**Objective:**

Patient has rash nodular over the usual common eczema area easily reachable by his hand. like knees elbows front of the body suprascapular and at waist lineabove the beltline. Has less rash in middle of back and lower legs and buttocks. he sems to be more upset over not getting Brand name eucerin and the more itch he is feeling now because of his Cirrhosis. not ready to accept that back is much clear and rash is lot less there whenhe is feeling quiteintense itch there.

**Assessment:**

Cirrhosis of liver well compensated. He is approved for treatment of his Hep C.

**Plan:**

Will see him after the remaining lab reports come and treatment is about to start. meanwhile will research his old record to prepare consult for Deramtology. Pt.ed. that Itching may reduce after the treatment if Rx is successful. Though he is not willing to accept that as hehad rash since 1997or earlier. .

**Other:**

*NO ANSWER PROVIDED*

### Save Log

| User Name | Audit Date |
|---|---|
| PANDYA, HARESH | 2/9/2018 6:12:25 PM |
| PANDYA, HARESH | 2/9/2018 1:31:45 PM |

DC-472 - Progress Note Medical Provider
DC-472 - Progress Note - For Medical Provider use only

Patient Name: JONES, BARRY
Patient Number: HF5900
Location: A-B-1013-01
DOB:
Facility: SCI FRACKVILLE
Electronically Signed By PANDYA, HARESH, MD on 2/9/2018

Ex. A 000057

# EXHIBIT

# "15"

**Cirrhosis Info from the Mayo Clinic**

Cirrhosis is a late stage of scarring (fibrosis) of the liver caused by many forms of liver diseases and conditions, such as **hepatitis** and chronic alcoholism.

Each time your liver is injured — whether by disease, excessive alcohol consumption or another cause — it tries to repair itself. In the process, scar tissue forms. As cirrhosis progresses, more and more scar tissue forms, making it difficult for the liver to function (decompensated cirrhosis). Advanced cirrhosis is life-threatening.

The liver damage done by cirrhosis generally can't be undone. But if liver cirrhosis is diagnosed early and the cause is treated, further damage can be limited. Treatment can help, but this condition can't be cured.

A normal liver (left) shows no signs of scarring. In cirrhosis (right), scar tissue replaces normal liver tissue.

Liver function tests are blood tests used to help diagnose and monitor liver disease or damage. The tests measure the levels of certain enzymes and proteins in your blood.

As cirrhosis worsens, the function of the liver is lost and, simultaneously, the organ becomes smaller and solidifies. If you have an unhealthy liver, fluid accumulates in the legs and abdomen. Bile salts can easily build up in the skin, which can lead to jaundice and itching. Bleeding from the large veins in your GI tract and esophagus may occur. Toxins can also accumulate in the blood, which can result in confusion and mental slowing. For those individuals with advanced cirrhosis, the only true treatment for this disease is a liver transplant.

Unfortunately, there are many possible complications of cirrhosis, including liver failure and liver cancer.

# EXHIBIT

# “16”

EX - [illegible] / 10

# SWORN AFFIDAVIT OF BARRY JONES

I, Barry Jones hereby swear and attest that the foregoing affidavit is true and correct to the best of my knowledge, information and belief. I state this subject to the penalties of perjury. 18 U.S.C. Sec. 1612

I, Barry Jones, entered the Pennsylvania Department of Corrections, ("DOC"), in 1985, Approximately 28 years ago, I was diagnosed with the Hepatitis C Virus, ("HCV"). I was treated previously with the antiviral drugs Interferon and Ribavinin from 2000 thru 2010 which prove ineffective. That course of treatment was subsequently discontinued, Immediately upon learning of the approval new direct-acting antiviral drugs, ("DAAD"), I requested, assuming I would also be prescribed those drugs as treatment. I was denied that treatment by Dr. Haresh Pandya, who claimed the drugs were "too expensive."

Despite my medical record demonstrating: (1) I was diagnosed with HCV almost Thirty years ago (2) previous attempts to cure that virus was unsuccessful (3) I had a diminished platelet count below 140 (indicating disease progression) (4) was at a greater risk of Cirrhosis and (5) was developing manifestation of failing liver function including but not limited to; eczema, atoptic dermatitis, intrinsic (allergic) eczema, cirrhosis, sarcoidisis of skin and seborrheic keratosis, I was denied treatment with a DAAD. I was told that I did not meet the requirement of the DOC HCV Protocol.

I filed an inmate grievance which was denied. I appealed that decision to final review but that too, proved futile. Meanwhile, my condition worsen as shown in photographs submitted as "(Pl.Ex.F-thru-F-12-8/17/21)." Unbeknowing to Plaintiff, As early as October 20, 2016 my Fibrosure Score was listed as "F4" clearly indicating and medically documented as "cirrhosis (Pl.Ex.F-13-14-15), yet, In January 12, 2018, the DOC denied my grievance concluding that "No evidence of wrong doing has been identified." (Pl.Ex.C). My medical records from 2013 through 2016 indicate the likelihood I had cirrhosis, however, 2016, 2017, Plaintiff discovered in 2018 consultation medical records documented by the defendant, and other SCI Frackville medical staff, 'cirrhosis' in Plaintiff's Past Medical History, (Pl.Ex.F-13-thru-F-26), but I was refused treatment with a DAAD.

Dated 4\13\22

/s/ [signature]
Barry Jones, plaintiff

**Commonwealth of Pennsylvania**
**County of** Schuylkill

Sworn and Signed before me this 13th day of APRIL, 2022

Commonwealth of Pennsylvania - Notary Seal
Goodson Samuel Gomonda, Notary Public
Schuylkill County
My commission expires December 31, 2023
Commission number 1344046

**This record was acknowledged before me**
**on** 13-APRIL 2022
**by** G Samuel Gomonda

# EXHIBIT

# "17"

# SCI-FRACKVILLE

Inmate Name: JONES, Barry Inmate Number: QK3379

Incident Date: 8/17/2021 Time: 2030

Incident: Photos as requested by PA

Reported by: N/A

Description of Incident: Photos as requested by PA

Photo(s) taken by: K. Redanauer, LPN # of Photos taken: 13



# SCI-FRACKVILLE

Inmate Name: JONES, Barry                                    Inmate Number: QK3379

Incident Date:   8/17/2021                                                    Time:   2030

Incident:    Photos as requested by PA

Reported by:    N/A

Description of Incident:          Photos as requested by PA

Photo(s) taken by:    K. Redanauer, LPN                        # of Photos taken:    13



# SCI-FRACKVILLE

Inmate Name: JONES, Barry                          Inmate Number: QK3379

Incident Date:   8/17/2021                                    Time:   2030

Incident:   Photos as requested by PA

Reported by:   N/A

Description of Incident:        Photos as requested by PA

Photo(s) taken by:   K. Redanauer, LPN                    # of Photos taken:   13





# SCI-FRACKVILLE

Inmate Name: JONES, Barry Inmate Number: QK3379

Incident Date: 8/17/2021 Time: 2030

Incident: Photos as requested by PA

Reported by: N/A

Description of Incident: Photos as requested by PA

Photo(s) taken by: K. Redanauer, LPN # of Photos taken: 13



# SCI-FRACKVILLE

Inmate Name: JONES, Barry                    Inmate Number: QK3379

Incident Date:   8/17/2021                                         Time:   2030

Incident:   Photos as requested by PA

Reported by:   N/A

Description of Incident:          Photos as requested by PA

Photo(s) taken by:   K. Redanauer, LPN                    # of Photos taken:   13



# SCI-FRACKVILLE

Inmate Name: JONES, Barry                         Inmate Number: QK3379

Incident Date:   8/17/2021                                        Time:   2030

Incident:   Photos as requested by PA

Reported by:   N/A

Description of Incident:          Photos as requested by PA

Photo(s) taken by:   K. Redanauer, LPN                  # of Photos taken:   13



# SCI-FRACKVILLE

Inmate Name: JONES, Barry                              Inmate Number: QK3379

Incident Date:   8/17/2021                                              Time:   2030

Incident:   Photos as requested by PA

Reported by:   N/A

Description of Incident:          Photos as requested by PA

Photo(s) taken by:   K. Redanauer, LPN                    # of Photos taken:   13



POST USE
OF FORCE

MEDICAL
CHECKLIST

# SCI-FRACKVILLE

Inmate Name: JONES, Barry

Inmate Number: QK3379

Incident Date:    8/17/2021

Time:    2030

Incident:    Photos as requested by PA

Reported by:    N/A

Description of Incident:    Photos as requested by PA

Photo(s) taken by:    K. Redanauer, LPN

# of Photos taken:    13



# SCI-FRACKVILLE

Inmate Name: JONES, Barry                     Inmate Number: QK3379

Incident Date:   8/17/2021                                    Time:   2030

Incident:   Photos as requested by PA

Reported by:   N/A

Description of Incident:          Photos as requested by PA

Photo(s) taken by:   K. Redanauer, LPN                     # of Photos taken:   13



# SCI-FRACKVILLE

Inmate Name: JONES, Barry Inmate Number: QK3379

Incident Date: 8/17/2021 Time: 2030

Incident: Photos as requested by PA

Reported by: N/A

Description of Incident: Photos as requested by PA

Photo(s) taken by: K. Redanauer, LPN # of Photos taken: 13




# SCI-FRACKVILLE

Inmate Name: JONES, Barry                          Inmate Number: QK3379

Incident Date:   8/17/2021                                         Time:   2030

Incident:   Photos as requested by PA

Reported by:   N/A

Description of Incident:            Photos as requested by PA

Photo(s) taken by:   K. Redanauer, LPN                   # of Photos taken:   13



# SCI-FRACKVILLE

Inmate Name: JONES, Barry Inmate Number: QK3379

Incident Date: 8/17/2021 Time: 2030

Incident: Photos as requested by PA

Reported by: N/A

Description of Incident: Photos as requested by PA

Photo(s) taken by: K. Redanauer, LPN # of Photos taken: 13



# SCI-FRACKVILLE



Inmate Name: JONES, Barry

Inmate Number: QK3379

Incident Date: 8/17/2021

Time: 2030

Incident: Photos as requested by PA

Reported by: N/A

Description of Incident:    Photos as requested by PA

Photo(s) taken by: K. Redanauer, LPN

# of Photos taken: 13



# EXHIBIT

# "18"

**Department**

| Name | Address | Phone | Fax |
|---|---|---|---|
| LVH-East Norwegian St. Emergency Room | 700 E. Norwegian Street Pottsville PA 17901-2710 | 570-621-4956 | 570-628-2210 |

**H&P by Pavan Garala, MD at 12/19/2022 4:16 PM**

Author: Pavan Garala, MD    Service: Hospital Medicine    Author Type: Physician
Filed: 12/19/2022 4:55 PM    Date of Service 12/19/2022 4:16 PM    Status: Signed
Editor: Pavan Garala, MD (Physician)

# Hospital Medicine Service
# New Encounter Note
# Author: Pavan Garala, MD

Patient Name Barry Jones
Patient MRN: 10708599 CSN: 543301953 HAR: 648729355
D.O.B 4/10/1959 Age 63 y.o Gender male
Admission Date: 12/19/22
Attending Provider Pavan Garala, MD

Assessment/Plan
Assessment
**Principal Problem:**
**Hypertensive emergency**
**Active Problems:**
**Essential hypertension**
**Type 2 diabetes mellitus (HCC)**
**H/O: CVA (cerebrovascular accident)**
**Chronic gout**
**Cirrhosis of liver without ascites (HCC)**
**Dyslipidemia**
**Obesity due to excess calories**
**Seizures (HCC)**
**Hepatitis C virus infection cured after antiviral drug therapy**
**H/O subarachnoid hemorrhage**
**Hypertensive encephalopathy**

Plan

- Level of Care Low Level Monitoring (PCU, IPCU, TOHU, or RHC).
- Status Inpatient.
- The patient is on several antihypertensive medications including clonidine, hydralazine, HCTZ, labetalol, losartan, and spironolactone PTA We will continue all PTA antihypertensive medications however there is unfortunately due to increased dosage of several medications. In addition, he is not on calcium channel blocker. Given persistent hypotension, will start him on diltiazem drip and admit him to the ICU. We will also request cardiology evaluation for antihypertensive management.
- He has history of CVA, SAH, and seizures. He received loading dose of fosphenytoin and phenobarbital in the ER. We will resume home dose of phenytoin and phenobarbital and request neurology evaluation for dose adjustment.
- He does have encephalopathy which is most likely related to hypertensive emergency. We will continue to monitor mental status.
- He has history of diabetes and his blood glucose is fairly controlled. We will resume metformin from home medications and start him on sliding scale coverage with meals according to fingersticks monitoring.
- Continue other PTA medications as ordered
- Continue all other management as outlined
- I spent a total of 41 minutes of critical care time coordinating care for this patient
- Code Status Not Discussed
- Anticipated Hospital Length of Stay: To be determined barring complications
- Anticipated Disposition Return to state correctional facility
- The patient case was discussed with ED physician.



IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KELVIN SUTTON, | : | |
| Plaintiff, | : | CIVIL NO. 1:19-CV-2080 |
| v. | : | (Chief Judge Conner) |
| DR. PAUL NOEL, et al., | : | |
| Defendants | : | |

**DECLARATION OF DR. PAUL A. NOEL, M.D., FAAFP, CCHP**

I, Paul A. Noel, M.D., hereby declare under penalty of perjury, pursuant to 28 U.S.C. §1746, that the following statements are true, correct, and based upon my personal knowledge:

1. I was the Chief of Clinical Services for the Pennsylvania Department of Corrections ("DOC") from January 2014 to March 6, 2020.

2. I have a Bachelor's Degree from the United States Air Force Academy and Medical Degree from the University of Guadalajara, Mexico. I completed a Family Practice Residency and I am licensed to practice medicine in Pennsylvania. I am a Fellow of the American Academy of Family Practice and a Certified Correctional Health Professional.

3. Between late 2013 and late 2014, the FDA approved several direct acting anti-viral drugs ("DAADs") for persons with chronic Hepatitis C virus ("HCV").

4. In 2015, I developed DOC's Interim Hepatitis C Protocol and three subsequent updated Hepatitis C Protocols that provided or provide the base guideline for uniform medical treatment of all DOC inmates with HCV. See *Exhibits A, B, C and D.*

5. The DOC's Interim Hepatitis C Protocol and the subsequent Hepatitis C Protocols are all modeled after the policy of the Federal Bureau of Prisons. They are prioritization protocols that treat the sickest inmates first, based on their medical need.

6. The DOC treats all inmates in its custody who have chronic HCV, on an individual basis, and in accordance with the DOC's Hepatitis C Protocol.

7. None of the protocols preclude any inmate with HCV from receiving treatment.

8. HCV is a slowly progressing disease that takes 20-40 years to progress to cirrhosis. Not all individuals with HCV will progress to cirrhosis.

9. It is not medically necessary to treat all inmates with HCV with DAADs right now or in the short term.

10. Chronic liver disease from HCV is measured by the degree of fibrosis.

11. The most common scoring system to assess fibrosis is the METAVIR score that includes five levels. These levels are as follows: F0 (no fibrosis); F1 (mild fibrosis); F2 (moderate fibrosis); F3 (advanced fibrosis); and F4 (cirrhosis).

were to be treated with DAADs. A Hepatitis C specialist then determined which treatment regimen would be provided.

18.

19.

The foregoing statements are rendered within a reasonable degree of medical certainty.

Dated: 9/28/2020

Paul A. Noel, M.D.
Chief of Clinical Services
Pennsylvania Department of Corrections

# EXHIBIT

# "19"

DC-804
Part 1
Rev 9/2010

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
**P.O. BOX 598**
**CAMP HILL, PA 17001-0598**

| FOR OFFICIAL USE |
|---|
| GRIEVANCE NUMBER |

**OFFICIAL INMATE GRIEVANCE**

| TO: FACILITY GRIEVANCE COORDINATOR | FACILITY: | DATE: |
|---|---|---|
| FROM: (INMATE NAME & NUMBER) | SIGNATURE OF INMATE: | |
| WORK ASSIGNMENT: | HOUSING ASSIGNMENT: | |

INSTRUCTIONS:
1. Refer to the DC-ADM 804 for procedures on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. List in Block B any action you may have taken to resolve this matter. Be sure to include the identity of staff members you have contacted.

A. Provide a brief, clear statement of your grievance. Additional paper may be used, maximum two pages (one DC-804 form and one one-sided 8½" x 11" page). State all relief that you are seeking.

8/24 2017

B. List actions taken and staff you have contacted, before submitting this grievance.

Your grievance has been received and will be processed in accordance with DC-ADM 804.

Signature of Facility Grievance Coordinator

Date

WHITE Facility Grievance Coordinator Copy CANARY File Copy PINK Action Return Copy
GOLDEN ROD Inmate Copy



# INITIAL REVIEW RESPONSE

(SCI Frackville)

(1111 Altamont Blvd Frackville, PA 17931)

This serves to acknowledge receipt of your grievance to the assigned Grievance Officer. The response is as fol

| **Inmate Name:** | Jones, Barry | **Inmate Number:** | HF5900 |
|---|---|---|---|
| **Facility:** | SCI-Frackville | **Unit Location:** | AB-13 |
| **Grievance #:** | 692872 | **Grievance Date:** | **08-21-2017** |

***Publication (if applicable):***

| **Decision:** | Uphold Inmate<br>X Grievance Denied<br>Uphold in part/Denied in part |
|---|---|

*It is the decision of this grievance officer to uphold, deny **or uphold in part/deny in part** the inmate's initial grievance. This response will include a brief rationale, summarize the conclusion, any action taken to resolve the issue(s) raised in the grievance and, relief sought.*

**Response:** *Frivolous*

The inmate's concerns within this grievance are the following:

1. The DOC and vendor employees are denying the grievant his Eighth Amendment rights by refusing him Hepatitis C treatment which is causing ongoing health problems.
2. Relief sought is Hepatitis C treatment and an undeclared amount of monetary compensation.

The grievance # 692872, medical record and Electronic Health Record (EHR) of the grievant have been reviewed. The findings are as follows:

1. The DOC and vendor employees listed in this grievance are not denying the grievant's Eighth Amendment rights but are following the Federal Bureau of Prisons protocol. Every six months laboratory studies are completed and the grievant is seen in hepatitis C clinic by the medical director. An examination of the grievant and an assessment of the available health record are performed related to his Hepatitis C.
   Based on the grievant's medical data and information gathered at these visits, a determination is made if he meets the accepted standard of care guidelines to receive Hepatitis C treatment. The grievant's health status did not meet these standards.
2. The grievant's health status determined he is not a candidate for Hepatitis C treatment at this time. Monetary rewards are not compensated via the grievance process.

This grievance is denied.

| **Signature:** | [signature] |
|---|---|
| **Title:** | RNS |
| **Date:** | 08-31-2017 |

cc: Facility Grievance Coordinator
DC-15
File

B-3

HF-5900 Barry Jones Frackville 10/31/17 692872

10/12/2017

This grievance is timely filed within 15 working days of the date stated above from the appeal of the facility's medical department implementation of the DOC'snone-treatment of my Hepatitis C, allowing the progression of the disease to accelerate, so that it presents a greater threat of Cirrhosis, hepatocellulurm and death from such disease, is deliberate indifference: The Center for Disease Control ("CDC") states that the standard of care in hepatitis C treatment in the United States is treatment with direct-acting antiviral agent such as Harvoni and Viekira Pak. On October 2015 guidelines from the American Association for the Study of Liver Diseases ("AASLD") and I infectious Diseases Society of America ("IDSA") entitled "When and in Whom to Initiate HCV Therapy" "recommend treatment [using DAA therapies] for all patients with chronic HCV ["Hepatitis C virus'] infection, except those with short life expectations that cannot be remediated by treating HCV, by transplantation, or by other direct therapy,, Grievant is requesting Treatment with with direct-acting antiviral agents.....

CC: File

B4

**Facility Manager's Appeal Response**
**SCI-FRACKVILLE**
1111 Altamont Boulevard
Frackville, PA 17931

This serves to acknowledge receipt of your grievance appeal to the Facility Manager for the grievance noted below. In accordance with the provisions of DC-ADM 804, "Inmate Grievance System Policy", the following response is being provided based on a review of the entire record of this grievance. The review included your initial grievance, the Grievance Officer's response, your appeal to me and any other documents submitted.

| Inmate Name: | JONES, Barry | Inmate Number: | HF5900 |
|---|---|---|---|
| Facility: | SCI-Frackville | Unit Location: | AB-13 |
| Grievance #: | 692872 | | |

**Decision:**
☒ **Uphold Response (UR)** ☐ **Uphold In Part/Deny In Part**
☐ **Uphold Inmate (UI)**
☐ **Dismiss/Dismiss Untimely**

*It is the decision of this Facility Manager to uphold the initial response, uphold the inmate or dismiss. This response will include a brief rationale, summarizing the conclusion, any action taken to resolve the issue(s) raised in the grievance and your appeal and relief sought.*

**Response:** *Frivolous*

Your appeal has been received and reviewed as well as all pertinent information. You allege that you have been diagnosed with Hepatitis C and you are not being treated. You cite court decisions and allege that because you are not being treated, the Department of Corrections is being deliberately indifferent.

I have reviewed your appeal and found no evidence to support it. RNS Kuras researched your issues and concerns and explained to you thte DOC's protocol in treating inmates diagnosed with Hepatitis C. The department has a Hepatitis C clinic and lab studies are reviewed every six months.

The Department takes your health very seriously and strives to ensure your overall safety. Staff are not being indifferent in your treatment.

You appeal is therefore denied.

given on 10/12/17

| | |
|---|---|
| **Signature:** | [signature] |
| ~~**Title:**~~ | ~~DSFM~~ |
| **Date:** | 10/4/17 |

cc: DC-15
File

*DC-ADM 804, Inmate Grievance System Procedures Manual*
*Section 2 – Appeals* *Attachment 2-B*
Issued: 2/27/2015
Effective: 5/1/2015

2017 

**Final Appeal Decision**
**Secretary's Office of Inmate Grievances & Appeals**
Pennsylvania Department of Corrections
1920 Technology Parkway
Mechanicsburg, PA 17050

This serves to acknowledge receipt of your appeal to the Secretary's Office of Inmate Grievances and Appeals for the grievance noted below. In accordance with the provisions of DC-ADM 804, "Inmate Grievance System Policy", the following response is being provided based on a review of the entire record of this grievance. The review included your initial grievance, the Grievance Officer's response, your appeal to the Facility Manager, the Facility Manager's response, the issues you raised to final review, and (when applicable) any revised institutional responses required as a result of a subsequent remand action by this office. As necessary, input from appropriate Central Office Bureaus (e.g., Health Care Services, Chief Counsel, Office of Special Investigations and Intelligence, etc) may have been solicited in making a determination in response to your issue as well.

| **Inmate Name:** | Barry Jones | **Inmate Number:** | HF-5900 |
|---|---|---|---|
| **SCI Filed at:** | Frackville | **Current SCI:** | Frackville |
| **Grievance #:** | 692872 | | |
| ***Publication (if applicable):*** | | | |

| **Decision:** | ☑ **Uphold Response (UR) Health Care**<br>❑ **Uphold Inmate (UI)**<br>❑ **Uphold in part/Deny in part** |
|---|---|

*It is the decision of the Secretary's Office of Inmate Grievances and Appeals to uphold the initial response, uphold the inmate, or Uphold in part/Deny in part. This response will include a brief rationale, summarizing the conclusion, any action taken to resolve the issue(s) raised in the grievance and your appeal and relief sought.*

| **Response:** | *Frivolous* | | |
|---|---|---|---|

This office is in receipt of your appeal, has reviewed all applicable documents and consulted with relevant professional staff. In your grievance you ultimately take issue with being denied Hepatitis C treatment. You claim that your condition is causing irreversible damage to your liver. You also claim to have cirrhosis, memory issues, chronic fatigue, and worsening skin rash. You claim that this is a violation of your rights for which you seek monetary relief and also threaten legal action.

A review of the records by the Bureau of Health Care Services (BHCS) reflects that the medical care provided was reasonable and appropriate. The DOC has updated its protocol for treating Hepatitis C. You are currently being evaluated for treatment in accordance with the protocol and will continue to be monitored in chronic care clinic as determined by your treatment plan. There is an orderly progression that is required before treatment with certain tests, etc. So, as you move ahead, you will be included in these tests as part of your work up prior to treatment. You are encouraged to participate in your treatment plan and to discuss your concerns or changes of condition with a practitioner. No evidence of wrong doing has been identified. Based on the review, your appeal and any requested relief is denied.

| **Signature:** | Dorina Varner Keri Moore for |
|---|---|
| **Title:** | Chief Grievance Officer |
| **Date:** | 1/12/18 |

DLV/MEB

cc: DC-15/Superintendent Brittain
Grievance Office

# EXHIBIT

# "20"

18

20

# CONSULTATION RECORD

A. Referring Facility Details --- 6/1/2017 11:18 AM (SCI FRACKVILLE) Auth # ON-SITE-CONSULT

| | | | |
|---|---|---|---|
| Consult Type: | Follow-up | Referred To: | Global D. US service |
| Location: | On Site | Urgency | Routine |
| Clinic Type: | Ultrasound (US) | Referring Phys: | PANDYA, HARESH B |
| Visit Type: | Radiology | Entered By: | PANDYA, HARESH |

| | | | |
|---|---|---|---|
| Destination: | ONSITE OR ONSITE/TELEMED CONSULT | | |
| Contact Person: | | | |
| Appt. Date: | 7/6/2017 | Appt. Time: | 08:00:00 |
| Appt. Findings: | | | |
| Findings Entered By: | | Findings Entered On: | N/A |

**Health Information**

| | |
|---|---|
| Allergies: | SUDAFED |
| Significant Past Medical & Surgical History: | [B18.2 - HCV], [D23.9 - SKIN, UNSPEC.], [E63.9 - NUTRITIONAL DEFICIENCIES, UNSPEC.], [E78.2 - HYPERLIPIDEMIA, MIXED], [I10 - HYPERTENSION, BENIGN], [K59.00 - CONSTIPATION, UNSPEC.], [M12.9 - ARTHROPATHY, UNSPEC.], [R56.00 - SEIZURES, SIMPLE, FEBRILE, UNSPEC.], [Z13.6 - SCREENING, CARDIAC DISEASE] |
| Present Illness Injury and Physical Findings: | [PRIMARY] HCV<br>[SECONDARY] ARTHROPATHY, UNSPEC.<br>[SECONDARY] HYPERTENSION, BENIGN |
| Treatment to Date: | LAST US DEC 2016. |
| Current Medications &Significant Medication History: | PHENOBARBITAL 64.6MG TAB (LUMINAL) (S:4/26/2017), PHENOBARBITAL 32.4MG TAB (LUMINAL) (S:4/26/2017), ALLOPURINOL 100MG TABLET (ZYLOPRIM) (S:1/30/2017), AMLODIPINE 10MG TABLET (NORVASC) (S:1/30/2017), ASPIRIN 81MG CHEW TAB (BAYER CHILDRENS ASPIRIN) (S:1/30/2017), CHLORTHALIDONE 25MG TAB (HYGROTON) (S:1/30/2017), LOSARTAN POT 50MG TABLET (COZAAR) (S:1/30/2017), METOPROLOL 50MG TABLET (LOPRESSOR) (S:1/30/2017), PHENYTOIN SOD 100MG CAP (DILANTIN) (S:1/30/2017), POTASSIUM CL 20MEQ TAB (K-DUR) (S:1/30/2017), PRAVASTATIN 20MG TABLET (PRAVACHOL) (S:1/30/2017), SENNA PLUS TABLET (SENOKOT S) (S:1/30/2017) |
| Relevant Health Information To Accompany Patient: | N/A |
| Special Instructions/Travel Needs: | N/A |
| Post Consult Docs: | N/A |

**Referring Physician Comments:**

58 year old AA male Known Hepatitis C. Last US showed cirrhosis of liver with portal HTN clinically no change in health.

| Requested By | Date |
|---|---|
| *PANDYA, HARESH B* | *6/1/2017 11:18:58 AM* |

Commonwealth of Pennsylvania
Department of Corrections
Consultation Record
DC-441

Revised 10/2015

Inmate Name: JONES, BARRY
Inmate Number: HF5900
DOB: [redacted] HT: WT:
Facility: SCI FRACKVILLE

Exhibit A - p. 486

# EXHIBIT

# "21"

CHRONIC CLINIC PROGRESS NOTE/FLOW SHEET

HTN DYSLIPIDEMIA DM ASTHMA CARDIAC HEP C SEIZURE THYROID CoMorbidities HIV HEP A/B

VS: T 97 P 64 R 16 BP 156/78 POX 96 PEFR 419 WT 266 HT 74" BMI 34.

**HTN**
Compliant with: Medications Y / N; Diet Y / N; Exercise Y / N; Smoking Y / N
EKG Date ____
HX CM: Y / N
Renal Disease: Y / N
Educated On: Smoking Cessation Y / N; Salt Restriction Y / N
Goal: BP < 140/90; DM/Chronic Renal BP < 130/80
At Goal Y / N

**DYSLIPIDEMIA**
Compliant with: Medications Y / N; Diet Y / N; Exercise Y / N; Late Eating Y / N
Lipid Profile Date 4/12/17
Chol 164 Trig 151
LDL 85 HDL 49
Meds Prescribed Y / N
Risk Factors: DM CAD HTN AGE Smoking Fam HX
Goal: LDL < 100, HDL > 40, Chol < 200 Trig < 150
*Others depend on risk factors
At Goal Y / N

**DM**
HgbA1C Date: ____
HgbA1C 6.3
Foot Exam Done Y / N
Foot Clinic q ____ months
Dilated Eye Exam ____
Hypoglycemia History Y / N
Compliant with: Medications Y / N; Diet /Exercise Y / N
EKG ____
Microalbumin Y / N
ACE/ARB Y / N
Chol ____ LDL ____
Goal: BP < 130/80, HGA1c <7, LDL < 70, Chol < 200
At Goal Y / N

**ASTHMA/COPD**
Activity Level: A B C D
Freq Recent Symptoms: A B C D
Frequency Night Symptoms: A B C D
Frequency of B-Agonist Use: A B C
Stage of Asthma: A B C D
Smoking: Y / N
Goal: Peak Flow at or above 80% of average male peak flow for age and height of ____
At Goal Y / N

**CARDIAC**
CAD CHF AFIB
Compliant with: Medications Y / N; Diet/Exercise Y / N; Smoking Y / N
Last CP ____
EKG Date ____
NTG Y / N
SOB Y / N
Peripheral Pulses + / -
PND Y / N
Ecema Y / N
Goal: BP < 140/90, LDL < 100, Prevent complications of cardiovascular disease.
At Goal Y / N

**SEIZURE**
Seizure Diagnosis: Y / N
Bottom Bunk/Tier: Y / N
Seizure Type: [handwritten, illegible]
Meds:
Why Med Level Out of Range:
Action Plan: No change / Immed. [illegible]
Action Plan Implemented: Y / N
Med Side Effects Reviewed with Inmate Y / N
Medication Interventions: NA FU ED DO LM AM
Seizures w/ last year: Y / N
Per Inmate / Documented
How Many: 0 1 2 >2
Sent to ER: NA / Y / N
Goal: Maintain appropriate medication levels, minimize side effects, decrease seizure freq.
Goal Y / N

**THYROID**
Meds:
Lab Date:
TSH ____
T3 ____ FT4 ____
Goal: Maintain appropriate medication levels and restoration to the euthyroid state.
At Goal Y / N

**VACCINE**
Influenza: Refused
Pneumo: 10/2003
Hep A Y / N 2004
Hep B Y / N 2004
Tetanus Y / N 1/22/16
Education/VIS Y / N

**HEP C**
Previous TX: Y / N
DX: F0-F2 F3 F4 Unknown; AB+ No Detectable VL
DX per: Liver Bx Elastography
Cirrhosis/Liver Failure SX: None / Detailed in PE Section
Hx of Ascites: Y / N
Hx of Encephalopathy: Y / N
Hx of Varices: Y / N
Est Date of Contracting: 1984
Recent Infirmary/Hosp/ER: Y / N
Jaundice S/S Sclera: Y / N
Liver US Date: Dec 2016
Abdominal Exam: Ascites Y / N; Hepatomegaly Y / N; Splenomegaly Y / N
Skin Changes suggestive of Jaundice: Y / N
Asterixis Present: Y / N
APRI Score: 0.224
MELD Score (Cirrhosis): 7
CTP Score (Cirrhosis): 5
Reviewed EGD/US/SSWE: Y / N
Labs: 4/12/17 YZ 627167
Goal: Prevent the complications of Hep C through education, assessment and TX.
At Goal Y / N

**MED LEVELS**
Date ____ Med Dilantin
Level 19
In Therapeutic Range Y / N
Date ____ Med Phenobarb
Level 9.9
In Therapeutic Range Y / N
Date ____ Med ____
Level ____
In Therapeutic Range Y / N

**TESTING**
PSA ____ Date ____
DRE ____ Date ____
Hemoccult + / - Date ____
Accucheck ____ Date ____
Education:

**EDUCATION**
Medications Y / N
Med Compliance Y / N
Med Administration Y / N
Self-Med Program Y / N
Diet/Exercise Y / N
Weight Reduction Y / N
Salt Restriction Y / N
Sugar Restriction Y / N
Smoking Cessation Y / N
HCV TX and Protocol Y / N
HIV TX and Protocol Y / N
Goals of Chronic Clinic and Medical Care Y / N

Physical Exam:
HEENT: WNL
NECK: Thyroid.
LUNGS: Clear
HEART: RSR HS good
ABD: Supple
NEURO: WNL.
EXT: No edema
OTHER:

Notes: (S) Neuralgia Toe: only can still do Toe touch.

(O) (See Physical Exam Section)

(A) HBP: fair Control
Cirrhosis early ̄c Portal HTN.

(P) Multivit 1 BID: from state.
Cont all meds for now.
Liver US. in June/July 2017 - done
MD [illegible] p US. to discuss Δ in HTN meds.

Return to CC in ____ months

Signature [signature] Date/Time 5-1-17 1045

Inmate Name Jones Barry DR. HARESH PANDYA

Inmate Number HF5900

Date Of Birth [redacted]

Facility SCI Frackville

Progress Notes
Commonwealth of Pennsylvania
Department of Corrections
372

Exhibit A - p. 833

pg-4

# EXHIBIT

# "22"

173

APP. 22

# PROGRESS NOTES

| Date/ Time | Discipline Abbreviation | Remarks Subjective, Objective, Assessment, Plan |
|---|---|---|
| 6/30/16 | RNIT | Inmate reviewed his medical records per his request. |
| 1000 | | Time ran out so I instructed him to submit another |
| | | request slip and I will schedule another record |
| | | review ——— Jennifer Mateyak, RHIT |
| 7/7/16 | RHIT | Inmate continued reviewing his records and does |
| 1000 | | not need to be scheduled again at this time. |
| | | ——— Jennifer Mateyak RH |
| 8/1/16 | Nsg. | EKG completed, results forwarded to doctor |
| 1500 | | for review. K. Cooper, LPN ~~Kimberly Cooper, LPN~~ |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

Progress Notes
Commonwealth of Pennsylvania
Department of Corrections
DC-472

Revised 3/2007

Name: Jones, Barry

Number: HF5900

DOB:

Facility: Frackville

Ex.A 000003

# EXHIBIT

# "23"

APP. 23

Temple Health Philadelphia PA...... Jones, Barry

Encounter Date: 04/25/2018

28

There were no vitals taken for this visit.

**Objective**

Physical Exam
No PE

**Assessment:**

**Assessment**

| | | ICD-10-CM |
|---|---|---|
| 1. | Hep C w/o coma, chronic | B18.2 |
| 2. | Seizure disorder | G40.909 |

**Plan:**

| | | |
|---|---|---|
| 1. | Hep C w/o coma, chronic | **Compensated cirrhosis with past interferon failure**<br>Will plan to start Epclusa (sofosbuvir (400 mg)/velpatasvir (100 mg)<br>1 pill daily x 12 weeks<br>**To start treatment when he is able to change seizure medications**<br>**Needs hep A/B serology labs**<br>Reviewed with patient potential SE of increased tiredness, some GI effects, HA, or potential rash<br>Reviewed expectation of DOT pill line for this medication<br>Reviewed visit schedule with Temple- day medication is ordered- week 12 (EOT) and SVR 12<br>Discussed labs would be done at week 4, week 12 and SVR 12<br>Patient will be provided with literature on Epclusa from ICN once it arrives<br>US liver q 6mo for HCC surveillance |
| 2. | Seizure disorder | **Phenobarbital and dilantin contraindicated with all Hep C DAA's and cannot be co-admistered**<br>**Please have site medical director refer to neurology so medication can be switched**<br>**Patient understood why treatment cannot begin until medication is changed to one without drug-drug interactions** |

**Please refer back to Temple once he is able to begin treatment.**

Thank you for your referral. If there are questions or concerns regarding this patient's treatment- please contact us at 215-707-1587 or after hours 215-341-6781

Electronically signed by Kelly Lattanzi, CRNP at 4/25/2018 1:59 PM

# EXHIBIT

# "24"

APP-24

A49

DC-804
Part 1

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
**1920 TECHNOLOGY PARKWAY**
**MECHANICSBURG, PA 17050**

| FOR OFFICIAL USE |
|---|
| 743048 |
| GRIEVANCE NUMBER |

## OFFICIAL INMATE GRIEVANCE

| TO: FACILITY GRIEVANCE COORDINATOR<br>MRS. NEWBERRY | FACILITY:<br>FRACKVILLE | DATE:<br>6/21/18 |
|---|---|---|
| FROM: (INMATE NAME & NUMBER)<br>BARRY JONES HF-5900 | SIGNATURE OF INMATE: | |
| WORK ASSIGNMENT:<br>JANITOR | HOUSING ASSIGNMENT:<br>AB-13 AB-B | |

INSTRUCTIONS:

1. Refer to the DC-ADM 804 for procedures on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. List in Block B any action you may have taken to resolve this matter. Be sure to include the identity of staff members you have contacted.

A. Provide a brief, clear statement of your grievance. Additional paper may be used, maximum two pages (one DC-804 form and one one-sided 8½" x 11" page). State all relief that you are seeking.

A S COUPLE A WEEKS AGO, I HAD A TELE-MED WITH NUROLOGIST DR. KELLY, WHO DIRECTED THE NURSE PRACTITIONER MR. IANNUZZI, TO START WEEDING ME OF MY 300 A DAY DILANTIN, THAT THAN INCREASING THE KEPLER BY 250 MG, THE DECREASING OF THE DILANTIN WAS TO BE IMPLEMENTED WITHIN A WEEK, IT'S TWO WEEKS LATER, AND I FOUND OUT YESTERDAY, MR. IANNUZZI 'NEVER' ORDERED A REDUCTION IN THE DILANTIN, MY QUESTION IS WHY/, I'M TALKING ABOUT TOXIC LEVELS OF THESE DOSES, 750-MG KEPLER, 90MG-PHONEBARBITAL, 300MG-DILANTIN , mY NEXT QUESTIONWAS THIS DONE IN ERROR, OR INTENTIONALLY, IT'S NOT LIKE DR. KELLY WASN'T CLEAR IN RELAYING THE MEDICATIONAL REGIMEN HE WANTED TO BE FOLLOWED, FINALLY WHY IS THERE ALWAYS A PROBLEM WITH MR. IANNUZZI ADMINISTERING BASIC STANDARD OF CRE, HERE, HE WAS ONLY REQUIRED TO FOLLOW THE NEUROLOGIST MEDICATION ORDER, MR. IANNUZZI TOOK IT UPON HIS-SELF TO ORDER THE DILANTIN UNTIL SEPTEMBER AND IT WAS ONLY SUPPOSED TO BE FOR ANOTHER WEEK, DEMONSTRATING A PATTERN OF DELIBERATE INDIFFERENCE TO A SERIOUS MEDICAL NEED, BY INTENTIONALLY ATTEMPTING TO INFLICT SERIOUS PAIN OR INJURY, I WILL BE AMENDING MY COMPLAINT TO SEEK REDRESS IN FEDERAL CIVIL COURT. THIS UN-CHECKED CONDUCT SHOULD NOT BE CONDONED BY THIS FACILITY OR THE (DOC).

B. List actions taken and staff you have contacted, before submitting this grievance.

MS. KAREN HOLLY (CHCA)

Your grievance has been received and will be processed in accordance with DC-ADM 804.

Signature of Facility Grievance Coordinator — Date: 6/21/18

WHITE Facility Grievance Coordinator Copy CANARY File Copy PINK Action Return Copy
GOLDEN ROD Inmate Copy



# INITIAL REVIEW RESPONSE

SCI Frackville
1111 Altamont Blvd
Frackville, PA 17931

serves to acknowledge receipt of your grievance to the assigned Grievance Officer. The response is as follows

| | | | |
|---|---|---|---|
| nate Name: | Jones, Barry | Inmate Number: | HF5900 |
| cility: | SCI-FRACKVILLE | Unit Location: | A-B-13 |
| ievance #: | 743048 | | |
| iblication (if applicable): | | | |

**ecision:** ☐ **Uphold Inmate**
☒ **Grievance Denied**
☐ **Uphold in Part/Denied in Part**

*t is the decision of this grievance officer to uphold, deny* ***or uphold in part/deny in part*** *the inmate's initial grievance. This response will include a brief rationale, summarize the conclusion, any action taken to resolve the issue(s) raised in the grievance and, relief sought.*

**Response:** *Frivolous*

The inmate's concerns within this grievance are the following:

1. The grievant had a telemedicine visit with a specialist who instructed the provider to start weening him of his current medicine and increase the new medicine. The weening of the old medicine was to be implemented in one week and the grievant found out the provider did not decrease the old medicine. He is asking if this was done intentionally or in error as the grievant feels there is a demonstration of a pattern of deliberate indifference and intentionally attempting to inflict serious pain or injury.
2. The grievant is seeking redress in federal civil court.

The grievance #743048 and Electronic Health Record (EHR) have been reviewed.
The findings are as follows:

1. On 06-13-18, the telemedicine visit was accomplished and the specialist's documentation indicated to increase the new medication, which was done on 06-13-18 but was not available from the pharmacy until 06-15-18. His instruction also stated to taper the old medicine in one week by 100 mg per day per week until discontinued. The new medication started on 06-15-18 so seven days would be 06-21-18.The dosing of the old medicine was ordered to be decreased the next day, 06-22-18, by 100 mg and to be decreased by 100 mg again on 06-29-18, discontinuing on 07-06-18. The provider did follow the specialist's instruction, therefore; there is no deliberate indifference or intentional attempt to cause pain or injury. It should be noted the grievant is not medication compliant with his new medication having refused the dosing the last two mornings. He is encouraged to take his medication as prescribed.
2. Relief denied.

This grievance is denied.

| | | | |
|---|---|---|---|
| **Signature:** | [signature] | **Print Name:** | Mary Alice Kuras |
| **Title:** | RNS | | |
| **Date:** | 06-27-2018 | | |

cc: Facility Grievance Coordinator
DC-15
File

APP- 24

A-57

**APPEAL #743048**

JF-5900 Barry Jones AB-13

The initial grievance response failed to state the (CRNP) wrote the order for grievant's 300 mg's of Dilant to expire in September, it was grievant who refuse to take more than two hundred mg's a day, after the increase in the Kepler...

More importantly why is the (CRNP) order any medication for Grievant, the medical director should be implementing any medication regimen, not the (CRNP) Mr. Iannuzzi.

There wouldn't be any problems, in Dr. Pandya just did is job, this [i]s a new medication regimen, that false justification are being made, why the Neurologist" ordered., are not being properly implemented. Mr. Iannuzzi ordering a medication dose longer than ordered raises serious question, of providing proper standard of care....

/s/

App-24
A52

**Facility Manager's Appeal Response**
**SCI-FRACKVILLE**
1111 Altamont Boulevard
Frackville, PA 17931

This serves to acknowledge receipt of your grievance appeal to the Facility Manager for the grievance noted below. In accordance with the provisions of DC-ADM 804, "Inmate Grievance System Policy", the following response is being provided based on a review of the entire record of this grievance. The review included your initial grievance, the Grievance Officer's response, your appeal to me and any other documents submitted.

| Inmate Name: | JONES, Barry | Inmate Number: | HF5900 |
|---|---|---|---|
| Facility: | SCI-Frackville | Unit Location: | AB-13 |
| Grievance #: | 743048 | | |

**Decision:**

☒ **Uphold Response (UR)** ☐ **Uphold In Part/Deny In Part**
☐ **Uphold Inmate (UI)**
☐ **Dismiss/Dismiss Untimely**

*It is the decision of this Facility Manager to uphold the initial response, uphold the inmate or dismiss. This response will include a brief rationale, summarizing the conclusion, any action taken to resolve the issue(s) raised in the grievance and your appeal and relief sought.*

**Response:** *Frivolous* ☐

Your appeal has been received and reviewed as well as all pertinent information.

Review of your grievance determined that CHCA Holly addressed all your issues/concerns. No evidence of neglect or deliberate indifference has been found. The provider did follow the specialist's instruction, therefore; there is no deliberate indifference or intentional attempt to cause pain or injury.

Your medical care is important and thus you are urged to continue working with the physicians as they have the medical license and can make the appropriate clinical decisions for your care. Only issues raised in your initial grievance will be addressed in your appeal.

I concur with the findings of initial response and your request for any relief sought is denied.

| **Signature:** | K. Brittain KXB |
|---|---|
| **Title:** | Facility Manager |
| **Date:** | 6.14.18 |

received 7/13/18

cc: DC-15
File

A-53

App. 24

INMATE APPEAL TO FINAL REVIEW GRIEVANCE #743048

-5900 Barry Jones Frackville 6/28/2018

I received my appeal from Superintendent on 6/13/201, and have the following appeal issues.

The facility manger's decision failed to dress the simple fact, the (Nurse Practitioner) failed to simple implement the Neurologist medication regime, to tapering of the Dilantin by 100 millgrams per day per week until discontinued;

Here the (CRNP's) failed to make any reduction in grievant's medication , just the contrary, Grievant medication was extended well beyond the prescribed medicational regime.

Here the facility manger's conclusion that the medical staff has medical license and can make appropriate clinical decision for my care, completely ignor's the seriousness of the (CRNP) intentionally increasing medication doses that could have serious deprivation to the health and safety of grievant;

The (CRNP) action in increasing not decreasing grievant's medication regimem, can not be deem appropriate medical care...

/s/ 

**FINAL APPEAL DECISION DISMISSAL**
**Secretary's Office of Inmate Grievances & Appeals**
Pennsylvania Department of Corrections
1920 Technology Parkway
Mechanicsburg, PA 17050

...s to acknowledge receipt of your appeal to final review for the grievance identified below. In accordance with ...ions of DC-ADM 804, "Inmate Grievance System," this Office has reviewed all documents provided as part of ...nce record. Upon consideration of the entire record, it is the decision of this office to dismiss your appeal to final ...e to a failure to comply with the provisions of the DC-ADM 804, as specified below.

| | | | |
|---|---|---|---|
| Name: | Barry Jones | Inmate Number: | HF5900 |
| ...d at: | Frackville | Current SCI: | Frackville |
| ...nce #: | 743048 | | |
| ...on: | **Dismiss** | | |

| | |
|---|---|
| | 1) Your grievance was properly rejected at the facility level for the reason(s) outlined below. |
| | 2) Your grievance is being dismissed at the final appeal level for the reason(s) outlined below. |
| ...ale: | |
| | 1. Grievances related to the following issues shall be handled according to procedures specified in the policies listed and shall not be reviewed by the Facility Grievance Coordinator. |
| | a) DC ADM 008 Prison Rape Elimination Act (PREA) – allegations of a sexual nature against a staff member and/or inmate-on-inmate sexual contact |
| | b) DC ADM 801 Inmate Discipline/Misconduct Procedures |
| | c) DC ADM 802 Administrative Custody Procedures |
| X | 2. The grievance or ***appeal*** was not submitted within fifteen (15) working days after the events upon which claims are based. |
| | 3. Grievance involves matter(s) that occurred at another facility and should be directed by the inmate to the appropriate facility. |
| | 4. The grievance was not signed and/or dated with correct commitment name, number, contained UCC references, or was not presented in proper format. |
| | 5. Grievance or appeal must be legible, understandable, and presented in a courteous manner. |
| | 6. The grievance or appeal exceeded the two-page limit. Description needs to be brief. |
| | 7. Grievance does not indicate that you were personally affected by a Department or facility action or policy. |
| | 8. Grievances based upon different events must be presented separately. |
| | 9. The issue(s) presented on the attached grievance has been reviewed or is currently being reviewed and addressed. Prior grievance # |
| | 10. Group grievances or grievances filed on behalf of another inmate are prohibited. |
| | 11. Grievance disputes previous grievances, appeal decisions or staff members who rendered those decisions. |
| | 12. You are currently on grievance restriction. You are limited to one grievance every 15 working days. Last grievance # was submitted on |
| | 13. You have not provided this Office with required and/or legible documentation for proper review. |
| | 14. An appeal to final review is not permitted when you fail to comply with submission procedures. |

...esponse:

**...ecords reflect that the superintendent responded to your appeal on 6/14/18; however, your appeal to this ...ffice is not postmarked until 7/31/18. While you indicate that you did not receive the superintendent's ...esponse until 7/13/18, you provide no information/evidence to support such. Therefore, your appeal to this ...ffice is dismissed.**

| | |
|---|---|
| Signature: | Dorina Varner Keri Moore for |
| Title: | Chief Grievance Officer |
| Date: | 8/7/1... |

...LV/klm

...c: DC-15/Superintendent Brittain
Grievance Office

*DC-ADM 804, Inmate Grievance System Procedures Manual*
*Section 2 – Appeals*
Issued: 1/26/2016
Effective: 2/16/2016

*Attachment 2-G*

# EXHIBIT

# “25”

7/23/18

Ms Kling

DC-804 part 1

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS
1920 TECHNOLOGY PARKWAY
MECHANICSBURG, PA 17050

FOR OFFICIAL USE
744200
GRIEVANCE NUMBER

## OFFICIAL INMATE GRIEVANCE

| TO: FACILITY GRIEVANCE COORDINATOR<br>Mrs. Newberry | FACILITY:<br>Frackville | DATE:<br>6/28/18 |
|---|---|---|
| FROM: (INMATE NAME & NUMBER)<br>Parry Jones HF-5900 | SIGNATURE OF INMATE: | |
| WORK ASSIGNMENT:<br>Janitor | HOUSING ASSIGNMENT:<br>AB-13 | |

INSTRUCTIONS:
1. Refer to the DC-ADM 804 for procedures on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. List in Block B any action you may have taken to resolve this matter. Be sure to include the identity of staff members you have contacted.

A. Provide a brief, clear statement of your grievance. Additional paper may be used, maximum two pages (one DC-804 form and one one-sided 8½" x 11" page). State all relief that you are seeking.

On 6/2?/2018, I was called to medical wherein Dr. Pandya, attempted to explain/and or justify Mr. Iannuzzi (CRNP) ordering of 300 mg's dilanti[illegible], and the doubling of the Kepler from 750 to now 1500 mg's a day. Dr. Pandya didn't attend the 6/13/2018 Telemed, with the Neurologist, but he was here, Dr. Pandya asked what I wanted to do, when I try to tell him I am not taking 1500 mg's of Kepler with 200 mg's of Dilant & 90 Mg's of Phenobarbital, it's to strong, but that seem to go in one ear and out the other., I asked when can I see Dr. Kelly about doubling the kepler after the 250 mg increase. Dr. Pandya stated it's would take a month. Dr. Kelly specifically stated telemed- would be by-weekly, to discuss the affects of the new medication regiment. The doubling of the kepler was never discussed by Dr. Kelly, yet Dr. Pandya states this was documented in the tele-med he failed to attend. Why can't Grievant see the doctor who is responsible for implementing the changes[illegible] [illegible]ants medication regime. When Dr. Pandya just ignor's Grievant's concern's of doubling of the kepler [illegible] to strong, state a cause of action for intentionally inflicted pain and suffering, and just so happen to be a defendant in grievant's civil rights 8th Amendment deliberate indifference claim, how do you justify ignoring grievant'concerns the new medication is to strong when the dose is doubled.. It should be noted, I specifically requested that I be able to talk to Dr. Kelly about any medical concerns, which Dr. Pandya is well aware of..... Yet is preventing me from being able to do so... What is Frackville's medical department justification for that...

B. List actions taken and staff you have contacted, before submitting this grievance.

Ms. Karen Kolly [CHCA]

Your grievance has been received and will be processed in accordance with DC-ADM 804.

Signature of Facility Grievance Coordinator

Date 6/29/18

WHITE Facility Grievance Coordinator Copy CANARY File Copy PINK Action Return Copy
GOLDEN ROD Inmate Copy

*DC-ADM 804, Inmate Grievance System Procedures Manual*
*Section 1 – Grievances & Initial Review*
Issued: 3/31/2014
Effective: 5/1/2014

*Attachment 1-A*



# INITIAL REVIEW RESPONSE

SCI Frackville
1111 Altamont Blvd
Frackville, PA 17931

This serves to acknowledge receipt of your grievance to the assigned Grievance Officer. The response is as follows

| | | | |
|---|---|---|---|
| **Inmate Name:** | Jones, Barry | **Inmate Number:** | HF5900 |
| **Facility:** | SCI-FRACKVILLE | **Unit Location:** | A-B-13 |
| **Grievance #:** | 744200 | | |
| ***Publication (if applicable):*** | | | |

**Decision:**
- ☐ **Uphold Inmate**
- ☒ **Grievance Denied**
- ☐ **Uphold in Part/Denied in Part**

*It is the decision of this grievance officer to uphold, deny **or uphold in part/deny in part** the inmate's initial grievance. This response will include a brief rationale, summarize the conclusion, any action taken to resolve the issue(s) raised in the grievance and, relief sought.*

**Response:** *Frivolous*

The inmate's concerns within this grievance are the following:

1. The grievant was called to the medical department where the medical director attempted to explain and justify why the CRNP ordered his medication as he did. The medical director was not present during the teleconference and is going forward with changes to the medication regime differently than the teleconference doctor. This is causing the grievant pain and suffering which is deliberate indifference. The teleconference doctor specifically stated the teleconference would be bi-weekly and the medical director stated it would take a month.
2. The grievant is requesting to speak with the teleconference doctor directly.

The grievance #744200 and Electronic Health Record (EHR) have been reviewed.
The findings are as follows:

1. The medical director was not at the conference but he has access to the documentation sent forth from the teleconference doctor and determine the plan of action. The grievant can read the reply to grievance #743048 for the factual justification for the medication regime timeline.This writer reviewed the consult written by the teleconference doctor and the recommendation was a return teleconference in one month. That consult has been ordered for the grievant to be seen in July, 2018. There is no deliberate indifference as the medical director is following the direction of the teleconference doctor.
2. The grievant will speak directly to the teleconference doctor during the visit in July, 2018

This grievance is denied.

| | | | |
|---|---|---|---|
| **Signature:** | [signature] | **Print Name:** | Mary Alice Kuras |
| **Title:** | RNS | | |
| **Date:** | 07-12-2018 | | |

Facility Grievance Coordinator
DC-15
File

# EXHIBIT

# "26"

JONES, BARRY #QK3379 DOB: 4/10/1959 (62y) Location: A-B-1013-01

## Clinic Type(s)

**Current Facility:**

SCI FRACKVILLE

**Select the Type(s) of Chronic Care that apply:**

✔ Diabetes ✔ Dyslipidemia ✔ HTN and Cardiac ✔ Liver Disease ✔ Seizure

## Subjective

### Past Medical History

**Estimated Date of contracting Liver Disease:**

1990s

**Hospitalizations prior to incarceration related to this CCC?**

none

**History of DKA?**

none

**History of:**

*NO ANSWER PROVIDED*

**History of Murmur?**

✔ Yes

**Describe Patient's History of Murmur:**

S1 S2 NO S3 S4 REGULAR

**Pacemaker?**

✔ No

**AICD?**

✔ No

**History of:**

✔ IVDU ✔ Tattoo

**Previous treatment for Hep C?**

✔ Yes

**Describe Previous treatment for Hep C:**

interferon and ribavaron

Zepatier

FORM PER LAST FORM BY DR. STANISH

**PA - Chronic Care Clinic Form**
Chronic Care Clinic Form

**Patient Name:** JONES, BARRY
**Patient Number:** QK3379
**Location:** A-B-1013-01
**DOB:** 4/10/1959
**Facility:** SCI FRACKVILLE
**Electronically Signed By** STANISH, STANLEY **on** 08/11/2021 10:54:16

1 of 13

JONES, BARRY #QK3379 DOB: 4/10/1959 (62y) Location: A-B-1013-01

**First degree relative(s) with HTN, CAD, other Cardiac?**

✔ Yes

**Provide the relative(s) and if they have HTN, CAD, or other Cardiac:**

above

**First degree relative(s) with Liver Disease?**

✔ No

**First degree relative(s) with Seizures?**

✔ No

## General

**Check all that apply:**

✔ Patient has recently lost weight

**How many pounds did the patient lose?**

22

**Specify the time period during which the weight loss occurred:**

3 MONTHS

## Symptoms

**Is the Patient experiencing any of the following Diabetic Symptoms (check all that apply)?**

✔ None of these

**Is the patient experiencing Vision Changes?**

✔ No

**Is the patient experiencing Palpitations?**

✔ No

**Is the patient experiencing Muscle Cramping?**

✔ No

**Does the patient have any of the following Symptoms (check all that apply):**

✔ None of these

**Does the patient have any of the following Symptoms of Liver Disease (check all that apply):**

✔ Fatigue

**Describe the Symptoms of Liver Disease:**

FATIUE LOOSING WEIGHT UNDER CARE

**PA - Chronic Care Clinic Form**
Chronic Care Clinic Form

**Patient Name:** JONES, BARRY
**Patient Number:** QK3379
**Location:** A-B-1013-01
**DOB:** 4/10/1959
**Facility:** SCI FRACKVILLE
**Electronically Signed By** STANISH, STANLEY **on** 08/11/2021 10:54:16

3 of 13

JONES, BARRY #QK3379 DOB: 4/10/1959 (62y) Location: A-B-1013-01

**Describe abnormal appearance of patient:**
UBIGUOUS HYPERPIGMENTED LESIONS

## Skin

**Insulin Injection site skin normal?**
✔ Not on Insulin

**Skin normal w/o palmar erythema, spider angiomata, caput medusae, jaundice?**
✔ No

**Describe Liver Disease-related Skin Abnormality:**
PRESENTLY UNDER CARE OF DERMATOLOGY -- BIOPSY PENDING

## HEENT

**Sclera and conjunctiva normal?**
✔ No

**Describe Sclera and conjuctiva abnormality:**
NORM

**Documented ophthalmology/optometry exam**
✔ Yes

**Absence of gingiva hypertrophy?**
✔ Yes

## Neck

**Carotid artery w/o bruit?**
✔ Yes

**Veins w/o distension?**
✔ Yes

**Thyroid w/o masses/hypertrophy?**
✔ Yes

## Heart

**Heart rate & rhythm normal, without murmur?**
✔ No

**PA - Chronic Care Clinic Form**
Chronic Care Clinic Form

**Patient Name:** JONES, BARRY
**Patient Number:** QK3379
**Location:** A-B-1013-01
**DOB:** 4/10/1959
**Facility:** SCI FRACKVILLE
**Electronically Signed By** STANISH, STANLEY **on** 08/11/2021 10:54:16

8 of 13

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

BARRY JONES
Appellant
v.
DR. PAUL NOEL, et al.,
Defendant

: CA NO. 22-2992

## CERTIFICATE OF SERVICE

I Barry Jones, hereby certify that I am this day August 7, 2023, serving a true and correct copies of Appellant's Brief For Argument, to the parties as indicated below:

By First Class Mail

Vincent R. Mazeski Esq.
Assistant Counsel
Office of Chief Counsel
1920 Technology Parkway
Mechanisburg, PA 17050

Benjamin M. Lombar Esq.
Vincent R. Mazesk Esq.
Chief Counsel's Office
Weber & Gallagher, Four PP Place
5th Floor, Pittsburg, PA 15222

## CERTIFICATE OF SERVICE FOR INSTITUTIONAL OR INCARCERATED LITIGANT

I Barry Jones hereby certify that an original & three copies of this document with Appendix was give to Prison Officials on August 7, 2023 for forwarding to the Office of the Clerk, U.S. Court of Appeals, Third Circuit. I certify under the penalty of perjury that the foregoing is True and Correct pursuant to 28 U.S.A. §1746.

Dated: August 7, 2023

/s/
QK-3379
SCI @ MAHANOY
FRACKVILLE, PA 17931
301 GREY LINE DRIVE

JONES, BARRY #QK3379 DOB: 4/10/1959 (62y) Location: A-B-1013-01

**First degree relative(s) with HTN, CAD, other Cardiac?**

✔ Yes

**Provide the relative(s) and if they have HTN, CAD, or other Cardiac:**

above

**First degree relative(s) with Liver Disease?**

✔ No

**First degree relative(s) with Seizures?**

✔ No

## General

**Check all that apply:**

✔ Patient has recently lost weight

**How many pounds did the patient lose?**

22

**Specify the time period during which the weight loss occurred:**

3 MONTHS

## Symptoms

**Is the Patient experiencing any of the following Diabetic Symptoms (check all that apply)?**

✔ None of these

**Is the patient experiencing Vision Changes?**

✔ No

**Is the patient experiencing Palpitations?**

✔ No

**Is the patient experiencing Muscle Cramping?**

✔ No

**Does the patient have any of the following Symptoms (check all that apply):**

✔ None of these

**Does the patient have any of the following Symptoms of Liver Disease (check all that apply):**

✔ Fatigue

**Describe the Symptoms of Liver Disease:**

FATIUE LOOSING WEIGHT UNDER CARE

**PA - Chronic Care Clinic Form**
Chronic Care Clinic Form

**Patient Name:** JONES, BARRY
**Patient Number:** QK3379
**Location:** A-B-1013-01
**DOB:** 4/10/1959
**Facility:** SCI FRACKVILLE
**Electronically Signed By** STANISH, STANLEY **on** 08/11/2021 10:54:16

3 of 13

JONES, BARRY #QK3379 DOB: 4/10/1959 (62y) Location: A-B-1013-01

**Describe abnormal appearance of patient:**
UBIGUOUS HYPERPIGMENTED LESIONS

## Skin

**Insulin Injection site skin normal?**
✔ Not on Insulin

**Skin normal w/o palmar erythema, spider angiomata, caput medusae, jaundice?**
✔ No

**Describe Liver Disease-related Skin Abnormality:**
PRESENTLY UNDER CARE OF DERMATOLOGY -- BIOPSY PENDING

## HEENT

**Sclera and conjunctiva normal?**
✔ No

**Describe Sclera and conjuctiva abnormality:**
NORM

**Documented ophthalmology/optometry exam**
✔ Yes

**Absence of gingiva hypertrophy?**
✔ Yes

## Neck

**Carotid artery w/o bruit?**
✔ Yes

**Veins w/o distension?**
✔ Yes

**Thyroid w/o masses/hypertrophy?**
✔ Yes

## Heart

**Heart rate & rhythm normal, without murmur?**
✔ No

**PA - Chronic Care Clinic Form**
Chronic Care Clinic Form

**Patient Name:** JONES, BARRY
**Patient Number:** QK3379
**Location:** A-B-1013-01
**DOB:** 4/10/1959
**Facility:** SCI FRACKVILLE
**Electronically Signed By** STANISH, STANLEY **on** 08/11/2021 10:54:16

8 of 13

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

| | |
|---|---|
| BARRY JONES<br>Appellant<br>v.<br>DR. PAUL NOEL, et al.,<br>Defendant | : CA NO. 22-2992<br>:<br>:<br>:<br>: |

CERTIFICATE OF SERVICE

I Barry Jones, hereby certify that I am this day August 7, 2023, serving a true and correct copies of Appellant's Brief For Argument, to the parties as indicated below:

By First Class Mail

Vincent R. Mazeski Esq.
Assistant Counsel
Office of Chief Counsel
1920 Technology Parkway
Mechanisburg, PA 17050

Benjamin M. Lombar Esq.
Vincent R. Mazesk Esq.
Chief Counsel's Office
Weber & Gallagher, Four PP Place
5th Floor, Pittsburg, PA 15222

CERTIFICATE OF SERVICE FOR
INSTITUTIONAL OR INCARCERATED LITIGANT

I Barry Jones hereby certify that an original & three copies of this document with Appendix was give to Prison Officials on August 7, 2023 for forwarding to the Office of the Clerk, U.S. Court of Appeals, Third Circuit. I certify under the penalty of perjury that the foregoing is True and Correct pursuant to 28 U.S.A. §1746.

Dated: August 7, 2023

/s/
QK-3379
SCI @ MAHANOY
FRACKVILLE, PA 17931
301 GREY LINE DRIVE

BARRY JONES
QK-3379
SCI @ MAHANOY
301 GREY LINE ROAD
FRACKVILLE, PA 17931

INMATE MAIL
PA DEPT OF
CORRECTIONS

quadient
PRIORITY MAIL
IMI
$011.45⁰
08/08/2023 ZIP 17932
043M31230995
US POSTAGE

PRIORITY
★ MAIL ★
TRACKED
★ ★ ★
INSURED
UNITED STATES
POSTAL SERVICE
For Domestic and International Use
Label 107R, May 2014

UNITED STATES
POSTAL SERVICE
USPS TRACKING #
9114 9012 3080 3112 8274 80
Label 400 Jan. 2013
7690-16-000-7948

OFFICE OF THE CLERK
U.S. COURT OF APPEALS
THIRD CIRCUIT
21400 U.S. COURTHOUSE
601 MARKET STREET
PHILA, PA 19106

AUG 1 0 2023

U.S.M.S.
X-RAY

